# Exhibit B

# In the United States District Court
## for the District of Columbia

Corado's Services, LLC

       Plaintiff

v.

Hartford Fire Insurance Company, *et al*.

       Defendants

Case No. 1:20-cv-03673-RDM

---

Ellisdale Construction, LLC
106 Harrison Street SE
Suite 300
Leesburg, Virginia 20175

       Third-Party Plaintiff

v.

Smith & Sons, LLC
1801 Clydesdale Place, NW
Suite 710
Washington, DC 20009

    Serve:  Michael A. Smith, Registered Agent
           1801 Clydesdale Place, NW
           Suite 710
           Washington, DC 20009

       Third-Party Defendant

# Ellisdale Construction, LLC's
# Third-Party Complaint against Smith & Sons, LLC

For Ellisdale Construction, LLC's ("Ellisdale's") Third-Party Complaint against Smith & Sons, LLC ("Smith"), Ellisdale states as follows:

1

**Parties**

1.     Ellisdale is a Maryland limited-liability company, with an office address of 106 Harrison Street SE, Suite 300, Leesburg, Virginia 20175. Kevin Ash and Richard Ward are the sole members of Ellisdale. Mr. Ash is a citizen of Virginia, and Mr. Ward is a citizen of Utah.

2.     Upon information and belief, Smith is a limited-liability company organized and existing under the laws of the District of Columbia, with its principal place of business located at 1801 Clydesdale Place, NW, Suite 710, Washington, DC 20009. Upon further information and belief, Michael A. Smith is the sole member of Smith, and, upon information and belief, Mr. Smith is a citizen of Washington, DC, with a home address of 1801 Clydesdale Place, NW, Suite 710, Washington, DC 20009.

**Jurisdiction**

3.     The Court has subject-matter jurisdiction over Ellisdale's claim under 28 U.S.C. § 1332, providing for diversity-of-citizenship jurisdiction, as Ellisdale and Smith are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4.     The Court has personal jurisdiction over Smith, which is a limited-liability company organized and existing under the laws of the District of Columbia, with its principal place of business located at 1801 Clydesdale Place, NW, Suite 710, Washington, DC 20009.

5.     Venue is proper in the Court, as the underlying construction projects at issue are located in the District of Columbia and the subcontracts at issue provide that litigation may be brought in this Court.

**Background**

**The 14M Project**

6.     Abrams Hall Senior LP, as owner, and Ellisdale, as contractor, entered into a general contract (the "14M General Contract") for the construction of a project

2

commonly known as Abrams Hall Senior Apartments ("14M Project") in Washington, DC.

7.    In connection with the 14M General Contract, Ellisdale, as principal, and Hartford Fire Insurance Company ("Hartford"), as surety, issued a payment bond ("Ellisdale's 14M Bond"), a copy of which is attached as Exhibit 1.

8.    Under Ellisdale's 14M Bond, Hartford and Ellisdale are jointly and severally liable.

9.    In connection with the 14M Project, Ellisdale, as contractor, and Smith, as subcontractor, entered into a subcontract ("Smith's 14M Subcontract"), under which Smith promised to perform certain work for the 14M Project. A copy of Smith's 14M Subcontract is attached as Exhibit 2.

10.   Ellisdale has paid Smith all sums due under Smith's 14M Subcontract.

11.   Smith failed to complete its work under Smith's 14M Subcontract, forcing Ellisdale to complete the work and to incur costs of at least $70,000, for which Smith is responsible.

12.   In connection with and as required by Smith's 14M Subcontract, Smith, as principal, and The Ohio Casualty Insurance Company ("Ohio Casualty"), as surety, issued a payment bond ("Smith's 14M Bond"), a copy of which is attached as Exhibit 3.

13.   Ellisdale is the obligee under Smith's 14M Bond, which identifies Ellisdale as the "Owner," for purposes of Smith's 14M Bond.

14.   Smith's 14M Bond provides, in part, as follows:

> § 1 The Contractor [Smith] and Surety [Ohio Casualty], jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner [Ellidale] to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract [Smith's 14M Subcontract], which is incorporated herein by reference, subject to the following terms.

> § 2 If the Contractor [Smith] promptly makes payment of all sums due to Claimants, and defends, indemnifies and holds harmless the Owner

3

[Ellisdale] from claims, demands, liens or suits by any person or entity seeking payment for labor, materials or equipment furnished for use in the performance of the Construction Contract, then the Surety [Ohio Casualty] and the Contractor [Smith] shall have no obligation under this Bond.

§ 3 If there is no Owner Default under the Construction Contract, the Surety's [Ohio Casualty's] obligation to the Owner under this Bond shall arise after the Owner [Ellisdale] has promptly notified the Contractor [Smith] and the Surety [Ohio Casualty] (at the address described in Section 13) of claims, demands, liens or suits against the Owner [Ellisdale's] or the Owner's [Ellisdale's] property by any person or entity seeking payment for labor, materials or equipment furnished for use in the performance of the Construction Contract and tendered defense of such claims, demands, liens or suits to the Contractor [Smith] and the Surety [Ohio Casualty].

15.   Under Smith's 14M Bond, Ohio Casualty promised to pay Smith's subcontractors on the 14M Project sums that Smith failed to pay the subcontractors.

16.   Corado's Services, LLC ("Corado") alleges in its Complaint in this action that it is a sub-subcontractor to Smith on the 14M Project, it performed work on the 14M Project, Smith owes it $64,472.32 for Corado's work on the 14M Project, Corado is a proper claimant under Smith's 14M Bond, and, under Smith's 14M Bond, Ohio Casualty owes Corado the principal sum of $64,472.32.

17.   To the extent that Smith has failed to pay Corado all sums due for Corado's work on the 14M Project, such nonpayment is the sole fault of Smith, not Ellisdale.

18.   The Court granted Ellisdale's motion to intervene as a defendant.

19.   In Count 2 of Corado's Complaint, Corado asserts a claim for the principal sum of $64,472.32 against Hartford based on Ellisdale's 14M Bond.

20.   In Count 4 of Corado's Complaint, Corado asserts a claim for the principal sum of $64,472.32 against Ohio Casualty based on Smith's 14M Bond.

21.   To the extent that Hartford is liable to Corado under Ellisdale's 14M Bond, Ellisdale must indemnify Hartford for Hartford's losses, and, as such, Corado's claim against Hartford under Ellisdale's 14M Bond is a claim against Ellisdale.

**The 14S Project**

22.  HELP Washington DC LP, as owner, and Ellisdale, as contractor, entered into a general contract (the "14S General Contract") for the construction of a project commonly known as HELP Walter Reed Apartments Building 14S (the "14S Project") in Washington, DC.

23.  In connection with the 14S General Contract, Ellisdale, as principal, and Hartford, as surety, issued a payment bond ("Ellisdale's 14S Bond"), a copy of which is attached as Exhibit 4.

24.  Under Ellisdale's 14S Bond, Hartford and Ellisdale are jointly and severally liable.

25.  In connection with the 14S Project, Ellisdale, as contractor, and Smith, as subcontractor, entered into a subcontract ("Smith's 14S Subcontract"), under which Smith promised to perform certain work for the 14S Project. A copy of Smith's 14S Subcontract is attached as Exhibit 5.

26.  Ellisdale has paid Smith all sums due under Smith's 14S Subcontract.

27.  Smith failed to complete its work under Smith's 14SM Subcontract, forcing Ellisdale to complete the work and to incur costs of at least $4,000, for which Smith is responsible.

28.  Corado alleges in its Complaint in this action that it is a sub-subcontractor to Smith on the 14S Project, it performed work on the 14S Project, Smith owes it $35,934.80 for Corado's work on the 14S Project, Corado is a proper claimant under a bond allegedly issued by Smith, as principal, and Ohio Casualty, as surety ("Smith's 14S Bond"), and, under Smith's 14S Bond, Ohio Casualty owes Corado the principal sum of $35,934.80.

29.  To the extent that Smith has failed to pay Corado all sums due for Corado's work on the 14S Project, such nonpayment is the sole fault of Smith, not Ellisdale.

30.  The Court granted Ellisdale's motion to intervene as a defendant.

31.  In Count 1 of Corado's Complaint, Corado asserts a claim for the principal sum of $35,934.80 against Hartford based on Ellisdale's 14S Bond.

32.  In Count 3 of Corado's Complaint, Corado asserts a claim for the principal sum of $35,934.80 against Ohio Casualty based on Smith's 14S Bond.

33.  To the extent that Hartford is liable to Corado under Ellisdale's 14S Bond, Ellisdale must indemnify Hartford for Hartford's losses, and, as such, Corado's claim against Hartford under Ellisdale's 14S Bond is a claim against Ellisdale.

**Ellisdale and Hartford's June 16, 2021 letter to Smith and Ohio Casualty**

34.  By letter dated June 16, 2021, Ellisdale, through its counsel, notified Smith and Ohio Casualty that Corado had filed suit against Hartford and that, in Corado's complaint, Corado claims money due from Smith for Corado's work on the 14M Project, and Ellisdale further stated as follows:

> Ellisdale hereby tenders its defense of such claims, demands, and suit to Smith and Sons and Ohio Casualty and demands that Smith & Sons and Ohio Casualty defend, indemnify, and hold harmless Ellisdale and Hartford against such claims, demands, and suit.

35.  A copy of Ellisdale's June 16, 2021 letter is attached as Exhibit 6.

36.  In Ellisdale's June 16, 2021 letter, Ellisdale also stated as follows:

> In addition to any prior notices and demands by Ellisdale, this letter serves as Ellisdale's demand upon Smith & Sons, under the parties' subcontracts, for Smith & Sons to indemnify, defend, protect, and hold harmless Ellisdale and Hartford from and against Corado's claims and the costs, expenses (including legal fees and disbursements), damages, and liabilities arising out of or related to Corado's claims.

> Further, in accordance with § 9.6 of the parties' subcontracts, Ellisdale demands that Smith & Sons, within five days of receipt of this letter, provide Ellisdale proof that Corado's claims relating to the 14S Project and the 14M Project have been fully satisfied, dismissed, and discharged.

37.  Both Ohio Casualty and Smith acknowledged receipt of Ellisdale's June 16, 2021 letter.

## Count 1
## Breach of Smith's 14M Payment Bond

38.  Ellisdale incorporates by reference all preceding allegations.

39.  Corado alleges that Smith did not pay Corado all sums due for Corado's labor and materials on the 14M Project under a sub-subcontract between Smith and Corado and that Corado's labor and materials were furnished for use in performance of Smith's 14M Subcontract.

40.  Under Smith's 14M Bond, Ohio Casualty has the duty to defend, indemnify, and hold harmless Ellisdale and Hartford against Corado's claims, demands, and suit.

41.  Ohio Casualty breached its duty under the 14M Bond by failing and refusing to defend, indemnify, and hold harmless Ellisdale and Hartford against Corado's claims, demands, and suit.

42.  Smith and Ohio Casualty are jointly and severally liable under Smith's 14M Bond.

43.  As a direct and proximate result of Ohio Casualty's breach of its duties under Smith's 14M Bond, Ellisdale has suffered and continues to suffer damages and remains exposed to Corado's claim of $64,472.32, for which damages and exposure Smith and Ohio Casualty are jointly and severally liable.

44.  Ellisdale has satisfied all conditions to bringing this action, if any.

Wherefore, Ellisdale respectfully asks the Court to enter judgment against Smith in the amount of any judgment in favor of Corado and against either Hartford or Ellisdale in connection with the 14M Project, plus Ellisdale's and Hartford's attorneys' fees and costs, to the extent such fees and costs are recoverable, plus pre- and post-judgment interest, and Ellisdale requests such further and other relief in its favor as the Court deems proper and just.

## Count 2
## Breach of Smith's 14M Subcontract

45.  Ellisdale incorporates by reference all preceding allegations.

46.  Under Smith's 14M Subcontract, Smith promised, among other things, the following:

   A.  to complete Smith's work,

   B.  to pay Smith's sub-subcontractors,

   C.  within five days after receipt of a request from Ellisdale, to provide proof that Smith has satisfied the payment claim of any of Smith's sub-subcontractors, and

   D.  to indemnify, defend, and hold harmless Ellisdale from any claims by Smith's sub-subcontractors.

47.  Smith breached the Smith 14M Subcontract by, among other things, failing

   A.  to complete Smith's work,

   B.  to pay Smith's sub-subcontractors,

   C.  within five days after receipt of a request from Ellisdale, to provide proof that Smith has satisfied the payment claim of any of Smith's sub-subcontractors, and

   D.  to indemnify, defend, and hold harmless Ellisdale from any claims by Smith's sub-subcontractors.

48.  As a direct and proximate result of Smith's breaches of Smith's 14M Subcontract, Ellisdale has suffered and continues to suffer damages of at least $70,000 and remains exposed to additional damages in the principal amount of $64,472.32.

49.  Ellisdale has satisfied all conditions to bringing this action, if any.

Wherefore, Ellisdale respectfully asks the Court to enter judgment against Smith in the amount of at least $70,0000 plus the amount of any judgment in favor of Corado and against either Hartford or Ellisdale in connection with the 14M Project, plus Ellisdale's

8

and Hartford's attorneys' fees and costs, to the extent such fees and costs are recoverable, plus pre- and post-judgment interest, and Ellisdale requests such further and other relief in its favor as the Court deems proper and just.

**Count 3**
**Breach of Smith's 14S Subcontract**

50.  Ellisdale incorporates by reference all preceding allegations.

51.  Under Smith's 14S Subcontract, Smith promised, among other things, the following:

    A.  to complete Smith's work,

    B.  to pay Smith's sub-subcontractors,

    C.  within five days after receipt of a request from Ellisdale, to provide proof that Smith has satisfied the payment claim of any of Smith's sub-subcontractors, and

    D.  to indemnify, defend, and hold harmless Ellisdale from any claims by Smith's sub-subcontractors.

52.  Smith breached the Smith 14S Subcontract by, among other things, failing

    A.  to complete Smith's work,

    B.  to pay Smith's sub-subcontractors,

    C.  within five days after receipt of a request from Ellisdale, to provide proof that Smith has satisfied the payment claim of any of Smith's sub-subcontractors, and

    D.  to indemnify, defend, and hold harmless Ellisdale from any claims by Smith's sub-subcontractors.

53.  As a direct and proximate result of Smith's breaches of Smith's 14S Subcontract, Ellisdale has suffered and continues to suffer damages of at least $4,000 and remains exposed to additional damages in the principal amount of $35,934.80.

54.  Ellisdale has satisfied all conditions to bringing this action, if any.

Wherefore, Ellisdale respectfully asks the Court to enter judgment against Smith in the amount of at least $4,000 plus the amount of any judgment in favor of Corado and against either Hartford or Ellisdale in connection with the 14S Project, plus Ellisdale's and Hartford's attorneys' fees and costs, to the extent such fees and costs are recoverable, plus pre- and post-judgment interest, and Ellisdale requests such further and other relief in its favor as the Court deems proper and just.

Respectfully submitted,
**Ellisdale Construction, LLC**
By Counsel

_____
Daniel K. Felsen (USDC Bar No. 438553)
Carlton Fields, P.A.
1025 Thomas Jefferson Street NW
Suite 400 West
Washington, DC 20007-5208
202-965-8100
202-965-8104 (fax)
dfelsen@carltonfields.com

## Certificate of Service

I certify that a true and correct copy of the foregoing document was served via the Court's CM/ECF electronic filing system, this ___ day of _____ 2021, on the following:

Joseph L. Katz
6701 Democracy Boulevard, Suite 300
Bethesda, Maryland 20817
joe@joekatzlaw.com

Lauren P. McLaughlin
SMITH, CURRIE & HANCOCK LLP
1950 Old Gallows Road, Suite 750
Tysons, Virginia 22182
lpmclaughlin@smithcurrie.com

_____
Daniel K. Felsen

**EXHIBIT 1**

Bond No. 30BCSHV0879
'See Attached Rider'

 **AIA**® Document A312™ – 2010

## *Payment Bond*

**CONTRACTOR:**
*(Name, legal status and address)*
EllisDale Construction, LLC
106 Harrison Street SE, Suite 300
Leesburg, VA 20175

**SURETY:**
*(Name, legal status and principal place of business)*
Hartford Fire Insurance Company
One Hartford Plaza
Hartford, CT 06155-0001

**OWNER:**
*(Name, legal status and address)*
Abrams Hall Senior LP c/o Urban Atlantic
7735 Old Georgetown Road, Suite 600
Bethesda, MD 20815

**CONSTRUCTION CONTRACT**
Date: 6/13/18
Amount: $
Description:
*(Name and location)*

**Abrams Hall Senior Apartments**
**1322 Main Drive NW**
**Washington, DC 20024**

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

**BOND**
Date: June 14th, 2018
*(Not earlier than Construction Contract Date)*

Amount: $
Modifications to this Bond: [ ] None [X] See Section 18

**CONTRACTOR AS PRINCIPAL**
Company: *(Corporate Seal)*
EllisDale Construction, LLC
Signature:
Name and WARD BELL
Title: VP

**SURETY**
Company: *(Corporate Seal)*
Hartford Fire Insurance Company
Signature:
Name and Joshua B. Hauserman
Title: Attorney-in-Fact

*(Any additional signatures appear on the last page of this Payment Bond.)*

*(FOR INFORMATION ONLY — Name, address and telephone)*

**AGENT or BROKER:**
HMS Insurance Associates, Inc.
20 Wight Avenue, Suite 300
Hunt Valley, MD 21030
(410) 337-9755

**OWNER'S REPRESENTATIVE:**
*(Architect, Engineer or other party:)*
Grimm & Parker
11720 Beltsville Drive #600
Beltsville, MD 20705

**Init.**

/

AIA Document A312™ – 2010 Payment Bond. The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:07:45 on 04/30/2015 under Order No.8077485210_1 which expires on 02/28/2016, and is not for resale.
User Notes: (911701315)

1

# EXHIBIT 1

§ 1 The Contractor and Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract, which is incorporated herein by reference, subject to the following terms.

§ 2 If the Contractor promptly makes payment of all sums due to Claimants, and defends, indemnifies and holds harmless the Owner from claims, demands, liens or suits by any person or entity seeking payment for labor, materials or equipment furnished for use in the performance of the Construction Contract, then the Surety and the Contractor shall have no obligation under this Bond.

§ 3 If there is no Owner Default under the Construction Contract, the Surety's obligation to the Owner under this Bond shall arise after the Owner has promptly notified the Contractor and the Surety (at the address described in Section 13) of claims, demands, liens or suits against the Owner or the Owner's property by any person or entity seeking payment for labor, materials or equipment furnished for use in the performance of the Construction Contract and tendered defense of such claims, demands, liens or suits to the Contractor and the Surety.

§ 4 When the Owner has satisfied the conditions in Section 3, the Surety shall promptly and at the Surety's expense defend, indemnify and hold harmless the Owner against a duly tendered claim, demand, lien or suit.

§ 5 The Surety's obligations to a Claimant under this Bond shall arise after the following:

§ 5.1 Claimants, who do not have a direct contract with the Contractor,
- .1 have furnished a written notice of non-payment to the Contractor, stating with substantial accuracy the amount claimed and the name of the party to whom the materials were, or equipment was, furnished or supplied or for whom the labor was done or performed, within ninety (90) days after having last performed labor or last furnished materials or equipment included in the Claim; and
- .2 have sent a Claim to the Surety (at the address described in Section 13).

§ 5.2 Claimants, who are employed by or have a direct contract with the Contractor, have sent a Claim to the Surety (at the address described in Section 13).

§ 6 If a notice of non-payment required by Section 5.1.1 is given by the Owner to the Contractor, that is sufficient to satisfy a Claimant's obligation to furnish a written notice of non-payment under Section 5.1.1.

§ 7 When a Claimant has satisfied the conditions of Sections 5.1 or 5.2, whichever is applicable, the Surety shall promptly and at the Surety's expense take the following actions:

§ 7.1 Send an answer to the Claimant, with a copy to the Owner, within sixty (60) days after receipt of the Claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed; and

§ 7.2 Pay or arrange for payment of any undisputed amounts.

§ 7.3 The Surety's failure to discharge its obligations under Section 7.1 or Section 7.2 shall not be deemed to constitute a waiver of defenses the Surety or Contractor may have or acquire as to a Claim, except as to undisputed amounts for which the Surety and Claimant have reached agreement. If, however, the Surety fails to discharge its obligations under Section 7.1 or Section 7.2, the Surety shall indemnify the Claimant for the reasonable attorney's fees the Claimant incurs thereafter to recover any sums found to be due and owing to the Claimant.

§ 8 The Surety's total obligation shall not exceed the amount of this Bond, plus the amount of reasonable attorney's fees provided under Section 7.3, and the amount of this Bond shall be credited for any payments made in good faith by the Surety.

§ 9 Amounts owed by the Owner to the Contractor under the Construction Contract shall be used for the performance of the Construction Contract and to satisfy claims, if any, under any construction performance bond. By the Contractor furnishing and the Owner accepting this Bond, they agree that all funds earned by the Contractor in the performance of the Construction Contract are dedicated to satisfy obligations of the Contractor and Surety under this Bond, subject to the Owner's priority to use the funds for the completion of the work.

Init.

/

AIA Document A312™ – 2010 Payment Bond. The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:07:45 on 04/30/2015 under Order No.8077465210_1 which expires on 02/26/2016, and is not for resale.
User Notes:                                                                    (911701315)

# EXHIBIT 1

**§ 10** The Surety shall not be liable to the Owner, Claimants or others for obligations of the Contractor that are unrelated to the Construction Contract. The Owner shall not be liable for the payment of any costs or expenses of any Claimant under this Bond, and shall have under this Bond no obligation to make payments to, or give notice on behalf of, Claimants or otherwise have any obligations to Claimants under this Bond.

**§ 11** The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

**§ 12** No suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the state in which the project that is the subject of the Construction Contract is located or after the expiration of one year from the date (1) on which the Claimant sent a Claim to the Surety pursuant to Section 5.1.2 or 5.2, or (2) on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone under the Construction Contract, whichever of (1) or (2) first occurs. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

**§ 13** Notice and Claims to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the page on which their signature appears. Actual receipt of notice or Claims, however accomplished, shall be sufficient compliance as of the date received.

**§ 14** When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. When so furnished, the intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

**§ 15** Upon request by any person or entity appearing to be a potential beneficiary of this Bond, the Contractor and Owner shall promptly furnish a copy of this Bond or shall permit a copy to be made.

## § 16 Definitions
**§ 16.1 Claim.** A written statement by the Claimant including at a minimum:
    .1   the name of the Claimant;
    .2   the name of the person for whom the labor was done, or materials or equipment furnished;
    .3   a copy of the agreement or purchase order pursuant to which labor, materials or equipment was furnished for use in the performance of the Construction Contract;
    .4   a brief description of the labor, materials or equipment furnished;
    .5   the date on which the Claimant last performed labor or last furnished materials or equipment for use in the performance of the Construction Contract;
    .6   the total amount earned by the Claimant for labor, materials or equipment furnished as of the date of the Claim;
    .7   the total amount of previous payments received by the Claimant; and
    .8   the total amount due and unpaid to the Claimant for labor, materials or equipment furnished as of the date of the Claim.

**§ 16.2 Claimant.** An individual or entity having a direct contract with the Contractor or with a subcontractor of the Contractor to furnish labor, materials or equipment for use in the performance of the Construction Contract. The term Claimant also includes any individual or entity that has rightfully asserted a claim under an applicable mechanic's lien or similar statute against the real property upon which the Project is located. The intent of this Bond shall be to include without limitation in the terms "labor, materials or equipment" that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental equipment used in the Construction Contract, architectural and engineering services required for performance of the work of the Contractor and the Contractor's subcontractors, and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials or equipment were furnished.

**§ 16.3 Construction Contract.** The agreement between the Owner and Contractor identified on the cover page, including all Contract Documents and all changes made to the agreement and the Contract Documents.

**Init.**

/

AIA Document A312™ – 2010 Payment Bond. The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:07:45 on 04/30/2015 under Order No.8077485210_1 which expires on 02/26/2016, and is not for resale.
User Notes:                                                                                                                                (911701315)

# EXHIBIT 1

**§ 16.4 Owner Default.** Failure of the Owner, which has not been remedied or waived, to pay the Contractor as required under the Construction Contract or to perform and complete or comply with the other material terms of the Construction Contract.

**§ 16.5 Contract Documents.** All the documents that comprise the agreement between the Owner and Contractor.

**§ 17** If this Bond is issued for an agreement between a Contractor and subcontractor, the term Contractor in this Bond shall be deemed to be Subcontractor and the term Owner shall be deemed to be Contractor.

**§ 18** Modifications to this bond are as follows:

'SEE ATTACHED RIDER'

*(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)*

| CONTRACTOR AS PRINCIPAL | | SURETY | |
|---|---|---|---|
| Company: | *(Corporate Seal)* | Company: | *(Corporate Seal)* |
| Signature: | | Signature: | |
| Name and Title: | | Name and Title: | |
| Address: | | Address: | |

**AIA Document A312™ – 2010 Payment Bond.** The American Institute of Architects. **All rights reserved. WARNING: This AIA®  Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA®  Document, or any portion of it, may result in severe civil and criminal penalties, and will  be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 10:07:45 on 04/30/2015 under Order No.8077485210_1 which expires on 02/26/2016, and is not for resale.
**User Notes:**                                                                                                                      (911701315)

Init.

/

**4**

**EXHIBIT 1**

### ADDITIONAL OBLIGEE RIDER TO
### PERFORMANCE AND PAYMENT BOND

(TO BE ATTACHED TO BOND AT TIME OF ISSUANCE)

TO BE ATTACHED TO and made a part of <u>Performance</u> and <u>Payment</u> Bond, Number <u>30BCSHV0879</u>, issued by <u>Hartford Fire Insurance Company</u>, a <u>Connecticut</u> Corporation, as Surety, on the <u>14th day of June, 2018</u> on behalf of <u>EllisDale Construction, LLC</u>, as Principal and in favor of <u>Abrams Hall Senior LP c/o Urban Atlantic</u>, as Obligee.

WHEREAS, upon the written request of the Principal and Obligee the attached bond is hereby amended as follows:

1.  The Names of <u>Abrams Hall Senior, LP, SunTrust Bank, a Georgia Banking Corporation, ISAOA ATIMA, CDC Special Limited Partner, L.L.C., ISAOA ATIMA, STCC Abrams Hall, LLC, a Georgia Limited Liability Company, ISAOA ATIMA, Citibank, N.A., ISAOA. and District of Columbia</u> shall be added to said bond as named obligees.

2.  Notwithstanding any provisions herein to the contrary, there shall be no liability on the part of the Principal or Surety under this bond to the Obligees, or any of them, unless the Obligees, or any of them, shall make payments to the Principal, or to the Surety in case it arranges for completion of the Contract upon default of the Principal, strictly in accordance with the terms of said Contract as to payments, and shall perform all the other obligations required to be performed under said Contract at the time and in the manner therein set forth.

In no event shall the Surety be liable in the aggregate to all Obligees for more than the penal sum of its Performance Bond, nor shall it be liable except for a single payment for each single breach or default. The Surety shall issue any payment due by check to Citibank, N.A. unless it receives written instructions to the contrary signed by each Obligee.

WHEREAS, it is further understood and agreed that nothing herein contained shall be held to change, alter or vary the terms of the above described bond(s) except as hereinbefore set forth.

SIGNED, Sealed and dated this <u>14th day of June, 2018</u>.

ATTEST OR WITNESS:

<br>

_____

<br>

_____

<u>EllisDale Construction, LLC</u> (SEAL)
Principal

By: _____

<u>Hartford Fire Insurance Company</u> (SEAL)
Surety

By: _____
      Joshua B. Hauserman, Attorney-in-Fact

**EXHIBIT 1**

# POWER OF ATTORNEY

*Direct Inquiries/Claims to:*
**THE HARTFORD**
**BOND, T-12**
**One Hartford Plaza**
**Hartford, Connecticut 06155**
**Bond.Claims@thehartford.com**
*call: 888-266-3488 or fax: 860-757-5835*

Agency Name: HMS INSURANCE ASSOCIATES INC
Agency Code: 30-720307

**KNOW ALL PERSONS BY THESE PRESENTS THAT:**

| | |
|---|---|
| X | **Hartford Fire Insurance Company**, a corporation duly organized under the laws of the State of Connecticut |
| X | **Hartford Casualty Insurance Company**, a corporation duly organized under the laws of the State of Indiana |
| X | **Hartford Accident and Indemnity Company**, a corporation duly organized under the laws of the State of Connecticut |
| | **Hartford Underwriters Insurance Company**, a corporation duly organized under the laws of the State of Connecticut |
| | **Twin City Fire Insurance Company**, a corporation duly organized under the laws of the State of Indiana |
| | **Hartford Insurance Company of Illinois**, a corporation duly organized under the laws of the State of Illinois |
| | **Hartford Insurance Company of the Midwest**, a corporation duly organized under the laws of the State of Indiana |
| | **Hartford Insurance Company of the Southeast,** a corporation duly organized under the laws of the State of Florida |

having their home office in Hartford, Connecticut, (hereinafter collectively referred to as the "Companies") do hereby make, constitute and appoint, ***up to the amount of*** Unlimited :

Craig Bancroft, Gary L. Berger, Shari Bowers, William Francik, Joshua B. Hauserman, Jonathan Kibler, Stephen M. Mutscheller, R Nelson Oster, Matthew Rankin, Robert F. White of HUNT VALLEY, Maryland

their true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign its name as surety(ies) only as delineated above by ☒, and to execute, seal and acknowledge any and all bonds, undertakings, contracts and other written instruments in the nature thereof, on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

**In Witness Whereof**, and as authorized by a Resolution of the Board of Directors of the Companies on May 6, 2015 the Companies have caused these presents to be signed by its Senior Vice President and its corporate seals to be hereto affixed, duly attested by its Assistant Secretary. Further, pursuant to Resolution of the Board of Directors of the Companies, the Companies hereby unambiguously affirm that they are and will be bound by any mechanically applied signatures applied to this Power of Attorney.



John Gray, Assistant Secretary

M. Ross Fisher, Senior Vice President

**STATE OF CONNECTICUT** } ss. Hartford
**COUNTY OF HARTFORD** }

On this 11th day of January, 2016, before me personally came M. Ross Fisher, to me known, who being by me duly sworn, did depose and say: that he resides in the County of Hartford, State of Connecticut; that he is the Senior Vice President of the Companies, the corporations described in and which executed the above instrument; that he knows the seals of the said corporations; that the seals affixed to the said instrument are such corporate seals; that they were so affixed by authority of the Boards of Directors of said corporations and that he signed his name thereto by like authority.

Nora M. Stranko
Notary Public
My Commission Expires March 31, 2018

**CERTIFICATE**

I, the undersigned, Assistant Vice President of the Companies, DO HEREBY CERTIFY that the above and foregoing is a true and correct copy of the Power of Attorney executed by said Companies, which is still in full force effective as of June 14th, 2018.
Signed and sealed at the City of Hartford.



Kevin Heckman, Assistant Vice President

POA 2016

# EXHIBIT 2

Date:7/12/18

## SUBCONTRACT (DC)

**Ellisdale Construction, LLC**
106 Harrison Street, SE, Suite 300
Leesburg, VA 20175

PROJ NO/BUDGET CODE/AMOUNT:
PROJ NO/BUDGET CODE/AMOUNT:18-01-05 / 1-02-725 / $325,000
CONTRACT NUMBER:005

SUBCONTRACTOR: Smith & Sons, LLC
Address:   1801 Clydesdale Place Suite 710, Washington, DC 20307
Phone:   (202) 232-2236                              Project: Abrams Hall Seniors 14M
Fax:      (202) 478-1897                              Email: hsellers@smithandsonsllc.com
SCOPE OF WORK SUMMARY (*See* Exhibit A and Section 2 below for Scope of Work):

THIS SUBCONTRACT BASE AGREEMENT ("Subcontract"), made this 12th day of July, 2018, between Ellisdale Construction, LLC, whose address is 106 Harrison Street, SE, Suite 300, Leesburg, VA 20175, hereinafter called "EDC" and Smith & Sons, LLC, whose address is 1801 Clydesdale Place Suite 710, Washington, DC 20307 hereinafter called "Subcontractor" for materials and services to be provided on the construction project at the following location Abrams Hall Seniors 14M (the "Project").

EDC and Subcontractor agree as follows:

## 1.   Subcontract and Contract Documents

**1.1**   This Subcontract consists of this Subcontract, any Addenda and all Exhibits attached thereto, the Project Schedule included in the Contract Documents as it may be amended from time to time by EDC ("Project Schedule"), and the Prime Contract between EDC and Urban Atlantic (the "Owner"), and all Exhibits thereto  (collectively, the "Contract Documents"). The work to be performed by Subcontractor ("Subcontract Work" or "Subcontractor's Work") hereunder is identified and described in the "Scope of Work" referenced in the Exhibits and any Addenda to Subcontract. The term "Work" is defined in the Contract Documents and includes, but is not limited to, the Subcontract Work.

**1.2**   The Contract Documents have been made available to Subcontractor and Subcontractor acknowledges that it has carefully examined them and understands them completely.

**1.3**   In the event of any conflict between the terms of this Subcontract and the terms of any of the other Contract Documents, or a conflict among any of the Contract Documents themselves, the provision granting the greater rights or remedies to EDC, or imposing the greater duty, standard, responsibility or obligation on Subcontractor, as determined by EDC, shall govern. In the event Subcontractor discovers any such conflicting provisions, or any other discrepancies among or within the Subcontract or Contract Documents, the Subcontractor shall promptly notify EDC in writing of such discovery. Failure of the Subcontractor to do so shall result in a waiver of any right the Subcontractor may have to additional compensation or a time extension. With respect to the Scope of Work to be performed and furnished by the Subcontractor hereunder, the Subcontractor agrees to be bound to EDC by each and all of the terms and provisions of the Contract Documents, and to assume toward EDC all of the duties, obligations and responsibilities that EDC by those Contract Documents assumes toward the Owner, and the Subcontractor agrees further that EDC shall have the same rights and remedies as against the Subcontractor as the Owner has against EDC under the terms and provisions of the Contract Documents with the same force and effect as though every such duty, obligation, responsibility, right or remedy were set forth herein in full. Subcontractor shall bind its lower tier subcontractors and suppliers, if any, to all of the performance obligations and responsibilities which Subcontractor assumes towards EDC hereunder. Any specific reference sin the Contract Documents to the obligations of the Subcontractor are incorporated herein. The Subcontractor shall comply with all obligations as set forth in the Project Specific Addendum attached hereto and incorporated herein as Exhibit I.

## 2.   Scope of Work

**2.1**   EDC employs Subcontractor, as an independent contractor, to perform and provide, in accordance with the terms and conditions of the Contract Documents, all work, materials, equipment and services for the work set forth in the Scope of Work.

**2.2**   Subcontractor agrees to perform the Subcontract Work under the direction of EDC, and to the satisfaction of EDC in strict conformity with the Contract Documents. Subcontractor agrees to provide and pay for all labor (regardless of craft or jurisdiction), competent supervision, materials, tools, supplies, equipment, vehicles and proper safety protection required in connection with the Subcontract Work.

**2.3**   The Subcontract Work includes:

**2.3.1**   that shown on any of the Contract Documents as if called for or shown on all;

**2.3.2**   all things reasonably implied or customarily provided in Subcontractor's trade or necessary to complete such work for inspection and approval under the Subcontract; and

**2.3.3**   all Work and things described in Exhibit A to this Subcontract.

**2.4**   Subcontractor's mobilization at and utilization of the Project site shall at all times be subject to EDC's direction. The use by Subcontractor of any equipment or temporary facilities provided by EDC at the Project site shall be at EDC's sole discretion and subject to whatever conditions or limitations EDC may place on such use.

**2.5**   Subcontractor expressly acknowledges and agrees that the Subcontractor has been engaged and contracted to perform the Subcontract Work as described in the Scope of Work and expressly acknowledges and agrees that EDC has the right to engage and contract with other subcontractors to perform such work as to the balance of the Project and as to other projects being developed or constructed by EDC. Subcontractor expressly waives any claim or right to perform Subcontract Work in any portion of the Project not expressly described in the Scope of Work and as to other projects being developed or constructed by EDC.

---

**NO MODIFICATIONS, STRIKE-THROUGHS, OR ADDITIONS MAY BE MADE TO THIS AGREEMENT.**

# EXHIBIT 2

**2.6**   The Subcontractor will proceed with the Subcontract Work in a prompt and diligent manner, in accordance with EDC's directives, schedule and the durations set forth in Exhibit A, as they may be modified from time to time. Subcontractor agrees to follow the sequence of Work as directed by EDC. The schedule may be modified or revised, as deemed necessary in EDC's sole discretion, as the Work progresses. The schedules are representative of the sequence and duration of the Work and are not intended to mandate mobilization, performance or demobilization by Subcontractor on specified dates. TIME IS OF THE ESSENCE.

**2.7**   The Subcontractor shall provide shall data in order to assist EDC in determining the most appropriate and acceptable construction schedule and acceleration opportunities of the Work and to update the Project Schedule. The Subcontractor warrants to the Owner and EDC that any scheduling or related information it provides to EDC has been prepared in good faith and is accurate to the best of the Subcontractor's knowledge. In the event that Owner or EDC in their reasonable discretion concludes upon review of the construction progress schedule that a critical path date or milestone completion date may not be met with respect to any portion of the Work, EDC may order Subcontractor to accelerate the Subcontract Work to the extent necessary to keep the progress of the Work on schedule.

**2.8**   Before commencing the Subcontract Work, the Subcontractor shall provide a written copy of its Hot Work Program to EDC for EDC's review and approval. Subcontractor shall modify its Hot Work Program as reasonably requested by EDC and/or required for the Work. Subcontractor shall comply with the Hot Work Program at all times.

**3.**   **Subcontract Sum and Payments**

**3.1**   In consideration of the complete and timely performance of all Subcontract Work, EDC will pay to Subcontractor the following Subcontract Sum of three hundred twenty-five thousand dollars ($325,000), subject to additions and deductions as provided herein (the "Subcontract Sum"). The obligation of EDC to make payment under this Subcontract, whether a progress or final payment, or for extras or change orders or delays to the Work, is subject to the express condition precedent of payment therefor by the Owner. If EDC has provided payment or performance bonds or a combination payment or performance bond, the obligation of EDC and its surety under any of those bonds to make any payment (whether a progress payment or final payment) to a claimant on that bond is similarly subject to the express condition precedent of payment therefor by Owner.

**3.1.1**   Final payment to EDC by the Owner for the Subcontract Work shall be an express condition precedent which must occur before EDC shall be obligated to make final payment to the Subcontractor. In addition, final payment by EDC to the Subcontractor shall not become due and payable until the following other express conditions precedent have been met: (1) the completion and acceptance of the Subcontract Work by EDC, the Owner and the Architect; (2) provision by the Subcontractor of evidence satisfactory to EDC that there are no claims, obligations or liens outstanding or unsatisfied for labor, services, materials, equipment, taxes or other items performed, furnished, or incurred for or in connection with the Subcontract Work; (3) execution and delivery by the Subcontractor, in a form satisfactory to EDC of a general release running to and in favor of EDC and the Owner; (4) Subcontractor delivers to EDC all operating instructions, maintenance manuals, drawings, submittals, warranties, guaranties, assignment of warranties, record drawings, records, bonds, certificates of insurance and similar materials required by the Contract Documents; (5) consent of surety, if any, to final payment, is received by EDC; (6) EDC has received evidence of satisfactory completion of all inspections, sign-offs, testing and approvals of governmental and quasi-governmental authorities required for the Subcontract Work; (7) Subcontractor has submitted executed final lien waivers for itself and its subcontractors and suppliers using the forms attached hereto as Exhibits C-1, C-2 and C-3, as applicable; and (9) complete and full satisfaction of all claims, demands and disputes, and all obligations and responsibilities of Subcontractor, arising out of or related to the Subcontract, including those as between EDC and Subcontractor as well as those between Subcontractor and any third party. Should there be any such claim, obligation or lien or unsatisfied obligation or responsibility whether before or after final payment is made, the Subcontractor shall pay, refund or deliver to EDC (1) all monies that EDC and/or the Owner shall pay in satisfying, discharging or defending against any such claim, obligation or lien or any action brought or judgment recovered thereon and all costs and expenses, including legal and expert fees and disbursements, incurred in connection therewith; and (2) and such amounts as EDC or Owner shall, in their sole discretion, determine to be an amount sufficient to protect EDC and Owner therefrom (in lieu of payment of such amounts, Subcontractor may, at Owner's and EDC's sole discretion, deliver a bond satisfactory to EDC and Owner). Such refund and payment shall be made within ten (10) days of request by EDC to Subcontractor for same. The final payment shall be due within forty (40) days after all of these express conditions precedent are met. Acceptance of final payment by Subcontractor shall constitute a waiver by Subcontractor of all claims against EDC, the Owner and the Project.

**3.1.2**   No payment (final or otherwise) made under or in connection with this Subcontract shall be conclusive evidence of the performance of the Subcontract Work or of this Subcontract, in whole or in part, and no such payment shall be construed to be an acceptance of defective, faulty or improper Subcontract Work or materials nor shall it release the Subcontractor from any of its obligations under this Subcontract; nor shall entrance and use by the Owner constitute acceptance of the Subcontract Work or any part thereof. Notwithstanding the foregoing, this Paragraph does not alter applicable statutes of limitation. The failure of Subcontractor to fully perform and satisfy any or all obligations set forth in this Paragraph shall constitute a default, entitling EDC to take action as described in Section 8 of this Subcontract.

**3.2**   The Subcontract Sum includes all Federal, State, County, Municipal and other taxes imposed by law and based upon labor, services, materials, equipment or other items acquired, performed, furnished or used for and in connection with the Subcontract Work, including but not limited to sales, use and personal property taxes payable by or levied or assessed against the Owner, EDC or the Subcontractor. Where the law requires any such taxes to be stated and charged separately, the total price of all items included in the Subcontract Work plus the amount of such taxes shall not exceed the Subcontract Sum.

**3.3**   The Subcontract Sum shall be based upon applications for payment submitted to EDC by the Subcontractor, corresponding to applications for payment submitted by EDC to the Architect/Owner, and certificates for payment issued by the Architect/Owner all in accordance with the Subcontract. Payments received by the Subcontractor for Subcontract Work properly performed by its contractors and suppliers shall be

---

**NO MODIFICATIONS, STRIKE-THROUGHS, OR ADDITIONS MAY BE MADE TO THIS AGREEMENT.**

# EXHIBIT 2

held by Subcontractor for those contractors or suppliers who performed Subcontract Work or furnished materials, or both, under contract with the Subcontractor for which payment was made to the Subcontractor by EDC.

3.4     The period covered by each application for payment shall be one calendar month ending on the last day of the month.  Provided an application for payment is received by EDC's Accounts Payable Department not later than the 20th day of a month, includes all required supporting documentation and is accompanied by fully executed lien waivers from the Subcontractor and all of its sub-subcontractors and vendors using the forms attached hereto as Exhibits B-1, B-2 and B-3.  EDC will include the Subcontractor's Work covered by that application in the next application for payment which EDC is entitled to submit to the Architect/Owner. EDC shall pay the Subcontractor each progress payment within seven business days after EDC receives payment from the Owner.

3.5     If an application for payment is received by EDC after the application date fixed above, the Subcontractor's Work covered by it shall be included by EDC in the next application for payment submitted to the Architect/Owner.  Notwithstanding any other provision herein, failure by the Subcontractor to submit any application for payment or invoice to EDC within ninety days of Substantial Completion of the Project shall constitute an absolute waiver and relinquishment, without condition or limitation, of any and all right Subcontractor otherwise has, may have, or may have had to file and/or pursue a mechanic's lien or any other claim for payment arising from or in any way related to the Subcontract and Project described above or for any materials, equipment, fixtures, apparatus, improvements, labor or services which have been or at any time hereafter may be provided or supplied to the Project by or on behalf of the Subcontractor.

3.6     Each application for payment shall be based upon the most recent schedule of values approved by EDC in accordance with the Contract Documents.  The schedule of values shall allocate the entire Subcontract Sum among the various portions of the Subcontractor's Work and be prepared in such form and supported by such data to substantiate its accuracy as EDC may require. This schedule, unless objected to by EDC, shall be used as a basis for reviewing the Subcontractor's applications for payment.

3.7     Applications for payment submitted by the Subcontractor shall indicate the percentage of completion of each portion of the Subcontractor's Work as of the end of the period covered by the application for payment.

3.8     Subject to the provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

3.8.1     Take that portion of the Subcontract Sum properly allocable to completed Subcontract Work as determined by multiplying the percentage completion of each portion of the Subcontractor's Work by the share of the total Subcontract Sum allocated to that portion of the Subcontractor's Work in the schedule of values, less that percentage actually retained, if any, from payments to EDC on account of the Subcontract Work. Pending final determination of cost to EDC of changes in the Subcontract Work which have been properly authorized by EDC, amounts not in dispute shall be included to the same extent provided in the Prime Contract, even though the Subcontract Sum has not yet been adjusted;

3.8.2     Add that portion of the Subcontract Sum properly allocable to materials and equipment delivered and suitably stored at the site by the Subcontractor for subsequent incorporation in the Subcontractor's Work or, if approved by EDC, suitably stored off the site at a location agreed upon in writing, less the same percentage retainage required by the Prime Contract to be applied to such materials and equipment in EDC's application for payment;

3.8.3     Subtract retainage in the amount of ten percent (10%) of the Subcontract Sum;

3.8.4     Subtract the aggregate of previous payments made by EDC;

3.8.5     Subtract all amounts, backcharges and claims by EDC against Subcontract or any third party for which Subcontractor is responsible hereunder, including a mark-up of eight percent (8%) plus general conditions costs payable to EDC;  and

3.8.6     Subtract amounts, if any, which are related to Subcontract Work for which the Architect/Owner has withheld or nullified, in whole or in part, a certificate of payment for a cause which is the fault of the Subcontractor.

3.9     Upon the partial or entire disapproval by EDC of the Subcontractor's application for payment, EDC shall provide written notice to the Subcontractor. When the basis for the disapproval has been remedied, the Subcontractor shall be paid the amounts withheld.

3.10     Any amounts due Subcontractor under this Subcontract may be reduced to offset amounts owed by Subcontractor to EDC pursuant to any other agreement between EDC and Subcontractor, regardless of whether those offset amounts relate to this Project or other projects.

3.11     As a condition precedent to any partial payment for the Subcontract Work, the Subcontractor shall deliver to EDC with each Application for Payment the following:  (a) G702 and G703, (b) any and all back-up required by the Owner, Architect or EDC as required by this Subcontract and the Contract Documents; (c) all daily reports for the prior month, (d) an itemization of all claims asserted by the Subcontractor in strict accordance with Section 9 of this Subcontract (collectively the "Subcontractor's Monthly Report"); and (e) a fully executed release of liens and claims sworn to under oath and duly notarized by the Subcontractor and any of its sub-subcontractors or suppliers, of any tier, for the Subcontract Work performed to date, including any and all material, services and labor provided or supplied by or through the Subcontractor (including all of its sub-subcontractors or suppliers) at time of applicable payment, using each of the forms attached hereto as Exhibits B-1, B-2 and B-3, as applicable.  The Subcontractor shall not be permitted to revive any claims through the Subcontractor's Monthly Report that were not properly preserved in accordance with Section 9 of the Subcontract.  Likewise, as a condition precedent to final payment for the Subcontract Work, and in addition to the information required to be submitted in accordance with subsections (a) and (b) of this Paragraph, the Subcontractor and all of its sub-subcontractors or suppliers, of any tier, shall sign and deliver to EDC a release of liens and claims sworn to under oath and duly notarized for the entirety of the Subcontract Work performed to date, including any and all material, services and labor provided or supplied by or through the Subcontractor (including all of its sub-subcontractors or suppliers) at time of applicable payment, using each of the forms attached hereto as Exhibits C-1, C-2 and C-3, as applicable.  EDC may, in its sole discretion, make any payment due under this Subcontract directly to any material supplier or lowered tiered subcontractor, vendor or other person or entity working by or through Subcontractor or any Sub-subcontractor, or by joint check payable to the Subcontractor and such material supplier or lowered tiered subcontractor, less applicable retainage.  In that event, the amount so paid to the material supplier or the lower tiered subcontractor shall be deducted from any payment due

---

**NO MODIFICATIONS, STRIKE-THROUGHS, OR ADDITIONS MAY BE MADE TO THIS AGREEMENT.**

Subcontractor. No direct or joint check payment by EDC hereunder, shall, however, create any obligation on the part of EDC to make any payment to any material supplier or lower tier subcontractor, and no payment by EDC to any material supplier or lowered tier subcontractor shall create any obligation to make any further payments to any material supplier or lowered tier subcontractor.

3.12    EDC may withhold payment in whole, in part, or based on subsequently discovered evidence, may reduce payments otherwise due, to such extent as may be appropriate to protect Owner and EDC from loss for which Subcontractor is responsible because of: (1) defective portions of the Subcontractor's Work not remedied or unauthorized deviations or substitutions; (2) any third-party claim filed or threatened against the Project, the Project site, the Subcontract Work, Owner or Contractor, unless security acceptable to Owner and EDC is provided by Subcontractor or such claim is released; (3) failure of Subcontractor to make payments to Sub-subcontractors or other persons or entities for labor, materials, supplies or equipment from sums advanced pursuant to an application for progress payment; (4) reasonable evidence that the Subcontract Work cannot be completed for the unpaid balance of the Subcontract Sum; (5) damage to Owner (including but not limited to liquidated and other permitted under the Prime Contract), EDC or another contractor or subcontractor of any of them, or to the work of any of them, for which Subcontractor is responsible under the terms of this Subcontract; (6) reasonable evidence that the Subcontract Work will not be completed within the time allowed by this Subcontract, or that the unpaid balance of the Subcontract Sum would not be adequate to cover actual or liquidated damages for the anticipated delay for which Subcontractor is responsible under the terms of this Subcontract or the Prime Contract; or (7) any breach by Subcontractor in the performance of its obligations under this Subcontract, including,  but not limited to, failure to meet required construction schedules, failure to maintain required insurance, failure to make payments for applicable employment taxes, wages, fringe benefits, pension obligations, union benefits and similar items, or failure to cooperate in coordination of the Subcontract Work with work and construction by others at the Project Site. EDC also may offset against payments due to Subcontractor under this Subcontract any amounts owing by Subcontractor to Owner or Contractor, or to any affiliate of Owner or Contractor, whether arising in connection with the Project or others.

3.13    EDC may, in its sole discretion, make any payment due under this Subcontract by direct payment or joint check to any Sub-subcontractor, supplier, vendor or other person or entity working by or through Subcontractor or any Sub-subcontractor.  Any such payment shall be deducted from any amount otherwise due Subcontractor against the Subcontract Sum.  Subcontractor shall promptly endorse any joint check issued by EDC to ensure that the co-party to the check is promptly paid in both form and substance consistent with Subcontractor's obligations under this Subcontract.

3.14    The Subcontractor agrees that, if and when requested to do so by EDC, it shall furnish such information, evidence and substantiation as EDC may require with respect to the nature and extent of all obligations incurred by the Subcontractor for or in connection with the Subcontract Work, all payments made by the Subcontractor thereon, and the amounts remaining unpaid, to whom and the reasons therefor.

## 4.    Prosecution of Work

4.1    The Subcontractor shall commence the Subcontract Work when notified to do so by EDC and shall diligently and continuously prosecute and complete the Subcontract Work and coordinate the Subcontract Work with the other Work being performed on the Project, in accordance with the Project Schedule as may be modified or adjusted from time to time by EDC during the performance of the Work, and any other scheduling requirements listed in the Contract Documents.  Subcontractor shall not delay, impede, obstruct, hinder or interfere with the commencement, progress or completion of the whole or any part of the Subcontract Work or other Work on the Project.

4.2    The Subcontractor shall participate and cooperate in the development of schedules and other efforts to achieve timely completion of the Subcontract Work and shall provide EDC with all information for the scheduling of the times and sequence of operations required for its Subcontract Work to meet EDC's overall schedule requirements.  The Subcontractor shall continuously monitor the Project Schedule so as to be fully familiar with the timing, phasing and sequence of operations of the Subcontract Work and of other Subcontract Work on the Project and shall execute the Subcontract Work in accordance with the requirements of the Project Schedule including any revisions thereto. Any failure by Subcontractor to man the job with adequate forces for five (5) or more consecutive business days, or for more than five (5) business days out of any thirty (30)-day period, shall, unless authorized by EDC in writing, constitute a basis for termination of this Subcontract, effective upon notice from EDC.  Without intending to limit the foregoing, Subcontractor will not be considered to provide adequate staffing if Subcontractor fails within two (2) business days to provide such additional manpower as EDC identifies, by notice to Subcontractor, to be necessary in EDC's judgment to maintain Subcontractor's schedule or Subcontractor thereafter fails to maintain forces at such levels.  Subcontractor shall not be entitled to additional compensation for extra manpower ordered by EDC to maintain Subcontractor's schedule.

4.3    EDC shall prepare the Project Schedule and may revise such schedule, from time to time, as determined by EDC to be reasonably necessary to facilitate the completion of the entire Project. The Subcontractor shall comply with instructions given by EDC, including any to suspend, delay or accelerate the Subcontract Work. Exhibit A to this Subcontract includes durations for the Subcontract Work, which shall be in a form acceptable to EDC and shall be modified as directed by EDC so that they are consistent with the Project schedule, comply with all scheduling requirements of the Contract Documents and this Subcontract, and comply with EDC's other work schedules and directions regarding schedule, which EDC may issue from time to time.

4.4    If EDC determines that Subcontractor is behind schedule, Subcontractor shall, upon notice by EDC and at Subcontractor's sole expense, immediately employ appropriate action to (1) prevent further schedule loss, (2) capture lost schedule and otherwise overcome such schedule delays, including but not limited to, accelerating its Subcontract Work by working overtime and adding multiple work shifts, manpower and equipment.  If Subcontractor fails to take appropriate action, EDC shall have the right, but not the obligation, to take whatever actions it deems appropriate to overcome such delays, including executing portions of the Subcontract Work with its own forces and equipment, or by hiring other subcontractors to execute all or part of the Subcontract Work, and Subcontractor shall bear all costs associated with such actions, as well as any costs, expenses or other damages incurred by EDC, Owner, or other subcontractors that are caused by or related to Subcontractor's delays.  Upon demand, Subcontractor shall immediately tender to EDC all amounts that constitute costs, expenses and damages resulting from Subcontractor's delays.  Alternatively, if Subcontractor either refuses EDC's demand pursuant to this Section, or is unable to promptly tender said funds, EDC may offset against amounts due Subcontractor using any such amount that remains unpaid under this or any other agreement

NO MODIFICATIONS, STRIKE-THROUGHS, OR ADDITIONS MAY BE MADE TO THIS AGREEMENT.

4 of 16

with the Subcontractor. EDC will have no obligation to take action as contemplated by this Section. Action by EDC pursuant to this Section, will not be deemed a cure of any default by Subcontractor or limit EDC's rights (including any right of termination or additional or cumulative rights to compensation for damages) in respect of any such default. Actions by EDC pursuant to this Section will not limit Subcontractor's responsibility (including warranty responsibilities) for any of the Subcontract Work not performed by Subcontractor. Subcontractor will be responsible for coordinating its Subcontract Work with portions of the Work performed by EDC or separate subcontractors in accordance with this Section.

**4.5**    Subcontractor acknowledges that its Work: (1) will be performed concurrently with the work of other subcontractors and Owner's other contractors; and (2) may not be performed in a continuous manner due to the activities of other subcontractors and Owner's other contractors. Subcontractor warrants here that it has made no assumptions (in developing its schedule, sequence of work, or the efficiency or cost of its Subcontract Work) that its Subcontract Work will be performed continuously, without interruption, without impediments and/or without inefficiencies. Subcontractor represents that the Subcontract Sum and its schedule fully account for the fact that Subcontractor will be working under the conditions described in the preceding sentence, and Subcontractor agrees that Subcontractor will be entitled to no additional compensation or other relief based upon such conditions. Subcontractor will coordinate its Subcontract Work, including but not limited to procurement, submittals, shop drawings, fabrications, equipment delivery, storage, testing, inspections and installation, with the work of EDC's own forces, other subcontractors and Owner's other contractors to prevent or mitigate delays or interferences in the completion of any part or all of the Project. EDC shall have the right to decide the time, order, and priority in which various portions of the work (including the Subcontract Work) shall be performed and all other matters relative to the timely and orderly conduct of the Subcontract Work.

**4.6**    If the Subcontract Work is delayed by any act, neglect or default of Owner or EDC, or any other contractor or subcontractor employed by Owner or EDC at the Project site, or by unusually severe weather, accidents, war, governmental action, fire, windstorm or other casualty or any other similar causes beyond the reasonable control of Subcontractor, or any of its Sub-subcontractors, and so long as any such delay is not a result of acts, omissions or failure to act by Subcontractor or any Sub-subcontractor or other person or entity for whom either of them is responsible, Subcontractor could not reasonably have been expected to anticipate the condition and Subcontractor has used all reasonable efforts to mitigate such delay, then the time for Subcontractor's performance shall be extended for a period equal to the time lost in the performance of critical activities by reason of the aforesaid causes, provided a claim for an extension is presented by written notice to EDC within seventy-two (72) hours after the commencement of such delay. Time extensions shall only be granted with respect to delays which Subcontractor establishes make performance of any critical activities in the Subcontract Work unachievable, taking into account Subcontractor's obligations under this Subcontract, including but not limited to Subcontractor's obligations under this Section. Subcontractor shall anticipate and take into consideration foreseeable weather conditions at the site in organizing and scheduling its operations. If unusually severe weather conditions form the basis for a claim for additional time, such claim shall be documented by data available from the National Data Climate Center, Asheville, North Carolina (http://www.ncdc.noaa.gov/) and the records of the Subcontractor at the Project, substantiating that weather conditions were abnormal for the applicable period of time and had an adverse effect on the scheduled construction. Unusually severe weather is defined as weather that is more severe than the adverse weather anticipated for the location of the Project and the applicable season or location involved. Foreseeable weather conditions shall be determined with reference to National Oceanic and Atmospheric Association historical records for a period of ten (10) years for the location of the Project. In no case will Subcontractor be entitled to extensions for delays arising out of any strike or other work stoppage or work slow-down (including employees striking or boycotting in sympathy to other strikes or boycotts, or employees refusing to enter any secondary entrance), and it shall be Subcontractor's responsibility to promptly resolve the underlying employee demands or find other means to overcome the work-related action so that work continues. Subcontractor shall not be entitled to separate extensions of time for causes of delay that have a concurrent or interrelated effect on the progress of the Subcontract Work. If one of several causes of delay operating concurrently result from any breach, default, fault, inaccuracy, error, act or omission of Subcontractor or others for whom it is responsible, Subcontractor shall receive no extension of time for such delay. In evaluating Subcontractor's entitlement to an extension of time, Owner and EDC shall receive the benefit of schedule float in any work duration or progress schedule. No claims for additional compensation or damages for delays, whether caused in whole or in part by any conduct on the part of Contractor, including, but not limited to, conduct amounting to a breach of this Subcontract, or delays by other subcontractors or Owner, shall be recoverable from Contractor, and the above-mentioned extension of time for completion shall be the sole remedy of Subcontractor; provided, however, that in the event EDC receives additional compensation from Owner on account of such delays, Subcontractor shall be entitled to such portion of the additional compensation so received by EDC from Owner as is equitable under all of the circumstances. In the event that EDC prosecutes a claim against Owner for additional compensation for any delay, Subcontractor shall cooperate fully with EDC in the prosecution thereof and shall pay costs and expenses incurred in connection therewith, including actual attorneys' fees, to the extent that said claim is made by EDC at the request of the Subcontractor.

**4.7**    EDC will suffer financial loss if the Subcontractor does not complete the Subcontract Work within the durations set forth in Exhibit A, as they may be modified by EDC in accordance with this Subcontract. EDC and Subcontractor have agreed that EDC's actual damages in such event would be extremely difficult to determine. Therefore, the parties have agreed that if the Subcontractor does not complete the Subcontract Work within the durations set forth in Exhibit A, as modified by EDC in accordance with this Subcontract, EDC shall at its option, be entitled to deduct or retain from payments otherwise due to Subcontractor an amount equal to $1,000 dollars per day for each day of delay. Such liquidated damages hereby are agreed to be a reasonable and conservative estimate of the actual damages EDC may incur as a result of the delay and not a penalty. The liquidated damages provided for herein are for EDC's damages for delay only; any liquidated damages anticipated or assessed by the Owner under the Prime Contract are in addition to EDC's delay damages and may be deducted from payments otherwise due to Subcontractor under Section 3.12 of this Subcontract. Notwithstanding anything contained in the Subcontract to the contrary, the assessment of liquidated damages is not subject to any notice or claims procedure. EDC and the Subcontractor waive the right to contest or challenge the validity or enforceability of this Section 4.7 and the liquidated damages provisions contained in this Subcontract.

---

**NO MODIFICATIONS, STRIKE-THROUGHS, OR ADDITIONS MAY BE MADE TO THIS AGREEMENT.**

# EXHIBIT 2

**4.8**  Notwithstanding anything in the Contract Documents to the contrary, no interruption, interference, inefficiency, suspension or delay in the commencement or progress of the Subcontract Work from any cause whatsoever, including those for which EDC may be responsible, in whole or in part, shall relieve Subcontractor of its duty to perform or give rise to any right to damages or additional compensation from EDC. Subcontractor expressly acknowledges and agrees that it shall receive no damages for delay. Subcontractor expressly waives and releases all claims or rights to recover lost profit (except for profit on Subcontract Work actually performed), recovery of overhead (including home office overhead), and any other indirect damages, costs or expenses in any way arising out of or related to the Subcontract Agreement, including the breach thereof by EDC. Subcontractor's sole remedy, if any, against EDC will be the right to seek an extension of time; provided, however, the granting of any such time extension shall not be a condition precedent to the aforementioned "No Damage For Delay" provision. This Paragraph shall expressly apply to claims for early completion, as well as to claims based on late completion.

**4.9**  Before proceeding with the Subcontract Work, Subcontractor shall carefully examine the correctness of contiguous Work installed by others, using all means necessary to discovery any defects in such other Work to determine whether it is fit, ready and in suitable condition for the proper and accurate performance of the Subcontract Work hereunder. The Subcontractor's failure to detect and report discrepancies will be deemed an acceptance of such Work by Subcontractor and will preclude the Subcontractor from seeking any increased costs or damages from EDC for such items. If Subcontractor is working on or around finished flooring areas, Subcontractor agrees to provide appropriate protection to the finished flooring to protect against dirt, water, or any damage to the materials already installed. Once the Subcontractor has started work on the Project, the Subcontractor assumes responsibility for any damage resulting from Subcontractor's conduct, including the failure to protect their Subcontract Work or use reasonable precautions to protect the Work of others. Subcontractor is solely responsible for protecting its own Subcontract Work and, regardless of cause, neither Owner nor EDC shall be responsible for any loss or damage to the Subcontract Work. This Section does not limit Subcontractor's rights against insurance proceeds received by Owner or EDC as a result of loss of, or damage to, the Subcontract Work. The Subcontractor shall take all reasonable measures and precautions to safeguard its Subcontract Work and the Work of others with the intent of preventing any conditions whereby mold or other forms of water damage could occur to the Work. These measures and precautions include, without limitation, the proper sequencing and coordination of the Subcontract Work with the Work of others on the Project as well as proper storm water protection. Subcontractor shall in the performance and through the completion of its Subcontract Work promptly notify Contractor, in writing, of any water intrusion or onset of mold contamination, or any conditions which may cause or contribute to mold formation on the Work and/or within the building envelope, and shall further promptly undertake all necessary action to remedy the contamination or any conditions that might lead to contamination. All such action shall be at Subcontractor's sole cost.

**4.10**  Subcontractor shall promptly replace or correct any of the Subcontract Work that EDC or Owner reject as failing to conform to the requirements of this Subcontract and the other Contract Documents. If Subcontractor does not do so within the time required by Contractor, EDC shall have the right to do so, and Subcontractor shall be liable to EDC for the cost thereof, including a reasonable allowance for overhead and profit for work executed by EDC with its own forces or through others. EDC may offset against amounts due Subcontractor any such amount that remains unpaid, whether or not demand for reimbursement has been made on Subcontractor. If, in the opinion of Contractor, it is not expedient to correct or replace all or any part of the Subcontract Work that EDC or Owner reject, then EDC at its option, may deduct from the payments due, or to become due, to Subcontractor, such amounts as, in EDC's judgment, represent the greater of (1) the difference between the fair value of the Subcontract Work that EDC or Owner reject and the value thereof, if Subcontractor had complied with this Subcontract and the Contract Documents, or (2) the cost of correction. Subcontractor's remedy for wrongful rejection of the Subcontract Work by Owner shall be limited to EDC's remedy against Owner under the Contract Documents. EDC shall be liable for any increased costs caused by its wrongful rejection of the Subcontract Work if the Owner was not involved in said rejection. In such case, Contractor's rejection shall be treated as a request for a change in the Subcontract Work, with Subcontractor's recovery, if any, to be as provided in Section 6 of this Subcontract.

**4.11**  Subcontractor shall cooperate with EDC and other subcontractors whose Work must be coordinated with the Subcontract Work and shall participate in the preparation of coordinated drawings and Work schedules as required by EDC in areas of congestion, specifically noting and advising EDC of any interference by others.

**4.12**  Subcontractor will furnish periodic progress reports of the Subcontract Work as requested by EDC, including the dates of delivery for materials or equipment to be provided that may be in the course of preparation or manufacture.

**4.13**  Subcontractor shall keep the site clean of debris resulting from the performance of the Subcontract Work and shall remove and properly dispose of all debris generated by the execution of the Subcontract Work. Subcontractor shall not permit any of its employees, agents, sub-subcontractors or suppliers to eat in any structure on the Project site, unless approved in advance in writing by the EDC Project Superintendent. If the Subcontractor fails at any time to comply with this Paragraph, within forty-eight (48) hours after receipt of notification from EDC of such noncompliance (said notification may be oral or in writing), EDC may perform such necessary clean-up and deduct the cost from any amounts due Subcontractor.

**4.14**  Subcontractor shall give adequate notices pertaining to the Subcontract Work to the proper authorities and shall secure and pay for all necessary licenses and permits to carry on the Subcontract Work; a copy to be provided to EDC by Subcontractor prior to the start of the Subcontract Work.

**4.15**  Subcontractor shall at all times give personal superintendence to the Subcontract Work and have at the site at all times when any of the Subcontract Work is being performed a competent foreman or superintendent satisfactory to EDC and with authority to act for and bind Subcontractor on all matters arising out of or relating to the Subcontract. Subcontractor shall send a representative, with full authority to act on behalf of and bind Subcontractor, to all Project meetings and conferences as may be directed by EDC. EDC Construction Managers, Project Superintendents and Project Managers need to be able to communicate effectively and efficiently with the Subcontractor's workforce, in that if the work crew being provided is non-English speaking it shall be the Subcontractor's responsibility to provide a supervisor or lead worker who can fluently discuss and comprehend construction related terms and procedures in English. It will be the Subcontractor's burden to correct any problem created by the inability of a field worker to follow the guidance and directions of an EDC employee.

**NO MODIFICATIONS, STRIKE-THROUGHS, OR ADDITIONS MAY BE MADE TO THIS AGREEMENT.**

**4.16**   Subcontractor, in performance of the Subcontract Work covered hereby, is an independent subcontractor and shall have the sole discretion in the performance of such Subcontract Work, save and except that the same must be performed in accordance with the Subcontract.

**4.17**   Subcontractor shall close and lock any and all windows, doors and any other means of entrance to the Project for which Subcontractor is working at the end of their Work.

**4.18**   Subcontractor shall not park on finished driveways, sidewalks, pavers, etc.  Subcontractor is required to provide off-site parking at its own cost for all of its employees, agents, sub-subcontractors and suppliers.

**4.19**   In the event Subcontractor engages any sub-subcontractor or supplier, it shall make copies of all sub-subcontracts and Purchase Orders available to EDC upon its reasonable request.  Prior to commencing any of the Subcontract Work, Subcontractor shall furnish to EDC in writing, all names, addresses and telephone numbers of any and all laborers, subcontractors, suppliers, material men or other persons or entities supplying goods, merchandise, labor or services in connection with or in furtherance of the Subcontract Work utilizing the form attached hereto as Exhibit G. In the event any of the persons or entities noted in the foregoing list shall be replaced, or in the event additional persons or entities shall be engaged, Subcontractor shall immediately notify EDC in writing thereof and provide an updated Exhibit G to EDC for its approval. EDC will not pay, and Subcontractor will be solely responsible for payment of, any laborers, subcontractors, suppliers, material men or other persons or entities supply goods, merchandise, labor or services on the Project and were not identified on Exhibit G submitted to EDC prior to their performance of any Subcontract Work. Insurance and Bonds

## 5.   **Insurance**

**5.1**   Prior to starting the Subcontract Work, Subcontractor at its own expense, shall procure and maintain in full force throughout the entire term of the Contract Documents, on all of its operations, and shall provide certificates of insurance reflecting the following insurance policies:

**5.1.1**   Commercial General Liability with minimum limits of: $2,000,000 Aggregate Limit of Liability, $2,000,000 Products and Completed Operations, $1,000,000 Bodily Injury / Property Damage any One Occurrence, $1,000,000 Personal and Advertising Injury any One Person or Organization, $1,000,000 for each Occurrence including the following coverages: Premises Operations, Blanket Contractual Liability, Broad Form Property Damage, Independent Contractor's Liability, Mobile Equipment, Explosion, Collapse, Underground Property Damage, Residential Work, with no exclusionary language or limitations relating to soils subsidence or earth movement of any kind regardless of cause, Punitive Damages where allowable by law, and Elevators – if applicable, written on an Occurrence Form. Claims Made policies will not be accepted.

**5.1.2**   Automobile liability insurance with minimum limits of $1,000,000 as a combined single limit for bodily injury and property damage, and including coverage for the use of all owned, non-owned, leased and hired vehicles.

**5.1.3**   Workers' Compensation/ Employer's Liability.

| | |
|---|---|
| **5.1.3.1** | Subcontractor shall provide EDC with verification of worker's compensation coverage under the laws of the State in which the Subcontractor performs a service for EDC. |
| **5.1.3.2** | Subcontractor shall provide Employer's Liability coverage as follows:<br>Bodily Injury by accident - $1,000,000 each accident<br>Bodily Injury by disease - $1,000,000 each employee<br>Bodily Injury by disease - $1,000,000 policy limit |
| **5.1.3.3** | If Subcontractor is borrowing or using loaned employees (i.e., Subcontractor leases a piece of equipment and it comes with an operator or Subcontractor obtains employees from temporary agencies, etc.) a copy of the Alternate Employer's Endorsement must be included. |
| **5.1.3.4** | If Subcontractor is leasing its "employees" from a professional employer organization, a copy of the appropriate Leased Employee Worker's Compensation coverage endorsement must be included. |

**5.1.4**   An umbrella policy with minimum limits of $5,000,000 per occurrence/aggregate.

**5.2**   All insurance policies provided by the Subcontractor under the Contract Documents must be issued by insurance companies meeting A.M. Best Current policy holder rating of "A- VII" or better and all such insurance companies must be authorized to do business in the state or district in which the Project is located.  With the exception of Worker's Compensation, Owner, EDC, and their institutional lenders, if any, shall be named as Additional Insureds on all policies and Subcontractor shall furnish EDC with said certificates of insurance, including copies of endorsements evidencing above stated coverages, prior to Subcontractor's commencement of the Subcontract Work hereunder. Certificates must also reference the Project identified in the Scope of Work and Contract Documents.  Upon the request of EDC, Subcontractor will provide EDC with true and certified copies of all policies as well as any subsequent policies and endorsements related to the Contract Documents, which Subcontractor is required to procure and maintain.  All insurance company ratings must be reflected on the certificates of insurance.  All insurance policies provided by the Subcontractor under the Contract Documents shall grant EDC and Owner, and their respective successors and assigns, a Waiver of Subrogation.  The Subcontractor shall provide the following endorsements (or their equivalent) to the Commercial General Liability policy required hereunder: ISO Form CG 20 10 07 04 or CG 20 10 04 13 (Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization),  ISO Form CG 20 37 07 04 (Additional Insured – Owners, Lessees or Contractors – Completed Operations), ISO Form CG 24 04 05 09 (Waiver of Transfer of Rights of Recovery Against Others to Us), ISO Form CG 25 04 05 09 (Designated Locations General Aggregate Limit), and ISO Form CG 25 03 05 09 (Designated Construction Project(s) General Aggregate Limit). The Subcontractor shall provide the following endorsements (or their equivalent) to the Workers Compensation policy required hereunder: NCCI Form WC 00 03

---

**NO MODIFICATIONS, STRIKE-THROUGHS, OR ADDITIONS MAY BE MADE TO THIS AGREEMENT.**

# EXHIBIT 2

13 (Waiver of Right to Recover From Others Endorsement). All insurance company ratings must be reflected on the certificates of insurance. All insurance provided by the Subcontractor shall conform to these requirements and the sample certificates of insurance attached as Exhibit D.

5.3    All insurance policies to be provided by the Subcontractor hereunder shall contain a provision that such insurance will not be cancelled, materially changed or not renewed without at least thirty (30) days advance written notice to EDC by certified mail, return receipt requested. In the event of a failure of the Subcontractor to maintain said insurance, EDC shall have the right (but not the obligation) to maintain the same coverages on behalf of the Subcontractor, who agrees to furnish all necessary information thereof and to pay the cost thereof to EDC upon presentation of an invoice.

5.4    Subcontractor shall furnish EDC with renewal certificates, applicable coverage and Additional Insured endorsements for Commercial General Liability prior to the expiration of such insurance, for a period of three (3) years after completion of all works of improvements on the Project. Such continuing insurance shall comply with the requirements set forth above.

5.5    The carrying of insurance shall not be deemed to release Subcontractor or in any way diminish its liability, by way of indemnity or otherwise, as assumed by it under the Subcontract. All insurance afforded by the policy for the benefit of the Additional Insureds shall be Primary and Non-Contributory to any insurance or Self Insurance maintained by the Additional Insureds.

5.6    EDC and Subcontractor waive all rights against each other, EDC's separate contractors, and all other subcontractors and suppliers for damages caused by fire, damage, injury or loss to its equipment, tools and other property or perils to the extent covered by Builders Risk, other property insurance applicable to the Subcontract Work, or Subcontractor's Workers Compensation Insurance, except such rights as they may have to the proceeds of such insurance.

5.7    The Subcontractor shall provide payment and performance bonds as follows:

| Bond type | Bond amount ($ 0.00) | Bond delivery date | Bond form |
|---|---|---|---|
| Payment and Performance | 325,000 | 07/12/2018 | Surety Bond |

Said bonds shall include the right of EDC without further notice to the surety, to order changes within the scope of this Subcontract in the labor or materials furnished, or in the time of delivery necessary to conform to changes in EDC's Prime Contract with the Owner. If directed by EDC, the Subcontractor shall provide additional or supplemental bonds equal to any increase in the value or cost of labor and materials furnished. Any bonding company rated less than A, X by A.M. Best Company is unacceptable to EDC.

5.8    The failure of Subcontractor to fully and strictly comply at all times with the insurance and bond requirements set forth herein will be deemed a material breach of the Subcontract.

## 6.    Changes

6.1    EDC may, at any time and without notice to sureties, by written directive from EDC's President, Vice-President, Director[s] or Project Manager[s] only identifying the scope of work, direct changes, additions or deletions to the Subcontract Work to be performed by Subcontractor. Subcontractor shall perform the changed Work without delay or interruption. A directive by EDC's Superintendent or other field personnel for any changes or additional work, whether verbal or written, shall not constitute authorization for the Subcontractor to perform said work.

6.2    If Subcontractor believes any such directive from EDC or information provided by the Owner, Architect or others (i.e. an RFI response, submittal response, direction from City/County official or other written directive) requires additional cost or time, it shall not agree to, nor perform, any changes without first 1) submitting written notice to EDC's President, Vice-President, Director[s] or Project Manager[s], of the potential adjustment in additional cost or time and 2) receiving a written directive from EDC's President, Vice-President, Director[s] or Project Manager[s] directing Subcontractor to proceed under one of the following methods: a) prior to performing such changes to the Subcontract Work, submit a Subcontractor's Change Proposal pursuant to Section 6.3 below, b) perform such changes to the Subcontract Work and submit costs pursuant to Section 6.3 below, c) perform Subcontract Work on Time and Material, d) perform Subcontract Work with Unit Costs, e) perform Subcontract Work with no adjustment to contract time or cost . Failure by the Subcontractor to obtain EDC's written directive required herein shall constitute a waiver of all claims for additional compensation or time or objections it otherwise may have had to the terms of any directive issued by EDC for the subject work.

6.3    Within five (5) business days of the Subcontractor's receipt of such written directive, Subcontractor shall submit to EDC an estimate of its adjustment to the Subcontract Sum and/or schedule, if any, for performing the changed work along with all back-up documentation necessary to substantiate such claimed adjustments (the "Subcontractor's Change Proposal"). If EDC agrees with the Subcontractor's Change Proposal, the parties shall execute a Change Order identifying the agreed change in scope and the agreed modification to the Subcontract Sum, if any ("Change Order"). Agreement on any Change Order shall constitute a final settlement of all matters relating to the change in the Subcontract Work which is the subject of the Change Order, including but not limited to all direct and indirect costs associated with such change and any and all adjustments to the Subcontract Sum and time. If the Subcontractor fails to submit Subcontractor's Change Proposal in the time and manner prescribed by this Paragraph, EDC shall, in its sole discretion, determine the amount of the adjustment to the Subcontract Sum in accordance with Paragraph 6.6 hereinbelow, if any. Failure by the Subcontractor to comply with the requirements of Sections 6.1-6.5 shall constitute a waiver of all claims for additional compensation or time or objections it otherwise may have had to the terms of any directive issued by EDC for the subject work.

6.4    If EDC disagrees with the Subcontractor's Change Proposal submitted in accordance with Paragraph 6.3, EDC shall notify the Subcontractor in writing of its disagreement and, in its sole discretion, determine the amount of the adjustment to the Subcontract Sum in accordance with Paragraph 6.6 hereinbelow, if any, which shall be reflected in a written directive issued by EDC to the Subcontractor.

6.5    If the Subcontractor does not agree with the terms of any directive issued by EDC, it shall file a Claim in accordance with Section 9 of the Subcontract.

6.6    Absent written agreement by the parties to the contrary, adjustments to the Subcontract Sum for changes in the Subcontract Work shall be determined on the basis of reasonable expenditures, credits and savings in performing the Subcontract Work and attributable to the change,

NO MODIFICATIONS, STRIKE-THROUGHS, OR ADDITIONS MAY BE MADE TO THIS AGREEMENT.

including, if applicable, a reasonable allowance for overhead and profit (including all field overhead, home office overhead and any other indirect costs associated with any change) as reasonably determined by EDC. Subcontractor shall keep and present an itemized accounting of costs claimed, along with supporting data as requested by EDC to permit proper and full evaluation by EDC and/or the Owner as to the accuracy and reasonableness of the costs claimed by Subcontractor. If a change lessens Subcontractor's burden, an appropriate deductive change order will be issued for an equitable downward adjustment of Subcontractor's overhead and profit. Subcontractor shall supply EDC with all documentation necessary to substantiate the amount of the addition to or deduction from the price or time relating to the change in the Subcontract Work.

6.7    Subcontractor shall not permit Owner or any agent of Owner to enter upon the job site, interfere in any way with the construction, nor accept any order of work from the Owner, other than as reflected in the Contract Documents or Change Orders issued in accordance with the Contract Documents.

6.8    Should the parties hereto be unable to agree as to the value of the work to be changed, added or deleted, the Subcontractor shall proceed with the Subcontract Work promptly under the written directive of EDC and in accordance with the Contract Documents. If the Subcontractor properly preserves its claim in accordance with this Section 6 and Section 9 of this Subcontract as to the scope, price, time and other conditions set forth in the Change Order, the determination of the value of the Subcontract Work shall be resolved in accordance with Section 9 of this Subcontract.

6.9    In the case of deleted Subcontract Work, EDC shall have the right to withhold from payments due or to become due to the Subcontractor an amount which, in EDC's sole discretion, is equal to the value of such work until such time as the value thereof is resolved in accordance with Section 9 of this Subcontract.

6.10    All changes, additions or omissions in the Subcontract Work ordered in writing by EDC shall be deemed to be a part of the Subcontract Work hereunder and shall be performed and furnished in strict accordance with all of the terms and provisions of this Subcontract and the other Contract Documents. Subcontractor accepts the responsibility to keep its surety informed of all such modifications to its Subcontract. The obligations of Subcontractor and Subcontractor's Surety shall not be reduced, waived or adversely affected by the issuance of such change orders, additions or deductions even if Subcontractor fails to inform surety of same and EDC shall not be required to obtain consent of the surety to such modifications.

6.11    All add/alternates agreed upon are included in Exhibit A to this Subcontract Agreement.

6.12    All allowances agreed upon are included in Exhibit A to this Subcontract Agreement.

7.    **Inspection & Approvals**

7.1    Subcontractor shall be responsible for inspecting any Work of another subcontractor that may affect its own Subcontract Work and shall report the results of such inspections in writing to EDC. The Subcontractor's failure to observe and report such Defective Work to EDC shall be deemed an acceptance by Subcontractor of such Work as correct and fit to accommodate or be incorporated into the Subcontract Work. Subcontractor shall be liable for the total cost of correction of faulty workmanship.

7.2    EDC shall have the right to inspect the Subcontract Work at any time during the progress of the Subcontract Work.

7.3    Subcontractor shall provide at its own place of business, at the places of business of its subcontractors and suppliers, and at the Project site, sufficient, safe and proper facilities for the inspection of the Subcontractor Work by EDC or any of EDC's authorized representatives. Subcontractor shall notify EDC when portions of the Subcontract Work are ready for inspection.

7.4    Subcontractor shall, within forty-eight (48) hours after receiving written notice from EDC, proceed to take down and remove from the Project site all portions of Subcontract Work which EDC shall reject as unsound, improper or in any way failing to meet the requirements of the Subcontract ("Defective Work"). Subcontractor, at its own expense, shall repair or replace (as directed by EDC) all Defective Work, as well as any other Work damaged by such removal or replacement.

7.5    In addition to any shop drawings, samples and other required submittals, Subcontractor shall prepare at its own expense and furnish promptly, whenever requested by EDC, prints of shop drawings (not to exceed 7 unapproved prints and 3 approved prints), manufacturer's data, templates, schedules, reports or any other data that may be necessary, in the opinion of EDC, for review and approval by EDC and for distribution among other subcontractors and to EDC for the proper prosecution of the entire Project. Subcontractor shall lay out the Subcontract Work and be responsible for the accuracy of same. Subcontractor shall exercise the utmost diligence in obtaining all drawings, details and information necessary to perform the Subcontract Work and if at any time drawings or information necessary to perform the Subcontract Work have not been furnished, Subcontractor shall promptly inform EDC in writing as to what drawings or information may be required. Subcontractor shall, before proceeding with any affected part of the Subcontract Work, call to EDC's attention in writing any errors or inconsistencies Subcontractor may discover in the Contract Documents. The Subcontractor's submission of a shop drawing to EDC shall constitute the Subcontractor's representation, upon which EDC may rely, that the Subcontractor has reviewed the submission for accuracy and compliance with all Contract Documents and that wherever engineering is required to be performed, has been performed by a qualified and licensed engineer. Furthermore, the review of the Shop Drawing by EDC shall not constitute an undertaking by EDC to identify deficiencies in the submission, which undertaking is within the sole responsibility of the Subcontractor.

7.6    Neither the review, acceptance nor approval by EDC of any submittals by Subcontractor shall relieve Subcontractor of liability for any deviations from any requirements of the Contract Documents unless specifically called to EDC's attention, in writing, and thereafter expressly acknowledged and accepted by EDC in writing.

7.7    Any damage prior to final acceptance and payment for the Subcontract Work shall immediately be corrected and rectified by Subcontractor at its sole expense, unless Subcontractor can prove to EDC that damage was caused by others; however, this shall not be deemed a waiver by Subcontractor of any right it may have to the proceeds of any applicable Builder's Risk or other property insurance. Inspection or supervision by EDC shall not relieve Subcontractor of its obligations herein. Subcontractor shall perform, within forty-eight (48) hours upon notification, any and all punch list work submitted to it by EDC.

---

**NO MODIFICATIONS, STRIKE-THROUGHS, OR ADDITIONS MAY BE MADE TO THIS AGREEMENT.**

**8.** **Termination and Termination for Convenience**

**8.1** Should Subcontractor fail, in the reasonable opinion of EDC, at any time to supply a sufficient number of properly skilled personnel or sufficient materials and equipment of the proper quality, or fail in any respect to prosecute the Subcontract Work with promptness and diligence, or fail to correct Defective Work promptly or fail in the performance of any of the requirements contained in the Contract Documents, EDC may, at its option, provide such labor, materials and equipment and deduct the cost thereof, together with all loss or damage occasioned thereby, from any money then due or thereafter to become due Subcontractor either under the Subcontract or any other agreement between EDC and Subcontractor. EDC shall provide forty-eight (48) hour prior written notice of any such failure to Subcontractor, except in an emergency.

**8.2** Should the Subcontractor at any time, whether before or after final payment, refuse or neglect to supply sufficiently skilled personnel or materials or equipment of the proper quality and quantity, or fail in any respect to prosecute the Subcontract Work with promptness and diligence in accordance with the Project Schedule (as it may be changed by EDC from time to time), or cause by any act or omission the stoppage, hindrance, delay or interference with or damage to the Work of EDC, the Owner or other subcontractors, or fail in the performance of any of the terms and provisions of the Subcontract, or is unable to meet its debts as they mature, or should there be filed by or against the Subcontractor a petition in bankruptcy or for an arrangement or reorganization, or should the Subcontractor become insolvent or be adjudicated a bankrupt or go into liquidation or dissolution, either voluntarily or involuntarily, or under a court order, or make a general assignment for the benefit of creditors, or otherwise acknowledge such insolvency, then in any of such events, each of which shall constitute a default hereunder on the Subcontractor's part, EDC shall have the right, in addition to any other rights and remedies provided by the Subcontract or by law, after two (2) days written notice to the Subcontractor mailed or delivered to the last known address of the latter, to terminate Subcontractor's right to continue to perform all or a portion of the Subcontract Work. Thereafter, EDC may take possession of the site and Subcontract Work, including all materials, tools, appliances and equipment of Subcontractor at the Project site, and through itself or others provide labor, equipment and materials to execute the Subcontract Work on such terms and conditions as EDC deems reasonably necessary, and EDC shall deduct the cost thereof, including all charges, expenses, losses, costs, damages, overhead, general conditions costs, disbursements incurred in connection with re-procurement, attorney's fees, expert fees and consultant's fees incurred as a result of Subcontractor's failure to perform, plus a mark-up of eight percent (8%), from any money then due or thereafter to become due Subcontractor either under the Subcontract or any other agreement between EDC and Subcontractor. Subcontractor shall only be entitled to one cure period on the Project. If EDC provides a notice of default of this Subcontract, and Subcontractor cures within the prescribed time period, but subsequently defaults again by committing one of the events of default described above, EDC shall have the right to declare Subcontractor in default and Subcontractor shall not be entitled to a second notice and opportunity to cure pursuant to this Paragraph. It is the intent of the parties that Subcontractor shall only be entitled to one notice and opportunity to cure a default on the Project.

**8.3** If EDC so terminates the employment of Subcontractor, Subcontractor shall not be entitled to any further payments under the Subcontract until the Subcontract Work has been completed and accepted by EDC. In the event the remaining unpaid balance of the Subcontract Sum is less than EDC's cost of completion (including all damages, attorneys' fees, expert fees and consultant's fees incurred by EDC), Subcontractor agrees to pay the difference to EDC within seven (7) days after EDC demands payment for same from Subcontractor.

**8.4** Additionally, EDC shall have the right to terminate the Subcontract, by written notice, without Subcontractor being at fault, for any cause or for EDC's convenience, and require Subcontractor to immediately stop performance of the Subcontract Work. In such event, EDC shall pay Subcontractor for that portion of the Subcontract Work actually performed in an amount proportionate to the Subcontract Sum. EDC shall not be liable to Subcontractor for any other costs or damages, nor for prospective profits on portions of the Subcontract Work not performed. Any default termination of Subcontractor subsequently determined to have been erroneous or otherwise not available to EDC, shall be deemed to be a termination for convenience and Subcontractor shall be limited to the damages provided by this Paragraph. Subcontractor shall include a termination for convenience clause similar to this one in all of its subcontracts and purchase orders.

**9.** **Claims**

**9.1** Any claim Subcontractor may have against EDC arising out of or relating to this Subcontract or the Contract Documents must be submitted by Subcontractor to EDC in writing within five (5) business days of the first occurrence of the event giving rise to such claim. Any failure by Subcontractor to submit said written claim within that five (5) business day period shall be deemed an absolute waiver of such claim by Subcontractor. Subcontractor's written claim must set forth, in reasonable detail, the facts concerning the claim, the contractual basis for the claim and an estimate of the additional time and/or compensation Subcontractor is seeking under the claim. Subcontractor acknowledges that provision of such notice is an essential condition precedent to Subcontractor's rights in connection with any such claimed costs, delays, obstructive hindrances or interferences because said notice permits EDC to fully identify and expeditiously address and avoid such cause or causes.

**9.2** Within a reasonable period of time after EDC receives a proper written claim from Subcontractor, EDC shall advise Subcontractor in writing as to EDC's initial determination concerning the claim. If Subcontractor disagrees with or otherwise wishes to further contest said initial determination, Subcontractor shall notify EDC in writing, setting forth in detail the basis for its objections, within five (5) business days of its receipt of EDC's written initial determination. If Subcontractor fails to provide its written objections within said five (5) business days, Subcontractor will be deemed to have accepted EDC's initial determination and waived any objections it otherwise may have had to such initial determination. In the event EDC submits the Subcontractor's claim to the Owner, EDC will advise the Subcontractor in writing as to the Owner's determination concerning the claim within ten (10) days of EDC's receipt of the Owner's determination concerning the claim.

**9.3** To the extent Subcontractor has preserved its claim rights after EDC's initial written determination, the parties will attempt to negotiate in good faith to resolve the dispute. Said negotiations should be conducted within fourteen (14) days after EDC receives Subcontractor's written objections to its initial determination. If the parties fail to resolve the dispute within the above noted fourteen (14) day period, Subcontractor may seek to appeal EDC's initial determination by whatever means are available to it at law.

**9.4** In the event the Subcontractor is damaged by any act, omission or delay of the Owner, Architect or Engineer, or any changes, additions or deletions by Owner and provided that Subcontractor has preserved its claim rights under this Subcontract, Subcontractor agrees to be bound by

---

**NO MODIFICATIONS, STRIKE-THROUGHS, OR ADDITIONS MAY BE MADE TO THIS AGREEMENT.**

the dispute remedies contained in the Contract Documents. In the event the Subcontractor desires to pursue a claim denied by the Owner or Architect, the Subcontractor agrees to prosecute such claims in accordance with the terms of this Subcontract and applicable requirements of the Contract Documents, and to bear all costs and expenses, including legal costs and expenses incurred by EDC, in the preparation and prosecution of such claim. Subcontractor agrees to be exclusively bound by the remedies of this Section and shall maintain no action against EDC for these claims. Subcontractor shall not be entitled to receive from EDC a greater amount or time extension than EDC recovers from the Owner attributable to Subcontractor's claim, and Subcontractor agrees that it will accept such amounts as are received by EDC as full discharge and satisfaction of all such claims.

9.5    In the event EDC prevails, in whole or in part, in any dispute between EDC and the Subcontractor relating to the Subcontract or the Project, EDC shall be entitled to receive from the Subcontractor reimbursement for its reasonable attorneys', paralegals' and experts' fees, costs and expenses.

9.6    Notwithstanding the provisions of Paragraph 9.3 above, if any claim or lien is made or filed with or against EDC, the Owner, the Project or the Project funds by the Subcontractor or any person claiming that the Subcontractor or any subcontractor or other person under subcontract to Subcontractor, or any person or entity employer or engaged by or through the Subcontractor at any tier, has failed to make payment for any labor, services, materials, equipment, taxes or other items or obligations furnished or incurred for or in connection with the Subcontract Work, or if any such claim or lien is filed or presented, or if EDC in good faith believes that such a claim or lien may be filed or brought, or if at any time there shall be evidence of such nonpayment or of any claim or lien for which, if established, EDC or the Owner might become liable and which is chargeable to the Subcontractor, or if the Subcontractor or any subcontractor or any other person under subcontract to Subcontractor, or any person or entity employed or engaged by or through Subcontractor at any tier, causes damage to Work or to the Subcontract Work, or if the Subcontractor fails to perform or is otherwise in default under any of the terms or provisions of this Subcontract, EDC shall have the right (A) to retain from any payment then due or thereafter to become due an amount which it deems sufficient to (1) satisfy, discharge and/or defend against any such claim or lien or any action which may be brought or judgment which may be recovered thereon, (2) make good any such nonpayment, damage, failure or default, and (3) compensate EDC and the Owner for and indemnify and hold them harmless against any and all losses, liability, damages, costs and expenses, including legal fees, expert fees and disbursements, which may be sustained or incurred by either or both of them in connection therewith; and (B) to demand that Subcontractor provide, within five (five) days from the date of the filing thereof, proof to the satisfaction of EDC and Owner that such non-payment, claim or lien has been fully satisfied, dismissed and discharged. Upon the failure of Subcontractor to fulfill the requirements of a demand issued by EDC pursuant to subsection (B) above, EDC may, in such manner as EDC may in its sole discretion determine, secure the satisfaction, dismissal and discharge of such claim or lien, by payment or otherwise, and Subcontractor shall within five (5) days of demand therefor, be liable for and pay to EDC all amounts (including legal fees, costs and disbursements) incurred or suffered by EDC or Owner arising out of or related thereto. EDC shall, in addition, have the right to apply and charge against the Subcontractor so much of the amount retained as may be required for the foregoing purposes. Subcontractor further agrees to indemnify, defend and hold harmless EDC and Owner, upon demand, for any and all such claims, liens, and the costs, expenses (including legal fees, expert fees and disbursements), damages and liabilities arising out of or related thereto. Subcontractor acknowledges (1) that discharge of such liens or claims by bond imposes liability upon a surety and EDC, and (2) that EDC is not required to discharge such lien or claims by bond when exercising its rights hereunder.

9.7    The Subcontractor agrees that EDC shall have the exclusive right to join the Subcontractor as a party in any dispute resolution procedure (including without limitation ADR procedures, binding arbitration or other judicial or non-judicial proceeding) between the Owner and EDC, together with such other subcontractors or parties as may be appropriate, where in the judgment of EDC the issues in dispute are related to the Subcontract Work or performance of the Subcontractor. Furthermore, the Subcontractor expressly agrees to waive its right to trial by jury in case EDC elects to resolve the dispute in litigation.

9.8    Pending final resolution of a Claim, the Subcontractor shall proceed diligently with performance of the Subcontract Work.

10.    **Indemnity**

10.1    To the fullest extent permitted by law, Subcontractor ("Indemnitor") shall indemnify, defend, protect and hold harmless EDC and the Owner, and the officers, directors, agents or employees of any of them (collectively "Indemnitee or Indemnitees") from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, experts' fees and consultants' fees, arising out of or resulting from performance of the Subcontract Work, whether such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property including loss of use or economic loss resulting therefrom, regardless of whether or not such claim, damage, loss or expense is caused in whole or in part by a party indemnified hereunder. However, the Indemnitor shall have no obligation to indemnify, defend, protect and hold harmless the Indemnitees for any losses or damages arising out of bodily injury to a person or damage to property caused by or resulting from the sole negligence of the Indemnitee[s].

10.2    The indemnity obligations under this Section shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Section. EDC and Subcontractor agree that the indemnification given herein shall be limited to the amount of the loss suffered by the Indemnitees or Five Million Dollars ($5,000,000.00) per occurrence, whichever is less, which amount is stipulated by the parties to bear a reasonable commercial relationship to the Subcontract. This Indemnification shall be deemed part of the Subcontract and to fully comply with any applicable provision of the *D.C. Code*, in all respects.

10.3    The duty to defend under this Section is independent and separate from the duty to indemnify, and the duty to defend exists regardless of any ultimate liability of Subcontractor or any Indemnified Party. The duty to defend arises immediately upon presentation of a Claim by any party and written notice of such Claim being provided to Subcontractor. Subcontractor's obligation to indemnify and defend under this Section will survive the expiration or earlier termination of the Subcontract until it is determined by final judgment that an action against the Indemnified Party or Indemnified Parties for the matter indemnified hereunder is fully and finally barred by the applicable statute of limitations.

**NO MODIFICATIONS, STRIKE-THROUGHS, OR ADDITIONS MAY BE MADE TO THIS AGREEMENT.**

# EXHIBIT 2

**10.4**   If any word, clause or provision of this Section is determined not to be in compliance with *D.C. Code*, including any amendments thereto, it shall be stricken and the remaining words, clauses and provisions shall remain in full force and effect. It is the intent of the parties that this Indemnification complies fully with *D.C. Code*, including any amendments thereto, in all respects.

**10.5**   Furthermore, this Indemnification is in addition to and not in lieu of common law indemnification to which the Indemnitee is entitled.

## 11.   Damage to Work

**11.1**   All loss or damage to the Subcontract Work resulting from any cause whatsoever shall be borne and sustained by Subcontractor and shall be solely at its risk until final acceptance by EDC, unless Subcontractor can prove to EDC that damage was caused by others. Subcontractor shall at all times and at its expense protect all of its labor, materials, supplies, tools and equipment against any damage, injury, destruction, theft or loss, and likewise for those of its mechanics, laborers, subcontractors and suppliers, for all of which Subcontractor shall be solely responsible, and in no event shall EDC be liable or responsible therefor. Subcontractor shall at its own expense promptly repair or replace damage to the Subcontract Work or the Work of others, or to any part of the Project, resulting from its activities. Nothing in this Paragraph shall be deemed to preclude or waive any rights any parties may have to any applicable Builder's Risk or other property insurance.

## 12.   Compliance with Law and Safety

**12.1**   All work, labor, services and materials to be furnished by Subcontractor pursuant to the Contract Documents must strictly comply with all applicable federal, state and local laws, rules, regulations, statutes, building codes, ordinances and directives ("Legal Requirements") now in force or hereafter in effect. All work, labor, services or materials necessary to comply with said Legal Requirements will be furnished by Subcontractor as part of the Subcontract without any additional compensation, unless such additional compensation is permitted by the terms of the Subcontract. Subcontractor agrees to indemnify, defend and save EDC harmless from and against any and all claims, losses or expenses caused directly or indirectly by its failure to fully comply with all Legal Requirements.

**12.2**   Subcontractor agrees that the prevention of accidents to personnel engaged in the Subcontract Work under Subcontractor is solely its responsibility. Subcontractor shall comply with all applicable safety laws and with any safety standards established during the progress of the Subcontract Work by EDC, and if given, attend an EDC Safety Orientation given by EDC on the Project, including but not limited to the EDC Safety Policy. If requested by EDC, Subcontractor shall submit a safety plan for review by EDC. The review of any safety plan by EDC shall not be deemed to release Subcontractor or in any way diminish its liability, by way of indemnity or otherwise, as assumed by it under the Subcontract. Subcontractor must furnish EDC, prior to commencement of Subcontract Work, all applicable Material Safety Data Sheets for products and materials used in completing the Subcontract Work.

**12.3**   When so ordered, Subcontractor shall stop any part of the Subcontract Work which EDC deems unsafe until corrective measures satisfactory to EDC have been taken. Should Subcontractor neglect to adopt such corrective measures, EDC may do so and deduct the cost from any payments due Subcontractor under the Subcontract or any other agreement between EDC and Subcontractor. Subcontractor shall notify the EDC Project Superintendent immediately in the event of an OSHA inspection.

**12.4**   Subcontractor agrees to comply with the requirements of the Williams-Steiger Occupational Safety and Health Act of 1970 and amendments thereof or similar laws or regulations and hereby releases and agrees to hold harmless, defend and indemnify EDC of, from and against any liability, losses, damages, costs and expenses of whatsoever nature due to the negligence of Subcontractor's employees, independent contractors or other agents of Subcontractor. Subcontractor also agrees to notify the EDC Project Superintendent immediately in the event of an OSHA inspection. Subcontractor shall exercise full responsibility for compliance hereunder by itself, its agents, employees, material men and subcontractors with respect the Subcontract Work. Subcontractor shall furnish to EDC in writing, the name of its OSHA Competent Person utilizing the form attached hereto as Exhibit H.

**12.5**   Subcontractor shall be responsible for and reimburse EDC for any fines, penalties or fees imposed by any government agency on EDC for any violation whatsoever, on the part of Subcontractor, Subcontractor's agents or Subcontractor's sub-subcontractors.

**12.6**   Subcontractor shall immediately report to EDC any accident or occurrence on the Project site resulting in bodily injury, death, illness or damage to property, material or equipment and provide EDC copies of all related accident reports. As soon as possible after the occurrence of the accident, Subcontractor shall deliver to EDC a written report conforming to applicable laws detailing the circumstances, events and witnesses of any accident and a copy of written notice sent to Subcontractor's insurance company. Subcontractor shall immediately comply with the request of EDC or its insurance company or agents for assistance and information concerning the accident and shall fully cooperate in any investigation of the accident.

**12.7**   Subcontractor warrants and represents to EDC that it holds all competency licenses required for the Subcontract Work by applicable local, state and federal law. Subcontractor shall comply with all laws, codes, ordinances, rules, statutes, building codes, regulations, orders, and directives of any federal, state, or local governmental body, board, authority, department, agency, or court, expressly including, without limitation, the Occupational Safety and Health Administration, and the Equal Employment Opportunity Commission (the "Authorities"), pertaining to (i) the Subcontract Work, including providing any notices required by any Legal Requirements, and securing and paying for all permits, licenses and inspections necessary for the performance of the Subcontract Work, and (ii) the employees and other personnel employed or engaged by Subcontractor. Without limiting the scope of this Paragraph, Subcontractor shall comply with all applicable Legal Requirements pertaining to the employment of labor, hours of labor, occupational safety and health requirements, working conditions, worker's compensation, payment of wages, and payment of taxes, including unemployment, social security and other payroll taxes, including applicable contributions from such persons. If Subcontractor violates any Legal Requirements, Subcontractor shall assume full responsibility therefor, shall bear all costs and damages attributable thereto, and shall indemnify and hold harmless EDC for all costs, including attorney fees, damages, fines and penalties associated therewith.

**12.8**   No smoking is permitted inside the existing building[s] or the building[s] to be constructed on the Project during any stage of construction.

**12.9**   Illegal drugs and alcohol are not permitted on the Project or on any EDC work site, ever.

---

**NO MODIFICATIONS, STRIKE-THROUGHS, OR ADDITIONS MAY BE MADE TO THIS AGREEMENT.**

# EXHIBIT 2

## 13.  Patents

13.1  Subcontractor agrees to pay all royalties and license fees and to indemnify, defend and hold harmless EDC from any and all loss, damage or expense to which they may be subjected to from claims or litigation for the use or misuse of any patented or unpatented invention or process, used or furnished by Subcontractor.

## 14.  Assignments

14.1  Neither the Subcontract nor any interest therein may be transferred, voluntarily or involuntarily, without the prior written consent of EDC. EDC may, without Subcontractor's consent, assign this Subcontract, in whole or in part, with prior or subsequent notice to Subcontractor and its Surety, and Subcontractor agrees to execute all consents reasonably required to facilitate such assignment(s). In the event of an assignment to the Owner or its Lender[s], the Subcontractor agrees to perform its Work for the assignee and further agrees that the assignee will be responsible for only those obligations accruing after the assignee's acceptance of the assignment.

## 15.  Guarantee

15.1  Subcontractor shall perform all Subcontract Work in a good and workmanlike manner, and warrants that all labor and services performed, and all materials furnished by Subcontractor will meet the greater of the Federal Housing Administration ("FHA") minimum property standards, Veterans Administration ("VA") requirements, applicable federal, state and local building code requirements, Scope of Work or Standard Specifications or other requirements set forth in the Contract Documents.

15.2  Subcontractor warrants to EDC and Owner that all materials and equipment furnished shall be new unless otherwise specified, and that all Subcontract Work shall be of good quality, free from faults and defects and in conformance with all requirements of the Subcontract and other Contract Documents. All warranties provided by the Subcontractor, including express and implied warranties in the Contract Documents and the Subcontract and all warranties provided by law, shall run to and be for the benefit of the Owner, and the Owner shall have   a direct right of action against the Subcontractor for any breach of said warranties, in addition to any other remedies which might be available under this Contract. All guarantees or warranties of materials furnished by Subcontractor, including any manufacturer or supplier, shall be deemed to run for the benefit of the Owner. Upon Substantial Completion of the Work, the Subcontractor shall and does hereby assign to the Owner the benefits of all warranties and guarantees provided hereunder (including assignment of the subcontracts itself if necessary to perfect such assignment), but such assignment shall not relieve the Subcontractor of its warranty obligations to EDC and the Owner under the Subcontract, the Contract Documents or at law. Notwithstanding the foregoing assignment, prior to final acceptance of the Project by the Owner, the Subcontractor shall deliver to EDC three (3) bound volumes of all guarantees and warranties on material furnished by all manufacturers and suppliers to the Subcontractor, with duly executed instruments properly assigning the guarantees and warranties to the Owner. The Subcontractor shall obtain from its manufacturers and suppliers guarantees and warranties according to the Subcontract terms and upon the optimum terms and longest periods reasonably obtainable. The documentation must also clearly describe proper operational and maintenance activities required to sustain said warranties. The guarantees and warranties herein shall not be construed to modify or limit in any way any rights or actions which EDC or the Owner may have against the Subcontractor by law or statute or in equity.

15.3  Subcontractor agrees to make all repairs and correct such defects under the warranties required by the Subcontract, including punch list work, within eight (8) hours of notice of such defect, including punch list work, in an emergency and within forty-eight (48) hours of notice of such defect, including punch list work, on a non-emergency basis. EDC shall determine whether an emergency exists, in its sole and absolute discretion. In the event Subcontractor fails to timely perform in accordance with this Paragraph, EDC may employ an independent source to complete Subcontractor's performance and deduct such cost from any payments due the Subcontractor under the Subcontract or any other agreement between EDC and Subcontractor. Subcontractor agrees to indemnify EDC and also agrees that such employment by EDC shall not affect the Subcontractor's warranty.

15.4  Subcontractor hereby assumes toward EDC all obligations and responsibilities that EDC assumes toward the Owner relative to the Subcontractor's Work, and Subcontractor agrees to be bound to EDC by all the provisions in EDC's contracts and agreements with the Owner that afford remedies and redress to the Owner.

15.5  Subcontractor shall schedule all Subcontract Work to the requirements of EDC. Subcontractor shall staff the job with sufficient personnel to complete the Subcontract Work on or before schedule.

15.6  All labor and materials furnished by the Subcontractor shall be in accordance with the Drawings and Specifications referenced in the Exhibits to Subcontract. The Subcontractor shall keep a copy of such Drawings and Specifications (an index of which is attached as Exhibit E) on the Project site while the Subcontract Work is in progress. Subcontractor acknowledges that Subcontractor is thoroughly familiar with the Drawings and Specifications as such Drawings and Specifications materially affect the Subcontract Work contracted for herein. The Subcontractor further acknowledges that the Drawings and Specifications are sufficient to enable the Subcontractor to complete its Subcontract Work on or before schedule, for the Subcontract Sum set forth in Section 3 of this Subcontract above, and that such Drawings and Specifications include all Subcontract Work, whether or not shown or described, which reasonably may be inferred to be required for the completion of the Subcontract Work in full compliance with all applicable codes, laws, ordinances and regulations. Notwithstanding the dimensions on the Plans, Specifications and other Contract Documents, it shall be the obligation and responsibility of the Subcontractor to take such measurements as will insure the proper matching and fitting of the Subcontract Work covered by this Subcontract with contiguous Work.

15.7  The Subcontractor shall be provided with a copy of the Plans solely and exclusively for execution of the Subcontract Work and shall not use the Plans on other projects or for additions to this Project outside the scope of the Work without the specific written consent of the Owner and Architect. The Subcontractors and its Sub-subcontractors and suppliers are granted a limited license to use and reproduce applicable portions of the Drawings, Specifications and other documents prepared by the Architect appropriate to and for use solely in the execution of the Subcontract Work under the Contract Documents. All copies made under this license shall bear the statutory copyright notice, if any, shown on the Drawings, Specifications and other documents prepared by the Architect.

---

**NO MODIFICATIONS, STRIKE-THROUGHS, OR ADDITIONS MAY BE MADE TO THIS AGREEMENT.**

**15.8** The Subcontractor further acknowledges and represents to EDC that it has visited and examined the Project site upon which the Subcontractor Work shall be performed, that it has examined all conditions of every kind and nature that may affect the Subcontract Work, and that it is fully familiar with all such conditions. In connection therewith, the Subcontractor represents and warrants to EDC that it has, by careful examination, satisfied itself as to: (a) the nature, location and character of the Project site, including, without limitation, surface and subsurface conditions that are visually observable, all structures and obstructions pertaining thereto, both natural and man-made, and all visually observable surface and subsurface conditions of the areas surrounding the site; (b) the nature and character of the area in which the Project site is located, including, without limitation, site access, available labor supply and cost, available equipment supply and cost; and (c) the quality and quantity of all materials, supplies, tools, equipment, labor and services of any kind necessary to complete the Subcontract Work on or before schedule and for the Subcontract Sum set forth in Section 3 above. The Subcontractor acknowledges that the property on which the Project and Work are located may be occupied and in use during the execution of the Work. Subcontractor shall perform and coordinate the Subcontract Work in such a manner that the portions of the property occupied and in use (including through previously granted easements) will not be encumbered or the use interfered with or interrupted.

**15.9** Subcontractor agrees to promptly cure, without cost to EDC, any and all Defective Work which may appear within the guarantee, Condo Warranty Periods or Warranty Periods established in the Contract Documents, and if no such period is stipulated in the Contract Documents, then such guarantee shall be for a period of two (2) years from the date of Substantial Completion of the Project, as certified by the Owner and/or Architect. Subcontractor further agrees to execute any special guarantees as provided by the Contract Documents or required by law. Subcontractor shall require similar guarantees from all its subcontractors and suppliers.

**15.10** Subcontractor shall pay for the repair and replacement of all Defective Work, as well as all costs for repairing or replacing other property damaged or disturbed by making such replacements or repairs of the Defective Work. This guarantee is in addition to all other guarantees, warranties and rights contained in the Contract Documents or at law.

**15.11** Subcontractor's Work shall be warranted and guaranteed for the time period set forth in the Contract Documents, which shall be a minimum of one (1) year (the "Warranty Periods"). The Warranty Periods begin to run on the date the Project is Substantially Complete, as certified by the Owner and the Architect, unless otherwise stated in the Contract Documents. Subcontractor agrees to make all repairs and correct all defects under the warranty within eight (8) hours of notice of such defect in an emergency and within forty-eight (48) hours of notice of such defect on a non-emergency basis. EDC shall, within its sole discretion, determine whether an emergency exists. In the event Subcontractor fails to timely perform in accordance with this Paragraph, EDC may employ an independent contractor to complete Subcontractor's performance and deduct such cost from any payments due the Subcontractor under the Subcontract or any other agreement between EDC and Subcontractor. Subcontractor agrees to indemnify EDC for such costs and also agrees that such employment of another contractor by EDC shall not affect the Subcontractor's warranty.

**15.12** Subcontractor shall furnish to EDC all warranties, guarantees and operations and maintenance documents from the manufacturers of the appliances and equipment included in the Subcontract Work, and shall further furnish all certificates required by EDC or by any lending institution or governmental agency having jurisdiction over the Subcontract Work.

**15.13** EDC shall have the right, at its sole option, to withhold from all payments to the Subcontractor five percent (5%) of the Subcontract Sum to ensure the faithful and timely performance of the warranty Work identified in this Section 15 (the "Warranty Retainage"). EDC shall have the right to withhold this Warranty Retainage only if the Subcontract Work is in the following trades: HVAC, sprinkler, roofing, windows, masonry and framing. If the Subcontractor posts a bond a letter of credit in the amount of five percent (5%) of the Subcontract Work, the terms of which shall meet EDC's reasonable satisfaction, EDC shall not withhold or shall release previously withheld Warranty Retainage. Upon the expiration of the Condo Warranty Periods and/or the Warranty Periods set forth in this Section 15, EDC shall release the Warranty Retainage or, if posted, the letter of credit.

**15.14** Should Subcontractor fail or refuse to make the repairs or correct the defects within the time periods prescribed by this Paragraph, EDC shall have the right to perform or cause to be performed by another contractor, the repairs or correct the defects, and in such event, Subcontractor shall be responsible for the costs of such repairs or correction of the defects.

## 16. Taxes, Charges

**16.1** Subcontractor shall be responsible for all payments of taxes, contributions and/or premiums payable on its employees or on its operations under workers' compensation laws, unemployment compensation laws, the Federal Social Security Act, health and welfare benefit plans, gross business taxes, sales and use taxes and any other taxes, contributions and/or premiums which are payable by the employees, and Subcontractor shall indemnify, defend and save EDC harmless from all liability, loss and expense resulting from Subcontractor's failure to comply with these requirements. Subcontractor shall comply with all rules and regulations at any time applicable hereto and shall, on demand, substantiate to EDC's reasonable satisfaction that all taxes and other charges are being properly paid.

## 17. Equal Opportunity

**17.1** Subcontractor shall not discriminate against any employee or applicant for employment because of race, religion, color, sex, age or national origin. Subcontractor shall comply with all equal opportunity or affirmative action requirements or plans.

## 18. Miscellaneous

**18.1** Any failure of EDC to enforce any of the terms and provisions of the Subcontract shall not constitute a waiver of such required performance by Subcontractor or of any other performances in the future required by Subcontractor hereunder.

**18.2** The Subcontract comprises the entire agreement between the parties relating to the Subcontract Work covered hereby and no other agreement, representation or understanding concerning the same has been made and no oral statement, understandings or agreement shall affect the terms hereof.

**18.3** To the best knowledge and belief of the parties, the Subcontract contains no provision that is contrary to federal or state law, ruling or regulation. However, if any provision of the Subcontract shall conflict with any such law, ruling or regulation, then such provision shall continue

---

**NO MODIFICATIONS, STRIKE-THROUGHS, OR ADDITIONS MAY BE MADE TO THIS AGREEMENT.**

in effect only to the extent permissible. In the event any provision is thus inoperative, the remaining provisions shall, nevertheless, remain in full force and effect.

**18.4**   The Subcontract shall be governed by the laws of the jurisdiction in which the Project is located. Any action to enforce or interpret the Subcontract, in whole or in part, shall be brought only in the Superior Court for the District of Columbia or the United States District Court for the District of Columbia, if the jurisdictional limits are met.

**18.5**   THE SUBCONTRACTOR AND EDC SPECIFICALLY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY COURT WITH RESPECT TO ANY CONTRACTUAL, TORTIOUS OR STATUTORY CLAIM, COUNTERCLAIM OR CROSS-CLAIM AGAINST THE OTHER ARISING OUT OF OR CONNECTED IN ANY WAY TO THE PROJECT OR THIS SUBCONTRACT BECAUSE THE PARTIES HERETO, BOTH OF WHOM ARE REPRESENTED BY COUNSEL, BELIEVE THAT THE COMPLEX COMMERCIAL AND PROFESSIONAL ASPECTS OF THEIR DEALINGS WITH ONE ANOTHER MAKE A JURY DETERMINATION NEITHER DESIRABLE NOR APPROPRIATE.

**18.6**   The Subcontract shall be binding on and inure to the benefit of the heirs, successors and permitted assigns of the parties hereto.

**18.7**   All notices to be sent to Subcontractor or EDC shall be in writing. All notices to EDC shall be sent to the Project Manager assigned to the Project and Kevin Ash, President of EDC.

**18.8**   All sections and headings are used for convenience only and do not affect the construction or interpretation of the Subcontract.

**18.9**   Unless the context of the Subcontract otherwise clearly requires, references to the plural include the singular, the term "including" is not limiting and the terms "hereof," "herein," "hereunder" and similar terms in the Subcontract refer to the Subcontract as a whole and not to any particular provision of the Subcontract unless stated otherwise. Additionally, the parties hereto acknowledge that they have carefully reviewed the Subcontract and have had the opportunity to consult with legal counsel of their choosing with respect thereto, and that they understand its contents and agree that the Subcontract shall not be construed more strongly against any party hereto, regardless of who is responsible for its preparation.

**18.10**   The parties agree that the Subcontract can be executed in counterparts and facsimile signature pages shall have the same force and effect as original signature pages.

**18.11**   This Subcontract is solely for the benefit of the signatories hereto and represents the entire and integrated agreement between the parties hereto and supersedes all prior negotiations, representations or agreements, whether written or oral. No other agreements, representations, warranties or other matters, whether oral or written, shall bind the parties.

**18.12**   EDC has the right at any and all times, without any additional compensation under the Subcontract, to modify the Project's schedule, to suspend, delay, or accelerate, in whole or in part, the commencement of execution of Subcontractor's work or any portion thereof or to vary the sequence thereof, to reasonably decide the time, order and priority of the various portions of Subcontractor's Work, and all other matters relating to the scheduling and coordination of Subcontractor's Work with other Work on the Project.

**18.13**   Subcontractor agrees to indemnify the Indemnified Parties as defined in the Prime Contract to the same extent the EDC is required to indemnify the Indemnified Parties under the provisions of Paragraph 3.18 of the General Conditions to the Prime Contract.

**18.14**   Subcontractor shall furnish such financial information, project history, insurance and other information as shall be required by the Owner's Lenders.

**18.15**   In the event of any default by EDC under the Subcontract which would permit the Subcontractor to terminate such Subcontract, or in the event of the termination of the Contract Documents, the Owner shall have the right, but not the obligation, prior to termination of the Subcontract and after notice by the Subcontractor to the Owner of such default (or, in the case of termination of the Contract Documents, after notice by Owner to Subcontractor of the termination), to assume EDC's rights and obligations under the Subcontract arising after such notice. Owner shall have the right to review each subcontract to ensure compliance with this subsection.

**18.16**   The Subcontractor represents and warrants to EDC (in addition to any other representations and warranties contained in the Contract Documents), as a material inducement to EDC to enter into this Subcontract, which representation and warranty shall survive the execution and delivery of the Contract Documents, any termination of the Contract Documents, and the Final Completion of the Work that Subcontractor is financially solvent, able to pay all debts as they mature, and possessed of sufficient working capital to complete the Subcontract Work and perform all obligations hereunder.

**18.17**   In addition to the Contract Documents itemized in Section 1 of this Subcontract (but not attached hereto), the Subcontract includes the following exhibits:

| | |
|---|---|
| Exhibit A: | Subcontractor Scope of Work |
| Exhibits B-1, B-2 and B-3: | Subcontractor Partial Lien Waiver and Release Forms (Conditional and Unconditional) and Sub-tier Subcontractor/Supplier Partial Lien Waiver and Release Form |
| Exhibits C-1, C-2 and C-3: | Subcontractor Final Lien Waiver and Release Forms (Conditional and Unconditional) and Sub-tier Subcontractor/Supplier Final Lien Waiver and Release Form |
| Exhibit D: | Sample Certificates of Insurance |
| Exhibit E: | Index of Drawings and Specifications |
| Exhibit F: | Project Schedule |
| Exhibit G: | Verified List of Subcontractors and Suppliers |
| Exhibit H: | Subcontractor OSHA Competent Person(s) |
| Exhibit I: | Project Specific Addendum |
| Exhibit J: | EDC Safety Policy |

**NO MODIFICATIONS, STRIKE-THROUGHS, OR ADDITIONS MAY BE MADE TO THIS AGREEMENT.**

# EXHIBIT 2

Signed and dated the day and year first above written.

SUBCONTRACTOR:   SMITH & SONS LLC

By:_____

Print Name:_____Michael A. Smith_____

Its:_____President/CEO_____

ELLISDALE CONSTRUCTION, LLC

By:_____

Print Name:_____Kevin D. Ah_____

Its: President



NO MODIFICATIONS, STRIKE-THROUGHS, OR ADDITIONS MAY BE MADE TO THIS AGREEMENT.

# EXHIBIT 2

 **ELLISDALE**

# Abrams Hall Senior Housing – 14 Middle

Building 14, 6900 Georgia Avenue NW, Washington, D.C. 20307

## Exhibit A: Scope of Work

### Article I: General

1.  This Subcontract Agreement between **"TBD"** (hereafter referred to as "Subcontractor") and Ellisdale Construction, LLC ("Contractor" or "EDC") is for all **"Site Work, Excavation, and Wet Utilities"** work associated with the renovation of Building 14 Middle at 6900 Georgia Avenue NW, Washington, D.C. 20307, also referred to as Abrams Hall Senior.  This is a 101,721 SF existing apartment renovation of 80 senior housing units.

2.  The intent of this subcontract agreement/scope is that **"TBD"** furnishes and installs all **Site Work, Excavation, and Wet Utilities** work per the Contract Documents. The omission, whether intentional or inadvertent, of specific work by name or description on either the draw schedule or this Exhibit A shall not relieve Subcontractor from his obligation to complete the Work generally described herein and as required to satisfy the Contractor and/or appropriate governing agencies, and as indicated in the Contract Documents.

3.  The **Contract Documents** include:

    a.  Abrams Hall Senior 6900 Georgia Ave. NW, Washington, DC "Building 14 Middle" Permit Set dated January 4, 2018
    b.  Abrams Hall Senior Apartment Renovation Project Specifications dated January 4, 2018
    c.  HPE Limited Building Inspection for Water Damage – Walter Reed Army Medical Center (WRAMC), Bldg. 14 (M Section), Washington, DC dated April 15, 2017
    d.  HPE Asbestos Survey Report Walter Reed Army Medical Center (WRAMC) Abrams Hall – Building 14 (M Section) 6900 Georgia Avenue, NW Washington, DC dated April 26, 2017
    e.  One Source Lead-based Paint Inspection and Risk Assessment dated July 16, 2015
    f.  Building 14 Middle Project Schedule dated XXXX XX, 2018

4.  All labor for this project is priced as Davis Bacon Wage Scale Construction Type Residential per General Decision Number: DC170003 dated 8/18/17 with Superseded General Decision DC20160003 and will be in compliance with the First Source Employment Agreement between the D.C. Department of Employment Services (DOES) and TPWR Developer, LLC.

5.  Subcontractor shall comply with all CBE requirements and maintain certification for the full amount and duration of the subcontract.

6.  Subcontractor will furnish all permits required for the complete installation and inspection of the Site Work, Site Demolition, Excavation, and Wet Utilities scope of work as required per the Contract Documents.

SUB INITIALS _____  /  EDC Initials _____

1

7/12/2018



# Abrams Hall Senior Housing – 14 Middle

Building 14, 6900 Georgia Avenue NW, Washington, D.C. 20307

## Article II. The Work

Furnish and install all Site Work, Excavation, and Wet Utilities as shown on the contract documents and as described below for a complete Site Work, Excavation, and Wet Utilities scope. The descriptions below are not to be construed as complete as they are intended to provide information to clarify the scope and add specific tasks that may not be shown in the plans. The following scope items are included but not limited to:

**General:**

1. Note proximity of adjacent structures and utility lines and maintain continued service during construction. Coordinate with respective utility companies and EDC should relocation of service be required.
2. Unless otherwise shown on the Drawings, existing pavement on Aspen St. NW and Main Drive NW to remain. Provide pre-construction video of existing pavement. Existing pavement that is disturbed or damaged during construction shall be replaced per District of Columbia Department of Transportation Standards and Specifications at no additional cost to EDC.
3. Subcontractor to provide a pre and post TV video sewer on existing sewer around the site per DC Water Standards and Specifications.
4. Subcontractor is responsible for all required permits associated with this scope of work.
5. Subcontractor is required to coordinate all work with DC Water and DC Sewer as required.
6. Subcontractor is required to contact Miss Utility 48 hours before any digging.
7. Section 31 22 00 – Subcontractor to locate, identify and protect from damage above- and below-grade utilities to remain.
8. Section 31 22 00 – Protect site features to remain, including but not limited to bench marks, survey control points, existing structures, fences, sidewalks, paving, and curbs from damage by grading equipment and vehicular traffic.
9. Section 31 22 00 – Protect plants, lawns, rock outcroppings, and other features to remain.
10. Section 31 22 00 – Before finish grading verify building and trench backfilling have been inspected and subgrade has been contoured and compacted.
11. Section 31 22 00 – Remove debris, roots, branches, stones, in excess of ½ inch size. Remove soil contaminated with petroleum products.
12. Section 31 22 00 – Subcontractor to replace any vegetation to remain that is damaged due to the Work with equivalent species and size.
13. Section 31 22 00 – Subcontractor to repair or replace to original condition any existing facilities, utilities or site features damaged due to the Work.
14. Section 31 23 16 – Excavate to accommodate new structures and construction operations.
15. Section 31 23 16 – Notify EDC of unexpected subsurface condition and discontinue affected Work in area until notified to resume work.

EXHIBIT 2



# Abrams Hall Senior Housing – 14 Middle

Building 14, 6900 Georgia Avenue NW, Washington, D.C. 20307

16. Section 31 23 16 – Slope banks of excavations deeper than 4 feet to angle of repose or less until shored.

17. Section 31 23 16 – Do not interfere with 45 degree bearing splay of foundations.

18. Section 31 23 16 – Cut utility trenches wide enough to allow inspection of installed utilities.

19. Section 31 23 16 – Hand trim excavations and remove loose matter.

20. Section 31 23 16 – Correct areas that are over-excavated and load bearing surfaces that are disturbed.

21. Section 31 23 16 – Grade top perimeter of excavation to prevent surface water from draining into excavation.

22. Section 31 23 16 – Remove excavated material that is unsuitable for re-use from site.

23. Section 31 23 16 – Remove excess excavated material from site.

24. Section 31 23 16 – Provide for visual inspection of load-bearing excavated surfaces before placement of foundations.

25. Section 31 23 16 – Prevent displacement of banks and keep loose soil from falling into excavation; maintain soil stability.

26. Section 31 23 16 – Protect bottom of excavations and soil adjacent to and beneath foundation from freezing.

27. Section 31 23 23 – When fill materials need to be stored on site, locate stockpiles where indicated. Separate differing materials with dividers or stockpile separately to prevent intermixing. Prevent contamination and protect stockpiles from erosion and deterioration of materials.

28. Section 31 23 16 – Fill materials must meet ASTM standards. Subsoil excavated on site to be used as fill must be graded, free of lumps larger than 3 inches, free of rocks larger than 2 inches and free of debris. Gravel to be used as fill must be pit run washed stone that is free of shale, clay, friable material and debris. Sand to be used as fill must be natural river or bank sand that is washed, free of silt, clay, loam, friable or soluble materials and an organic matter.

29. Section 31 23 16 – Where fill materials are specified by reference to a specific standard, testing of samples for compliance will be provided before delivery to site. If tests indicate materials do not meet specified requirements, change material and retest.

30. Section 31 23 16 – For backfill preparation scarify subgrade surface to a depth of 6 inches to identify soft spots. Cut out soft areas of subgrade not capable of compaction in place. Backfill with general fill. Compact subgrade to density equal to or greater than requirements for subsequent fill material. Until ready to fill, maintain excavations and prevent loose soil from falling into excavation.

31. Section 31 23 16 – For filling allow maximum time for natural settlement. Do not fill over porous, wet, frozen or spongy subgrade surfaces. Maintain optimum moisture content of fill materials to attain required compaction density. Slope grade away from building minimum 2 inches in 10 feet, unless noted otherwise. Make gradual grade changes. Blend slope into level areas. Correct areas that are over-excavated. Reshape and re-compact fill subjected to vehicular traffic.

32. Section 31 23 16 – Testing of fill: evaluate results in relation to compaction curve determined by testing uncompacted material in accordance with ASTM 698, ASTM D 1557 or AASHTA T 180. If tests indicate work does not meet specified requirements, remove work, replace and retest. Proof roll compacted fill at surfaces that will be under slabs-on-grade.

EXHIBIT 2


ELLISDALE

# Abrams Hall Senior Housing – 14 Middle

Building 14, 6900 Georgia Avenue NW, Washington, D.C. 20307

33. CIV0001 – The location of all utilities shown are approximate. It is the responsibility of the Subcontractor to verify and determine the exact location and depth of all utilities prior to commencing work. Report any discrepancies to EDC.

34. CIV0001 – Subcontractor must hand-dig test pits at all utility crossings to determine the exact location and depth of all utilities as well in demolition work and prior to ordering pipe materials and structure. Utilities found during demolition or construction activities shall be the responsibility of the subcontractor engaged in excavation at the site. EDC shall be notified immediately of any utility findings which deviate from the conditions shown.

35. CIV0001 – Existing utilities not required for future service to be removed to facilitate construction. Utilities to be capped as per utility purveyor's standards and specifications. Coordinate requirements with utility purveyors.

36. CIV0001 – Notify DC Water 48 hours prior to start of construction.

37. CIV0001 – Existing water and sewer services not required for future use to be removed to extent necessary to facilitate new construction. Remainder of service to be capped at main and existing valves and tees to be removed per DC Water Standards Specifications. Coordinate requirements with DC Water Utility Inspector. Pavement to be removed per DCDOT Standards and Specifications.

38. CIV0001 – Subcontractor to be responsible for layout, extent and design of sheeting, shoring and support of existing utilities and adjacent structures, shoring, bracing and underpinning shall be designed by a structural engineer, licensed in the District of Columbia, hired by the subcontractor as necessary to ensure support of surrounding structures and utilities.

39. CIV0001 – Subcontractor to use manhole entry seals where required.

40. CIV0001 – Subcontractor to provide and pre and post TV video sewer on existing sewer around the site per DC Water Standards and Specifications.

41. CIV0001 – All proposed utility work to be performed under the inspection of DC Water.

42. Subcontractor is responsible for submitting As-Built Drawings to EDC for review and approval.

43. CIV0120 – Existing concrete sidewalk to be removed for utility trenching.

44. CIV0120 – Existing water lines to be abandoned in place. Subcontractor to remove piping where necessary.

45. CIV0120 – Cut and cap existing water main at valve. Grout plug shall be set at each end extending in the pope for at least 24-inches, forming solid waterproof plug completely bonded to pipe.

46. CIV0120 – Subcontractor to retro-fit new solid cover lid on existing storm structure.

47. CIV0120 – Existing storm drain piping to be removed.

48. CIV0120 – Rip-rap to be removed as shown on drawings.

49. CIV0120 – Loose rocks to be removed as shown on drawings.

## Site Work:

50. CIV0131 – Subcontractor to provide dust control as noted on drawings.

51. CIV0131 – Subcontractor to procure and install inlet protection as noted on drawings.

52. CIV0131 – Subcontractor to schedule a preconstruction meeting with DC Watershed Protection Division.

SUB INITIALS _____ / EDC Initials _____

7/12/2018

EXHIBIT 2



**ELLISDALE**

# Abrams Hall Senior Housing – 14 Middle

Building 14, 6900 Georgia Avenue NW, Washington, D.C. 20307

53. CIV0131 – Subcontractor to prevent sediments from being tracked onto roads from vehicles and equipment.
54. CIV0131 – During construction activities subcontractor shall perform routine maintenance to prevent any new destabilized areas and shall install additional erosion control measures if required by inspector.
55. CIV0131 – Subcontractor to confirm location of underground utilities prior to any excavation.
56. CIV0131 – Subcontractor to keep all existing driveways being used as construction entrances swept and clean of dust, dirt and debris throughout the duration of construction. Subcontractor to clean any equipment or vehicles of dirt or debris prior to leaving site.
57. CIV0132 – Subcontractor to follow sequence of construction as described in drawings.
58. CIV0132 – Subcontractor to furnish and install all bioretention ponds as shown in drawings.
59. CIV0140 – Subcontractor to furnish and install new concrete sidewalks per DDOT standards and specifications.
60. CIV0140 – Subcontractor to furnish and install bioretention ponds as shown in drawings.
61. CIV0140 – All debris and excess material to be removed by subcontractor.
62. CIV0140 – Subcontractor to protect any existing sidewalk, curb, and pavements to remain and replace any sidewalk, curb, and pavements damage during the work.
63. CIV0140 – Frames and covers of existing structures to be adjusted to match new finished grades.
64. CIV0140 – Subcontractor to note locations where new work meets existing and report any discrepancy to EDC.
65. CIV0150 – Subcontractor to remove existing 8" cap and connect new 8" dip waterline to existing 8" water line. 8" sleeve to be installed per DC Water Standards and Specifications.
66. CIV0150 – Furnish and install new 8" dip fire service.
67. CIV0150 – Furnish and install new 4" domestic service per DC Water Detail W-10.01.
68. CIV0150 – Furnish and install new 6" x 4" reducer per DC Water Standards and Specifications.
69. CIV0150 – Furnish and install all new 4" perforated PVC schedule 40 storm drain pipe.
70. CIV0150 – Furnish and install all new 4" water meters per DC Water Detail DG-23.01.
71. CIV0150 – Furnish and install new connection to existing storm structure.
72. CIV0150 – Subcontractor to verify condition and location of existing 6" sanitary sewer to be reused.
73. CIV0150 – Furnish and install new cleanout per detail S-80.02.
74. CIV0150 – Furnish and install all new 10" nyloplast drain basins with dome grate.
75. CIV0150 – Furnish and install all new 10" nyloplast drain basins with solid cover.
76. CIV0150 – Furnish and install all new 10" PVC schedule 40 storm drain pipe per DC Water Detail S-15.01.
77. CIV0150 – Furnish and retro-fit new solid cover lid on existing storm structure where shown in drawings.
78. CIV0150 – Furnish and install storm drain outfall connection from building to convey stormwater runoff to bioretention facility.
79. CIV0150 – Furnish and install new 45-degree horizontal bends as shown on drawings.
80. CIV0150 – Furnish and install CIPP liners for existing sanitary sewers as shown on drawings.



# Abrams Hall Senior Housing – 14 Middle

Building 14, 6900 Georgia Avenue NW, Washington, D.C. 20307

81. CIV0150 – Verify condition of existing manholes to be reused as shown in drawings.
82. CIV0150 – Furnish and install all new 12" PVC schedule 40 storm drain pipe as shown in drawings.
83. CIV0150 – Furnish and install new check detector meter vault for fire protection backflow prevention assembly.
84. CIV0150 – Subcontractor to verify and confirm condition of all existing sewer mains to be reused for adequate outfall.
85. CIV0160 – Subcontractor to grade all areas as shown on drawings for bioretention ponds, sidewalks, risers and surrounding areas.
86. CIV0310 – Subcontractor to observe and follow all utility and storm profiles and specifications as shown on drawings.
87. CIV0510 – Subcontractor to observe and follow all standards and specifications for street sweeping, construction entrances and wash racks, land grading, topsoil, vegetative stabilization, and dust control as shown on drawings.
88. CIV0520 – Subcontractor to observe and follow all details for silt fence, inlet protections, sediment basin/trap baffles, portable sediment tanks, pipe outlet sediment traps, perimeter and earth dikes/swales, inlet guards, and rip rap outlet sediment traps as shown on plans.
89. CIV0540 – Subcontractor to observe and follow all details and notes for nyloplast drains basins, pipe laying conditions, meter installations, rock outlet protections, concrete thrust block for horizontal pipe bends, and sewer cleanouts.
90. CIV0711 – Subcontractor to construct bioretention ponds as shown in drawings.
91. CIV0720 – Subcontractor to follow bioretention sequence of construction.
92. CIV0720 – Furnish and install new 10" nyloplast overflow drains with dome grates.
93. CIV0720 – Furnish and install new cleanouts.
94. CIV0720 – Furnish and install new 4" perforated PVC schedule 40 storm drain piping.
95. CIV0720 – Furnish and install new 10" PVC schedule 40 storm drain piping.
96. CIV0720 – Furnish and install storm drain connection to existing storm structure.
97. CIV0720 – Furnish and install 8" PVC storm drain pipe connection to building downspout. Furnish and install rip rap and outlet protection as detailed on CIV0540.
98. CIV0720 – Furnish and install 6" PVC storm drain pipe connection to building downspout. Furnish and install rip rap and outlet protection as detailed on CIV0540.
99. CIV0720 – Furnish and install drain outfall from building to convey runoff to stormwater facility.

## Article III: Schedule, Production, Coordination and General Requirements

1. Provide complete submittal package as required per the project specifications within (10) business days from receipt of LOI serving as a formal notice to proceed on the project.
2. Provide DDOT certified flagmen as required for your work, suppliers, delivery trucks, etc.
3. Subcontractor is responsible for the storage, delivery, receiving, hoisting, unloading, inventory, and handling, for all of its materials. Coordinate the location of materials with EDC superintendent. Subcontractor is specifically aware of the constraints surrounding the site and has included all costs for delivery and storage of materials as necessary to perform all work.

SUB INITIALS _____ / EDC Initials _____

7/12/2018

**EXHIBIT 2**



# Abrams Hall Senior Housing – 14 Middle

Building 14, 6900 Georgia Avenue NW, Washington, D.C. 20307

4. Coordinate all access to The Parks at Walter Reed (TPWR) campus including personnel and material deliveries with Ellisdale. A minimum of (7) days prior to mobilizing provide a list of all employees to work on site including the first name, last name, vehicle make, vehicle model, and license plate tag number. Provide minimum (48) hour notice for all deliveries. Notify EDC of any access requirements to TPWR campus during work hours a minimum of 1 hour before arrival.

5. Work hours are to be strictly adhered to as dictated by Washington D.C. regulations. Hours of operation are controlled by local governing agencies, Ellisdale Construction, and/or the Owner. Monday-Friday 7am-7pm and Saturday 7am-7pm as required. Saturdays are considered a make-up day if behind schedule or if a portion of the work week was missed due to inclement weather. Work hours in public space may be different and will be defined by the approved public space permit.

6. Provide daily cleanup of all trash and debris generated by this Subcontractor to a dumpster provided by EDC.

7. Participate in weekly project composite clean-up. Subcontractor to provide (1) dedicated laborer to the weekly project composite clean-up for (8) hours per week for every (8) or fewer employees on site for the duration that the Subcontractor is substantially mobilized on site.

8. Subcontractor includes use of Procore as the primary project management software for submittals, RFI's, punchlist management, observations, etc.

9. Inspect finishes to remain in work areas prior to performing work and notify EDC of any existing visible damage. All finishes to remain to be protected as required to mitigate damage by the installation of this trades scope of work.

10. Provide as-built drawings as required by the project specifications.

11. For every day that Subcontractor is on site and provide to Contractor a daily report including: manpower, equipment, and work narrative at a minimum.

12. Coordinate layout for core drills as required for installation of this Subcontractor's scope of work.

13. Coordinate with other Subcontractors for sequencing, dimensions, and locations. Advise of any specific requirements in accordance with the project schedule.

14. Consume food and take any breaks in an area designated by the Ellisdale superintendent and place refuse in dumpsters.

15. Provide temporary lighting as required for the installation of this Subcontractor's work. General lighting will be provided- for common areas- but this is provided for safety purposes and is not intended to provide adequate lighting for working nights/dark areas.

16. Provide multiple mobilizations as required by the project schedule to install complete scope of work.

## Article IV: Safety

1. Subcontractor to comply with all applicable OSHA standards and regulations as related to the installation of their scope of work on the project.

2. Subcontractor responsible for attendance of all subcontractor employees working on site to EDC safety orientation on the first day that that employee is working on the project. All employees on site to wear identifying hard hat sticker provided by EDC.

3. Subcontractor is responsible for the safety of his operations and will be required to participate in all job safety activities. Subcontractor is required to submit a current Safety Program that includes all relevant MSDS information to be reviewed by Ellisdale prior to mobilizing on site

SUB INITIALS _____ / EDC Initials _____                                            7/12/2018

7

**EXHIBIT 2**



**ELLISDALE**

# Abrams Hall Senior Housing – 14 Middle

Building 14, 6900 Georgia Avenue NW, Washington, D.C. 20307

4. Subcontractors are required to wear fully compliant personal protective equipment at all times while working on site including but not limited to hard hats, reflective safety vests, eye protection, hard-soled shoes, etc.

5. Subcontractors temporary site facilities must have emergency phone numbers, fire extinguishers, first aid supplies, chemical information list/MSDS, and OSHA poster posted.

6. All subcontractors shall report all unsafe conditions or practices to the jobsite supervisor immediately upon observation of these conditions.

7. All safety violations, notices, or observations issued to this Subcontractor by Ellisdale are to be corrected within (24) hours. Any life safety violation is to be corrected immediately.

8. Competent Person Identification will be required prior to the start of all projects. OSHA 10 minimum requirement.

## ARTICLE V: UNIT COSTS, ALLOWANCES & ALTERNATES

| Unit Costs: | | | | |
|---|---|---|---|---|
| | | Provide unit labor rates to be applied to all T&M work tickets. | | |
| | | Standard Hourly Rate | Night & Saturdays | Sundays & Holidays |
| | Superintendent | $98.00 | $122.00 | $147.00 |
| | Foreman | $72.00 | $108.00 | $144.00 |
| Allowances: | Equipment Operator | $53.00 | $79.50 | $106.00 |
| | Truck Driver | $38.00 | $57.00 | $76.00 |
| Add Alternates: | Skilled Labor | $34.00 | $51.00 | $68.00 |
| | | | | |
| Deduct Alternates: | | Daily Rates (8 hour day) Minimum 4 Hours | | |

**ARTICLE VI: Exclusions:**

1.

| Foreman's Truck | $120.00 |
|---|---|
| Excavator | $420.00 |
| 6-Wheel Dump Truck | $240.00 |
| Steel Plates | $40.00 |
| Shoring Box | $120.00 |

SUB INITIALS _____ / EDC Initials _____

7/12/2018

8

# EXHIBIT 2

## Exhibit H - Subcontractor OSHA Competent Person

### OSHA MATERIALS - COMPETENT PERSON

The definition for a competent person as is described in the Code of Federal Regulations, 1926.32(f) is listed below:

"Competent person means one who is capable of identifying existing and predictable hazards in the surroundings or working conditions which are unsanitary, hazardous, or dangerous to employees, and who has authorization to take prompt corrective measures to eliminate them."

Each Subcontractor is required to have a competent person. Subcontractor must have a competent person on the job site at all times. Please supply the name of your competent person of record. Make sure that your competent person is on the job site when you set up for daily operations. Make note of this designation in your safety program records to ensure that you are covered if and when OSHA makes an inspection. Thank you for your cooperation regarding the OSHA requirements of our profession.

Name of Competent Person(s): __Gregory Upshaw__      Date: __7/31/2018__

Name of Competent Person(s): __Samuel Gonzales__      Date: __7/31/2018__

Signature of Competent Person(s): __David Mayers__      Date: __7/31/2018__

Signature of Competent Person(s): _____      Date: _____

## EXHIBIT 2

# Exhibit G - Verified List of Subcontractors and Suppliers [i]

### VERIFIED LIST OF SUBCONTRACTORS AND SUPPLIERS

The verified list below is a complete and accurate list of names, addresses and phone numbers, contract/PO amount of each sub-subcontractor, vendor, material supplier or other party, of any tier, who will provide labor and/or materials to the Project by, through or on behalf of Subcontractor ("Sub-Tier Vendor"). Upon EDC's request, Subcontractor shall furnish to EDC copies of appropriate business and trade licenses for all Sub-Tier Vendors.

This certified list must be notarized and delivered to EDC's office prior to Subcontractor's commencement of any Subcontract Work on the Project. Subcontractor hereby certifies that it has (1) verified that all Sub-Tier Vendors possess the appropriate business and trade licenses as required by the Subcontract and (2) received insurance certificates from all Sub-Tier Vendors which comply with the requirements of the Subcontract, copies of which shall be provided to EDC at any time upon its reasonable request. In the event any of the persons or entities noted in this list shall be replaced, or in the event additional persons or entities shall be engaged, Subcontractor shall immediately notify EDC in writing thereof and provide an updated Exhibit H to EDC for its approval. Please note that EDC WILL NOT release any payments to Subcontractor until all information requested under this Exhibit and/or the Subcontract has been provided to EDC's reasonable satisfaction.

*SENIORS   BLDG 14 M*

| SUB-TIER VENDOR INFORMATION | | | | |
|---|---|---|---|---|
| Sub-Tier Vendor Name | Sub-Tier Vendor Address | Sub-Tier Vendor Phone Number | Sub-Tier Vendor to provide both Materials and Labor (Both), Materials only (M) or Labor only (L) | Sub-Tier Vendor Contract or PO Amount |
| AggTrans (The Stone Store) | 7535 Railroad Ave Hanover, Md | 410-766-2002 | M | |
| J&B Fabricators, LLC | 28685 Earth Lite Rd Wye Mills, Md | 410-266-8585 | M | |
| WinWaterWorks | 3137 Pensy Dr Unit C Hyattsville, Md | 240-764-5006 | M | |
| US Pipeling LLC | 1100 Wood Ln Langhorne, PA 19047 | 215-702-9100 | Both | $105,000.00 |
| | | | | |
| | | | | |
| | | | | |

☐ Check here if all Work will be performed directly by Subcontract and Subcontractor will not have any Sub-Tier Vendors for this Project.

*Homer N Sellers*
Signature, Subcontractor's Authorized Representative

STATE/COMMONWEALTH OF ___MD___ :

COUNTY OF ___Montgomery___ : to-wit:

The foregoing instrument was acknowledged before me this _9_ day of _08_, 20_18_, by ___Homer N Sellers Sr___ (Name), the ___owner___ (Title), of ___SMITH & SONS, LLC___ (Name of Company/Corporation) on behalf of the company/corporation.

MY COMMISSION EXPIRES ON 06/16/2020

**EXHIBIT 2**

OP ID: DM

# ACORD® CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY)
**08/01/2018**

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| | |
|---|---|
| PRODUCER 410-339-7400<br>Saratoga Heyl Ins. Servs. Inc.<br>1301 York Road, Suite 702<br>Lutherville, MD 21093<br>David Kane | CONTACT Sandy Hebb ext 120 |
| | PHONE (A/C, No, Ext): 410-339-7400  FAX (A/C, No): 410-339-7958 |
| | E-MAIL ADDRESS: sandyh@saratogaheyl.com |
| | INSURER(S) AFFORDING COVERAGE  NAIC # |
| | INSURER A: Ohio Security Ins Co  24082 |
| INSURED Smith & Sons, LLC<br>1801 Clydesdale Place<br>NW Washington, DC 20009 | INSURER B: |
| | INSURER C: |
| | INSURER D: |
| | INSURER E: |
| | INSURER F: |

## COVERAGES          CERTIFICATE NUMBER:          REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **X** COMMERCIAL GENERAL LIABILITY | | | | | | EACH OCCURRENCE | $ 1,000,000 |
| | CLAIMS-MADE **X** OCCUR | | | BKS58604955 | 06/06/2018 | 06/06/2019 | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 1,000,000 |
| | | | | | | | MED EXP (Any one person) | $ 15,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | POLICY **X** PRO-JECT LOC | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | OTHER: | | | | | | | $ |
| A | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | **X** ANY AUTO | | | BA58604955 | 06/06/2018 | 06/06/2019 | BODILY INJURY (Per person) | $ |
| | OWNED AUTOS ONLY SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | **X** HIRED AUTOS ONLY **X** NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| A | **X** UMBRELLA LIAB **X** OCCUR | | | | | | EACH OCCURRENCE | $ 6,000,000 |
| | EXCESS LIAB CLAIMS-MADE | | | US58604955 | 06/06/2018 | 06/06/2019 | AGGREGATE | $ 6,000,000 |
| | DED **X** RETENTION $ 10,000 | | | | | | | $ |
| A | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y/N | | | WCS58604955 | 06/06/2018 | 06/06/2019 | **X** PER STATUTE OTH-ER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? **Y** (Mandatory in NH) | N/A | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
EllisDale Construction LLC, as general contractor, the project owner(s) and
other parties required of EllisDale Construction LLC are Additional Insureds
on a primary/non-contributory basis for on-going and completed operations
under the captioned General Liability, Business Auto, and Umbrella Policies.
A Waiver of Subrogation applies in favor of the Additional Insured(s) with

| CERTIFICATE HOLDER ELLISDA | CANCELLATION |
|---|---|
| EllisDale Construction LLC<br>106 Harrison Street, Suite 300<br>Leesburg, VA 20175 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE |

**ACORD 25 (2016/03)**

© 1988-2015 ACORD CORPORATION. All rights reserved.<br>The ACORD name and logo are registered marks of ACORD

**NOTEPAD:**

EXHIBIT 2

| | | | | |
|---|---|---|---|---|
| HOLDER CODE | **ELLISDA** | | **SMITH-1** | PAGE **2** |
| INSURED'S NAME | **Smith & Sons, LLC** | | **OP ID: DM** | Date **08/01/2018** |

respects to General Liab. Business Auto, and Workers Compensation.

There are no specific residential, multi family, condominium, or attached communities exclusions on the above referenced General Liability Policy.

In the event of cancellation by the insurance companies, the policies have been endorsed to provide (30) days Notice of Cancellation (10 days for non-payment of premium) to the certificate holder.

# EXHIBIT 3

# $\mathbf{AIA}^{\text{®}}$ Document A312™ – 2010

## *Payment Bond* 017235007

**CONTRACTOR:**
*(Name, legal status and address)*

Smith & Sons, LLC
1801 Clydesdale Place NW
Washington, DC 20009-6041

**SURETY**
*(Name, legal status and principal place of business)*

The Ohio Casualty Insurance Company
62 Maple Avenue
Keene, NH 03431

**OWNER:**
*(Name, legal status and address)*
Ellisdale Construction, LLC
106 Harrison Street, SE Suite 300
Leesburg, VA 20175

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification. Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

**CONSTRUCTION CONTRACT**
Date: July 12th, 2018
Amount: $  Three Hundred Twenty-five Thousand And No/100 DOLLARS ($325,000.00)

Description:
*(Name and location)*
Contract No. 005:  Site Work, Excavation, and Wet Utilities under Abrams Hall Seniors 14M (18-01-05/1-02-725) at 6900 Georgia Avenue NW Washington, DC 20307

**BOND**
Date: January 21st, 2019
*(Not earlier than Construction Contract Date)*

Amount: $Three Hundred Twenty-five Thousand And No/100 DOLLARS ($325,000.00)

Modifications to this Bond:      [ X ]  None          [   ]  See Section 18

**CONTRACTOR AS PRINCIPAL**
Company:              *(Corporate Seal)*
Smith & Sons, LLC

Signature: _____
Name and
Title:

**SURETY**
Company:              *(Corporate Seal)*
The Ohio Casualty Insurance Company

Signature: _____
Name and   Kim Santiago
Title:          Attorney-in-Fact

*(Any additional signatures appear on the last page of this Payment Bond.)*



*(FOR INFORMATION ONLY — Name, address and telephone)*
**AGENT or BROKER:**
Construction Bonds, Inc.
1110 Herndon Parkway, Suite 307
Herndon, VA 20170
703-934-1000

**OWNER'S REPRESENTATIVE:**
*(Architect, Engineer or other party:)*

**AIA Document A312™ – 2010 Payment Bond.** The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.

# EXHIBIT 3

§ **1** The Contractor and Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract, which is incorporated herein by reference, subject to the following terms.

§ **2** If the Contractor promptly makes payment of all sums due to Claimants, and defends, indemnifies and holds harmless the Owner from claims, demands, liens or suits by any person or entity seeking payment for labor, materials or equipment furnished for use in the performance of the Construction Contract, then the Surety and the Contractor shall have no obligation under this Bond.

§ **3** If there is no Owner Default under the Construction Contract, the Surety's obligation to the Owner under this Bond shall arise after the Owner has promptly notified the Contractor and the Surety (at the address described in Section 13) of claims, demands, liens or suits against the Owner or the Owner's property by any person or entity seeking payment for labor, materials or equipment furnished for use in the performance of the Construction Contract and tendered defense of such claims, demands, liens or suits to the Contractor and the Surety.

§ **4** When the Owner has satisfied the conditions in Section 3, the Surety shall promptly and at the Surety's expense defend, indemnify and hold harmless the Owner against a duly tendered claim, demand, lien or suit.

§ **5** The Surety's obligations to a Claimant under this Bond shall arise after the following:

§ **5.1** Claimants, who do not have a direct contract with the Contractor,
.1   have furnished a written notice of non-payment to the Contractor, stating with substantial accuracy the amount claimed and the name of the party to whom the materials were, or equipment was, furnished or supplied or for whom the labor was done or performed, within ninety (90) days after having last performed labor or last furnished materials or equipment included in the Claim; and
.2   have sent a Claim to the Surety (at the address described in Section 13).

§ **5.2** Claimants, who are employed by or have a direct contract with the Contractor, have sent a Claim to the Surety (at the address described in Section 13).

§ **6** If a notice of non-payment required by Section 5.1.1 is given by the Owner to the Contractor, that is sufficient to satisfy a Claimant's obligation to furnish a written notice of non-payment under Section 5.1.1.

§ **7** When a Claimant has satisfied the conditions of Sections 5.1 or 5.2, whichever is applicable, the Surety shall promptly and at the Surety's expense take the following actions:

§ **7.1** Send an answer to the Claimant, with a copy to the Owner, within sixty (60) days after receipt of the Claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed; and

§ **7.2** Pay or arrange for payment of any undisputed amounts.

§ **7.3** The Surety's failure to discharge its obligations under Section 7.1 or Section 7.2 shall not be deemed to constitute a waiver of defenses the Surety or Contractor may have or acquire as to a Claim, except as to undisputed amounts for which the Surety and Claimant have reached agreement. If, however, the Surety fails to discharge its obligations under Section 7.1 or Section 7.2, the Surety shall indemnify the Claimant for the reasonable attorney's fees the Claimant incurs thereafter to recover any sums found to be due and owing to the Claimant.

§ **8** The Surety's total obligation shall not exceed the amount of this Bond, plus the amount of reasonable attorney's fees provided under Section 7.3, and the amount of this Bond shall be credited for any payments made in good faith by the Surety.

§ **9** Amounts owed by the Owner to the Contractor under the Construction Contract shall be used for the performance of the Construction Contract and to satisfy claims, if any, under any construction performance bond. By the Contractor furnishing and the Owner accepting this Bond, they agree that all funds earned by the Contractor in the performance of the Construction Contract are dedicated to satisfy obligations of the Contractor and Surety under this Bond, subject to the Owner's priority to use the funds for the completion of the work.

**AIA Document A312™ – 2010 Payment Bond.** The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.

# EXHIBIT 3

**§ 10** The Surety shall not be liable to the Owner, Claimants or others for obligations of the Contractor that are unrelated to the Construction Contract. The Owner shall not be liable for the payment of any costs or expenses of any Claimant under this Bond, and shall have under this Bond no obligation to make payments to, or give notice on behalf of, Claimants or otherwise have any obligations to Claimants under this Bond.

**§ 11** The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

**§ 12** No suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the state in which the project that is the subject of the Construction Contract is located or after the expiration of one year from the date (1) on which the Claimant sent a Claim to the Surety pursuant to Section 5.1.2 or 5.2, or (2) on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone under the Construction Contract, whichever of (1) or (2) first occurs. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

**§ 13** Notice and Claims to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the page on which their signature appears. Actual receipt of notice or Claims, however accomplished, shall be sufficient compliance as of the date received.

**§ 14** When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. When so furnished, the intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

**§ 15** Upon request by any person or entity appearing to be a potential beneficiary of this Bond, the Contractor and Owner shall promptly furnish a copy of this Bond or shall permit a copy to be made.

**§ 16 Definitions**
**§ 16.1 Claim.** A written statement by the Claimant including at a minimum:
    .1   the name of the Claimant;
    .2   the name of the person for whom the labor was done, or materials or equipment furnished;
    .3   a copy of the agreement or purchase order pursuant to which labor, materials or equipment was furnished for use in the performance of the Construction Contract;
    .4   a brief description of the labor, materials or equipment furnished;
    .5   the date on which the Claimant last performed labor or last furnished materials or equipment for use in the performance of the Construction Contract;
    .6   the total amount earned by the Claimant for labor, materials or equipment furnished as of the date of the Claim;
    .7   the total amount of previous payments received by the Claimant; and
    .8   the total amount due and unpaid to the Claimant for labor, materials or equipment furnished as of the date of the Claim.

**§ 16.2 Claimant.** An individual or entity having a direct contract with the Contractor or with a subcontractor of the Contractor to furnish labor, materials or equipment for use in the performance of the Construction Contract. The term Claimant also includes any individual or entity that has rightfully asserted a claim under an applicable mechanic's lien or similar statute against the real property upon which the Project is located. The intent of this Bond shall be to include without limitation in the terms "labor, materials or equipment" that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental equipment used in the Construction Contract, architectural and engineering services required for performance of the work of the Contractor and the Contractor's subcontractors, and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials or equipment were furnished.

**§ 16.3 Construction Contract.** The agreement between the Owner and Contractor identified on the cover page, including all Contract Documents and all changes made to the agreement and the Contract Documents.

**AIA Document A312™ – 2010 Payment Bond.** The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.**

# EXHIBIT 3

**§ 16.4 Owner Default.** Failure of the Owner, which has not been remedied or waived, to pay the Contractor as required under the Construction Contract or to perform and complete or comply with the other material terms of the Construction Contract.

**§ 16.5 Contract Documents.** All the documents that comprise the agreement between the Owner and Contractor.

**§ 17** If this Bond is issued for an agreement between a Contractor and subcontractor, the term Contractor in this Bond shall be deemed to be Subcontractor and the term Owner shall be deemed to be Contractor.

**§ 18** Modifications to this bond are as follows:

*(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)*

**CONTRACTOR AS PRINCIPAL**                                   **SURETY**
Company:                          *(Corporate Seal)*          Company:                          *(Corporate Seal)*

Signature: _____          Signature: _____
Name and Title:                                              Name and Title:
Address:                                                     Address:

**AIA Document A312™ – 2010 Payment Bond.** The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.**

**EXHIBIT 4**

Bond No. 30BCSHV0877
'SEE ATTACHED RIDER'

 **Document A312™ – 2010**

## Payment Bond

**CONTRACTOR:**
*(Name, legal status and address)*

EllisDale Construction, LLC
106 Harrison Street SE, Suite 300
Leesburg, VA 20175

**OWNER:**
*(Name, legal status and address)*
HELP Washington DC LP c/o H.E.L.P. Development Corp.
115 East 13th Street
New York, NY 10003

**SURETY:**
*(Name, legal status and principal place of business)*

Hartford Fire Insurance Company
One Hartford Plaza
Hartford, CT 06155-0001

**CONSTRUCTION CONTRACT**
Date: 4/24/2018
Amount: $
Description:
*(Name and location)*

**HELP Walter Reed Apartments
Building 14S**
1324 Main Drive, NW
Washington, DC 20012

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

**BOND**
Date: 4/24/2018
*(Not earlier than Construction Contract Date)*

Amount: $
Modifications to this Bond: [ ] None   [ X ] See Section 18

**CONTRACTOR AS PRINCIPAL**
Company:          *(Corporate Seal)*
EllisDale Construction, LLC

Signature:
Name and    WARD BELL
Title: VP

**SURETY**
Company:          *(Corporate Seal)*
Hartford Fire Insurance Company

Signature:
Name and    Joshua B. Hauserman
Title:          Attorney-in-Fact

*(Any additional signatures appear on the last page of this Payment Bond.)*

*(FOR INFORMATION ONLY — Name, address and telephone)*

**AGENT or BROKER:**

HMS Insurance Associates, Inc.
20 Wight Avenue, Suite 300
Hunt Valley, MD  21030
(410) 337-9755

**OWNER'S REPRESENTATIVE:**
*(Architect, Engineer or other party:)*

Wiencek + Associates + Architects + Planners, DC, LLP
1100 Vermont Avenue, NW, Suite 800
Washington, DC  20005

Init.

/

AIA Document A312™ – 2010 Payment Bond. The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:07:45 on 04/30/2015 under Order No.8077465210_1 which expires on 02/28/2016, and is not for resale.
User Notes:                                                                 (911701315)

1

**EXHIBIT 4**

§ 1 The Contractor and Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract, which is incorporated herein by reference, subject to the following terms.

§ 2 If the Contractor promptly makes payment of all sums due to Claimants, and defends, indemnifies and holds harmless the Owner from claims, demands, liens or suits by any person or entity seeking payment for labor, materials or equipment furnished for use in the performance of the Construction Contract, then the Surety and the Contractor shall have no obligation under this Bond.

§ 3 If there is no Owner Default under the Construction Contract, the Surety's obligation to the Owner under this Bond shall arise after the Owner has promptly notified the Contractor and the Surety (at the address described in Section 13) of claims, demands, liens or suits against the Owner or the Owner's property by any person or entity seeking payment for labor, materials or equipment furnished for use in the performance of the Construction Contract and tendered defense of such claims, demands, liens or suits to the Contractor and the Surety.

§ 4 When the Owner has satisfied the conditions in Section 3, the Surety shall promptly and at the Surety's expense defend, indemnify and hold harmless the Owner against a duly tendered claim, demand, lien or suit.

§ 5 The Surety's obligations to a Claimant under this Bond shall arise after the following:

§ 5.1 Claimants, who do not have a direct contract with the Contractor,

  .1   have furnished a written notice of non-payment to the Contractor, stating with substantial accuracy the amount claimed and the name of the party to whom the materials were, or equipment was, furnished or supplied or for whom the labor was done or performed, within ninety (90) days after having last performed labor or last furnished materials or equipment included in the Claim; and

  .2   have sent a Claim to the Surety (at the address described in Section 13).

§ 5.2 Claimants, who are employed by or have a direct contract with the Contractor, have sent a Claim to the Surety (at the address described in Section 13).

§ 6 If a notice of non-payment required by Section 5.1.1 is given by the Owner to the Contractor, that is sufficient to satisfy a Claimant's obligation to furnish a written notice of non-payment under Section 5.1.1.

§ 7 When a Claimant has satisfied the conditions of Sections 5.1 or 5.2, whichever is applicable, the Surety shall promptly and at the Surety's expense take the following actions:

§ 7.1 Send an answer to the Claimant, with a copy to the Owner, within sixty (60) days after receipt of the Claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed; and

§ 7.2 Pay or arrange for payment of any undisputed amounts.

§ 7.3 The Surety's failure to discharge its obligations under Section 7.1 or Section 7.2 shall not be deemed to constitute a waiver of defenses the Surety or Contractor may have or acquire as to a Claim, except as to undisputed amounts for which the Surety and Claimant have reached agreement. If, however, the Surety fails to discharge its obligations under Section 7.1 or Section 7.2, the Surety shall indemnify the Claimant for the reasonable attorney's fees the Claimant incurs thereafter to recover any sums found to be due and owing to the Claimant.

§ 8 The Surety's total obligation shall not exceed the amount of this Bond, plus the amount of reasonable attorney's fees provided under Section 7.3, and the amount of this Bond shall be credited for any payments made in good faith by the Surety.

§ 9 Amounts owed by the Owner to the Contractor under the Construction Contract shall be used for the performance of the Construction Contract and to satisfy claims, if any, under any construction performance bond. By the Contractor furnishing and the Owner accepting this Bond, they agree that all funds earned by the Contractor in the performance of the Construction Contract are dedicated to satisfy obligations of the Contractor and Surety under this Bond, subject to the Owner's priority to use the funds for the completion of the work.

AIA Document A312™ – 2010 Payment Bond. The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:07:45 on 04/30/2015 under Order No.8077465210_1 which expires on 02/26/2016, and is not for resale.
User Notes:                                                                                                                              (911701315)

2

# EXHIBIT 4

§ **10** The Surety shall not be liable to the Owner, Claimants or others for obligations of the Contractor that are unrelated to the Construction Contract. The Owner shall not be liable for the payment of any costs or expenses of any Claimant under this Bond, and shall have under this Bond no obligation to make payments to, or give notice on behalf of, Claimants or otherwise have any obligations to Claimants under this Bond.

§ **11** The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

§ **12** No suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the state in which the project that is the subject of the Construction Contract is located or after the expiration of one year from the date (1) on which the Claimant sent a Claim to the Surety pursuant to Section 5.1.2 or 5.2, or (2) on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone under the Construction Contract, whichever of (1) or (2) first occurs. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

§ **13** Notice and Claims to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the page on which their signature appears. Actual receipt of notice or Claims, however accomplished, shall be sufficient compliance as of the date received.

§ **14** When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. When so furnished, the intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

§ **15** Upon request by any person or entity appearing to be a potential beneficiary of this Bond, the Contractor and Owner shall promptly furnish a copy of this Bond or shall permit a copy to be made.

§ **16 Definitions**
§ **16.1 Claim.** A written statement by the Claimant including at a minimum:
    .1   the name of the Claimant;
    .2   the name of the person for whom the labor was done, or materials or equipment furnished;
    .3   a copy of the agreement or purchase order pursuant to which labor, materials or equipment was furnished for use in the performance of the Construction Contract;
    .4   a brief description of the labor, materials or equipment furnished;
    .5   the date on which the Claimant last performed labor or last furnished materials or equipment for use in the performance of the Construction Contract;
    .6   the total amount earned by the Claimant for labor, materials or equipment furnished as of the date of the Claim;
    .7   the total amount of previous payments received by the Claimant; and
    .8   the total amount due and unpaid to the Claimant for labor, materials or equipment furnished as of the date of the Claim.

§ **16.2 Claimant.** An individual or entity having a direct contract with the Contractor or with a subcontractor of the Contractor to furnish labor, materials or equipment for use in the performance of the Construction Contract. The term Claimant also includes any individual or entity that has rightfully asserted a claim under an applicable mechanic's lien or similar statute against the real property upon which the Project is located. The intent of this Bond shall be to include without limitation in the terms "labor, materials or equipment" that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental equipment used in the Construction Contract, architectural and engineering services required for performance of the work of the Contractor and the Contractor's subcontractors, and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials or equipment were furnished.

§ **16.3 Construction Contract.** The agreement between the Owner and Contractor identified on the cover page, including all Contract Documents and all changes made to the agreement and the Contract Documents.

Init.

/

**AIA Document A312™ – 2010 Payment Bond. The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 10:07:45 on 04/30/2015 under Order No.807485210_1 which expires on 02/28/2016, and is not for resale.
User Notes:                                                                                                    (911701315)

3

# EXHIBIT 4

**§ 16.4 Owner Default.** Failure of the Owner, which has not been remedied or waived, to pay the Contractor as required under the Construction Contract or to perform and complete or comply with the other material terms of the Construction Contract.

**§ 16.5 Contract Documents.** All the documents that comprise the agreement between the Owner and Contractor.

**§ 17** If this Bond is issued for an agreement between a Contractor and subcontractor, the term Contractor in this Bond shall be deemed to be Subcontractor and the term Owner shall be deemed to be Contractor.

**§ 18** Modifications to this bond are as follows:

'SEE ATTACHED RIDER'

*(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)*

| CONTRACTOR AS PRINCIPAL | | SURETY | |
|---|---|---|---|
| Company: | *(Corporate Seal)* | Company: | *(Corporate Seal)* |
| Signature: | | Signature: | |
| Name and Title: | | Name and Title: | |
| Address: | | Address: | |

**Init.**

*/*

AIA Document A312™ – 2010 Payment Bond. The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:07:45 on 04/30/2015 under Order No.8077485210_1 which expires on 02/26/2016, and is not for resale.
User Notes:                                                                                      (911701315)

**4**

**EXHIBIT 4**

## ADDITIONAL OBLIGEE RIDER TO
## PERFORMANCE AND PAYMENT BOND

TO BE ATTACHED TO and made a part of <u>Performance</u> and <u>Payment</u> Bond, Number <u>30BCSHV0877</u> issued by <u>Hartford Fire Insurance Company</u>, a <u>Connecticut</u> Corporation, as Surety, on the <u>24th</u> day of <u>April</u>, <u>2018</u> on behalf of <u>EllisDale Construction, LLC</u>, as Principal and in favor of <u>HELP Washington DC LP c/o H.E.L.P. Development Corp.</u>, as Obligee.

WHEREAS, upon the written request of the Principal and Obligee the attached bond is hereby amended as follows:

1. The Names of <u>TD Bank, N.A., Its Successors and/or Assigns; District of Columbia, acting by and through the Department of Housing and Community Development, its successors and assigns; District of Columbia Housing Finance Agency, its successors and assigns; National Equity Fund, Inc. and NEF Assignment Corporation as Nominee ISAOA and beneficiaries</u> shall be added to said bond as named Obligees.

2. Notwithstanding any provisions herein to the contrary, there shall be no liability on the part of the Principal or Surety under this bond to the Obligees, or any of them, unless the Obligees, or any of them, shall make payments to the Principal, or to the Surety in case it arranges for completion of the Contract upon default of the Principal, strictly in accordance with the terms of said Contract as to payments, and shall perform all the other obligations required to be performed under said Contract at the time and in the manner therein set forth.

In no event shall the Surety be liable in the aggregate to all Obligees for more than the penal sum of this bond, nor shall the Surety be liable, except for a single payment, for each single breach or default. The Surety shall issue any payment due by check to TD Bank, N.A. unless it receives written instructions to the contrary signed by all Obligees.

WHEREAS, it is further understood and agreed that nothing herein contained shall be held to change, alter or vary the terms of the above described bond(s) except as hereinbefore set forth.

SIGNED, Sealed and dated this <u>24th day of April, 2018</u>.

ATTEST OR WITNESS:

EllisDale Construction, LLC (SEAL)
Principal

By:

Hartford Fire Insurance Company (SEAL)
Surety

By:
Joshua B. Hauserman, Attorney-in-Fact

**EXHIBIT 4**

# POWER OF ATTORNEY

*Direct Inquiries/Claims to:*
**THE HARTFORD**
BOND, T-12
One Hartford Plaza
Hartford, Connecticut 06155
Bond.Claims@thehartford.com
*call:* **888-266-3488** *or fax:* **860-757-5835**

**KNOW ALL PERSONS BY THESE PRESENTS THAT:**

Agency Name: HMS INSURANCE ASSOCIATES INC
Agency Code: 30-720307

| | |
|---|---|
| X | **Hartford Fire Insurance Company**, a corporation duly organized under the laws of the State of Connecticut |
| X | **Hartford Casualty Insurance Company**, a corporation duly organized under the laws of the State of Indiana |
| X | **Hartford Accident and Indemnity Company**, a corporation duly organized under the laws of the State of Connecticut |
| | **Hartford Underwriters Insurance Company**, a corporation duly organized under the laws of the State of Connecticut |
| | **Twin City Fire Insurance Company**, a corporation duly organized under the laws of the State of Indiana |
| | **Hartford Insurance Company of Illinois**, a corporation duly organized under the laws of the State of Illinois |
| | **Hartford Insurance Company of the Midwest**, a corporation duly organized under the laws of the State of Indiana |
| | **Hartford Insurance Company of the Southeast**, a corporation duly organized under the laws of the State of Florida |

having their home office in Hartford, Connecticut, (hereinafter collectively referred to as the "Companies") do hereby make, constitute and appoint,
***up to the amount of*** Unlimited :

Craig Bancroft, Gary L. Berger, Shari Bowers, William Francik, Joshua B. Hauserman, Jonathan Kibler, Stephen M. Mutscheller, R Nelson Oster, Matthew Rankin, Robert F. White of HUNT VALLEY, Maryland

their true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign its name as surety(ies) only as delineated above by ☒, and to execute, seal and acknowledge any and all bonds, undertakings, contracts and other written instruments in the nature thereof, on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

**In Witness Whereof**, and as authorized by a Resolution of the Board of Directors of the Companies on May 6, 2015 the Companies have caused these presents to be signed by its Senior Vice President and its corporate seals to be hereto affixed, duly attested by its Assistant Secretary. Further, pursuant to Resolution of the Board of Directors of the Companies, the Companies hereby unambiguously affirm that they are and will be bound by any mechanically applied signatures applied to this Power of Attorney.



John Gray, Assistant Secretary

M. Ross Fisher, Senior Vice President

**STATE OF CONNECTICUT** } ss. Hartford
**COUNTY OF HARTFORD** }

On this 11th day of January, 2016, before me personally came M. Ross Fisher, to me known, who being by me duly sworn, did depose and say: that he resides in the County of Hartford, State of Connecticut; that he is the Senior Vice President of the Companies, the corporations described in and which executed the above instrument; that he knows the seals of the said corporations; that the seals affixed to the said instrument are such corporate seals; that they were so affixed by authority of the Boards of Directors of said corporations and that he signed his name thereto by like authority.

Nora M. Stranko
Notary Public
My Commission Expires March 31, 2018

**CERTIFICATE**

I, the undersigned, Assistant Vice President of the Companies, DO HEREBY CERTIFY that the above and foregoing is a true and correct copy of the Power of Attorney executed by said Companies, which is still in full force effective as of April 24th, 2018.
Signed and sealed at the City of Hartford.



Kevin Heckman, Assistant Vice President

POA 2016

# EXHIBIT 5

<u>Date:7/12/18</u>

## SUBCONTRACT (DC)

**Ellisdale Construction, LLC**  PROJ NO/BUDGET CODE/AMOUNT:
106 Harrison Street, SE, Suite 300  PROJ NO/BUDGET CODE/AMOUNT:<u>18-02-10 / 01-02-725 / $140,000</u>
Leesburg, VA 20175  CONTRACT NUMBER:<u>007</u>

SUBCONTRACTOR: <u>Smith & Sons, LLC</u>

| | |
|---|---|
| Address: | <u>1801 Clydesdale Place Suite 710, Washington, DC 20307</u> |
| Phone: | <u>(202) 232-2236</u>  Project: HELP Walter Reed Apartments 14S |
| Fax: | <u>(202) 478-1897</u>  Email: hsellers@smithandsonsllc.com |

SCOPE OF WORK SUMMARY (*See* Exhibit A and Section 2 below for Scope of Work):

THIS SUBCONTRACT BASE AGREEMENT ("Subcontract"), made this 12th day of July, 2018, between Ellisdale Construction, LLC, whose address is 106 Harrison Street, SE, Suite 300, Leesburg, VA 20175, hereinafter called "EDC" and Smith & Sons, LLC, whose address is 1801 Clydesdale Place Suite 710, Washington, DC 20307 hereinafter called "Subcontractor" for materials and services to be provided on the construction project at the following location HELP Walter Reed Apartments 14S (the "Project").

EDC and Subcontractor agree as follows:

**1.** **Subcontract and Contract Documents**

**1.1** This Subcontract consists of this Subcontract, any Addenda and all Exhibits attached thereto, the Project Schedule included in the Contract Documents as it may be amended from time to time by EDC ("Project Schedule"), and the Prime Contract between EDC and HELP USA (the "Owner"), and all Exhibits thereto (collectively, the "Contract Documents"). The work to be performed by Subcontractor ("Subcontractor Work" or "Subcontractor's Work") hereunder is identified and described in the "Scope of Work" referenced in the Exhibits and any Addenda to Subcontract. The term "Work" is defined in the Contract Documents and includes, but is not limited to, the Subcontract Work.

**1.2** The Contract Documents have been made available to Subcontractor and Subcontractor acknowledges that it has carefully examined them and understands them completely.

**1.3** In the event of any conflict between the terms of this Subcontract and the terms of any of the other Contract Documents, or a conflict among any of the Contract Documents themselves, the provision granting the greater rights or remedies to EDC, or imposing the greater duty, standard, responsibility or obligation on Subcontractor, as determined by EDC, shall govern. In the event Subcontractor discovers any such conflicting provisions, or any other discrepancies among or within the Subcontract or Contract Documents, the Subcontractor shall promptly notify EDC in writing of such discovery. Failure of the Subcontractor to do so shall result in a waiver of any right the Subcontractor may have to additional compensation or a time extension. With respect to the Scope of Work to be performed and furnished by the Subcontractor hereunder, the Subcontractor agrees to be bound to EDC by each and all of the terms and provisions of the Contract Documents, and to assume toward EDC all of the duties, obligations and responsibilities that EDC by those Contract Documents assumes toward the Owner, and the Subcontractor agrees further that EDC shall have the same rights and remedies as against the Subcontractor as the Owner has against EDC under the terms and provisions of the Contract Documents with the same force and effect as though every such duty, obligation, responsibility, right or remedy were set forth herein in full. Subcontractor shall bind its lower tier subcontractors and suppliers, if any, to all of the performance obligations and responsibilities which Subcontractor assumes towards EDC hereunder. Any specific reference sin the Contract Documents to the obligations of the Subcontractor are incorporated herein. The Subcontractor shall comply with all obligations as set forth in the Project Specific Addendum attached hereto and incorporated herein as Exhibit I.

**2.** **Scope of Work**

**2.1** EDC employs Subcontractor, as an independent contractor, to perform and provide, in accordance with the terms and conditions of the Contract Documents, all work, materials, equipment and services for the work set forth in the Scope of Work.

**2.2** Subcontractor agrees to perform the Subcontract Work under the direction of EDC, and to the satisfaction of EDC in strict conformity with the Contract Documents. Subcontractor agrees to provide and pay for all labor (regardless of craft or jurisdiction), competent supervision, materials, tools, supplies, equipment, vehicles and proper safety protection required in connection with the Subcontract Work.

**2.3** The Subcontract Work includes:

**2.3.1** that shown on any of the Contract Documents as if called for or shown on all;

**2.3.2** all things reasonably implied or customarily provided in Subcontractor's trade or necessary to complete such work for inspection and approval under the Subcontract; and

**2.3.3** all Work and things described in Exhibit A to this Subcontract.

**2.4** Subcontractor's mobilization at and utilization of the Project site shall at all times be subject to EDC's direction. The use by Subcontractor of any equipment or temporary facilities provided by EDC at the Project site shall be at EDC's sole discretion and subject to whatever conditions or limitations EDC may place on such use.

**2.5** Subcontractor expressly acknowledges and agrees that the Subcontractor has been engaged and contracted to perform the Subcontract Work as described in the Scope of Work and expressly acknowledges and agrees that EDC has the right to engage and contract with other subcontractors to perform such work as to the balance of the Project and as to other projects being developed or constructed by EDC. Subcontractor expressly waives any claim or right to perform Subcontract Work in any portion of the Project not expressly described in the Scope of Work and as to other projects being developed or constructed by EDC.

| NO MODIFICATIONS, STRIKE-THROUGHS, OR ADDITIONS MAY BE MADE TO THIS AGREEMENT. |
|---|

# EXHIBIT 5

2.6     The Subcontractor will proceed with the Subcontract Work in a prompt and diligent manner, in accordance with EDC's directives, schedule and the durations set forth in Exhibit A, as they may be modified from time to time. Subcontractor agrees to follow the sequence of Work as directed by EDC. The schedule may be modified or revised, as deemed necessary in EDC's sole discretion, as the Work progresses. The schedules are representative of the sequence and duration of the Work and are not intended to mandate mobilization, performance or demobilization by Subcontractor on specified dates. TIME IS OF THE ESSENCE.

2.7     The Subcontractor shall provide shall data in order to assist EDC in determining the most appropriate and acceptable construction schedule and acceleration opportunities of the Work and to update the Project Schedule. The Subcontractor warrants to the Owner and EDC that any scheduling or related information it provides to EDC has been prepared in good faith and is accurate to the best of the Subcontractor's knowledge. In the event that Owner or EDC in their reasonable discretion concludes upon review of the construction progress schedule that a critical path date or milestone completion date may not be met with respect to any portion of the Work, EDC may order Subcontractor to accelerate the Subcontract Work to the extent necessary to keep the progress of the Work on schedule.

2.8     Before commencing the Subcontract Work, the Subcontractor shall provide a written copy of its Hot Work Program to EDC for EDC's review and approval. Subcontractor shall modify its Hot Work Program as reasonably requested by EDC and/or required for the Work. Subcontractor shall comply with the Hot Work Program at all times.

## 3.    <u>Subcontract Sum and Payments</u>

3.1     In consideration of the complete and timely performance of all Subcontract Work, EDC will pay to Subcontractor the following Subcontract Sum of one hundred forty thousand dollars ($140,000), subject to additions and deductions as provided herein (the "Subcontract Sum"). The obligation of EDC to make payment under this Subcontract, whether a progress or final payment, or for extras or change orders or delays to the Work, is subject to the express condition precedent of payment therefor by the Owner. If EDC has provided payment or performance bonds or a combination payment or performance bond, the obligation of EDC and its surety under any of those bonds to make any payment (whether a progress payment or final payment) to a claimant on that bond is similarly subject to the express condition precedent of payment therefor by Owner.

3.1.1   Final payment to EDC by the Owner for the Subcontract Work shall be an express condition precedent which must occur before EDC shall be obligated to make final payment to the Subcontractor. In addition, final payment by EDC to the Subcontractor shall not become due and payable until the following other express conditions precedent have been met: (1) the completion and acceptance of the Subcontract Work by EDC, the Owner and the Architect; (2) provision by the Subcontractor of evidence satisfactory to EDC that there are no claims, obligations or liens outstanding or unsatisfied for labor, services, materials, equipment, taxes or other items performed, furnished, or incurred for or in connection with the Subcontract Work; (3) execution and delivery by the Subcontractor, in a form satisfactory to EDC of a general release running to and in favor of EDC and the Owner; (4) Subcontractor delivers to EDC all operating instructions, maintenance manuals, drawings, submittals, warranties, guaranties, assignment of warranties, record drawings, records, bonds, certificates of insurance and similar materials required by the Contract Documents; (5) consent of surety, if any, to final payment, is received by EDC; (6) EDC has received evidence of satisfactory completion of all inspections, sign-offs, testing and approvals of governmental and quasi-governmental authorities required for the Subcontract Work; (7) Subcontractor has submitted executed final lien waivers for itself and its subcontractors and suppliers using the forms attached hereto as Exhibits C-1, C-2 and C-3, as applicable; and (9) complete and full satisfaction of all claims, demands and disputes, and all obligations and responsibilities of Subcontractor, arising out of or related to the Subcontract, including those as between EDC and Subcontractor as well as those between Subcontractor and any third party. Should there be any such claim, obligation or lien or unsatisfied obligation or responsibility whether before or after final payment is made, the Subcontractor shall pay, refund or deliver to EDC (1) all monies that EDC and/or the Owner shall pay in satisfying, discharging or defending against any such claim, obligation or lien or any action brought or judgment recovered thereon and all costs and expenses, including legal and expert fees and disbursements, incurred in connection therewith; and (2) and such amounts as EDC or Owner shall, in their sole discretion, determine to be an amount sufficient to protect EDC and Owner therefrom (in lieu of payment of such amounts, Subcontractor may, at Owner's and EDC's sole discretion, deliver a bond satisfactory to EDC and Owner). Such refund and payment shall be made within ten (10) days of request by EDC to Subcontractor for same. The final payment shall be due within forty (40) days after all of these express conditions precedent are met. Acceptance of final payment by Subcontractor shall constitute a waiver by Subcontractor of all claims against EDC, the Owner and the Project.

3.1.2   No payment (final or otherwise) made under or in connection with this Subcontract shall be conclusive evidence of the performance of the Subcontract Work or of this Subcontract, in whole or in part, and no such payment shall be construed to be an acceptance of defective, faulty or improper Subcontract Work or materials nor shall it release the Subcontractor from any of its obligations under this Subcontract; nor shall entrance and use by the Owner constitute acceptance of the Subcontract Work or any part thereof. Notwithstanding the foregoing, this Paragraph does not alter applicable statutes of limitation. The failure of Subcontractor to fully perform and satisfy any or all obligations set forth in this Paragraph shall constitute a default, entitling EDC to take action as described in Section 8 of this Subcontract.

3.2     The Subcontract Sum includes all Federal, State, County, Municipal and other taxes imposed by law and based upon labor, services, materials, equipment or other items acquired, performed, furnished or used for and in connection with the Subcontract Work, including but not limited to sales, use and personal property taxes payable by or levied or assessed against the Owner, EDC or the Subcontractor. Where the law requires any such taxes to be stated and charged separately, the total price of all items included in the Subcontract Work plus the amount of such taxes shall not exceed the Subcontract Sum.

3.3     The Subcontract Sum shall be based upon applications for payment submitted to EDC by the Subcontractor, corresponding to applications for payment submitted by EDC to the Architect/Owner, and certificates for payment issued by the Architect/Owner all in accordance with the Subcontract. Payments received by the Subcontractor for Subcontract Work properly performed by its contractors and suppliers shall be

**NO MODIFICATIONS, STRIKE-THROUGHS, OR ADDITIONS MAY BE MADE TO THIS AGREEMENT.**

# EXHIBIT 5

held by Subcontractor for those contractors or suppliers who performed Subcontract Work or furnished materials, or both, under contract with the Subcontractor for which payment was made to the Subcontractor by EDC.

3.4     The period covered by each application for payment shall be one calendar month ending on the ___ day of the month. Provided an application for payment is received by EDC's Accounts Payable Department not later than the 20th day of a month, includes all required supporting documentation and is accompanied by fully executed lien waivers from the Subcontractor and all of its sub-subcontractors and vendors using the forms attached hereto as Exhibits B-1, B-2 and B-3. EDC will include the Subcontractor's Work covered by that application in the next application for payment which EDC is entitled to submit to the Architect/Owner. EDC shall pay the Subcontractor each progress payment within seven business days after EDC receives payment from the Owner.

3.5     If an application for payment is received by EDC after the application date fixed above, the Subcontractor's Work covered by it shall be included by EDC in the next application for payment submitted to the Architect/Owner. Notwithstanding any other provision herein, failure by the Subcontractor to submit any application for payment or invoice to EDC within ninety days of Substantial Completion of the Project shall constitute an absolute waiver and relinquishment, without condition or limitation, of any and all right Subcontractor otherwise has, may have, or may have had to file and/or pursue a mechanic's lien or any other claim for payment arising from or in any way related to the Subcontract and Project described above or for any materials, equipment, fixtures, apparatus, improvements, labor or services which have been or at any time hereafter may be provided or supplied to the Project by or on behalf of the Subcontractor.

3.6     Each application for payment shall be based upon the most recent schedule of values approved by EDC in accordance with the Contract Documents. The schedule of values shall allocate the entire Subcontract Sum among the various portions of the Subcontractor's Work and be prepared in such form and supported by such data to substantiate its accuracy as EDC may require. This schedule, unless objected to by EDC, shall be used as a basis for reviewing the Subcontractor's applications for payment.

3.7     Applications for payment submitted by the Subcontractor shall indicate the percentage of completion of each portion of the Subcontractor's Work as of the end of the period covered by the application for payment.

3.8     Subject to the provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

3.8.1     Take that portion of the Subcontract Sum properly allocable to completed Subcontract Work as determined by multiplying the percentage completion of each portion of the Subcontractor's Work by the share of the total Subcontract Sum allocated to that portion of the Subcontractor's Work in the schedule of values, less that percentage actually retained, if any, from payments to EDC on account of the Subcontract Work. Pending final determination of cost to EDC of changes in the Subcontract Work which have been properly authorized by EDC, amounts not in dispute shall be included to the same extent provided in the Prime Contract, even though the Subcontract Sum has not yet been adjusted;

3.8.2     Add that portion of the Subcontract Sum properly allocable to materials and equipment delivered and suitably stored at the site by the Subcontractor for subsequent incorporation in the Subcontractor's Work or, if approved by EDC, suitably stored off the site at a location agreed upon in writing, less the same percentage retainage required by the Prime Contract to be applied to such materials and equipment in EDC's application for payment;

3.8.3     Subtract retainage in the amount of ten percent (10%) of the Subcontract Sum;

3.8.4     Subtract the aggregate of previous payments made by EDC;

3.8.5     Subtract all amounts, backcharges and claims by EDC against Subcontract or any third party for which Subcontractor is responsible hereunder, including a mark-up of eight percent (8%) plus general conditions costs payable to EDC; and

3.8.6     Subtract amounts, if any, which are related to Subcontract Work for which the Architect/Owner has withheld or nullified, in whole or in part, a certificate of payment for a cause which is the fault of the Subcontractor.

3.9     Upon the partial or entire disapproval by EDC of the Subcontractor's application for payment, EDC shall provide written notice to the Subcontractor. When the basis for the disapproval has been remedied, the Subcontractor shall be paid the amounts withheld.

3.10     Any amounts due Subcontractor under this Subcontract may be reduced to offset amounts owed by Subcontractor to EDC pursuant to any other agreement between EDC and Subcontractor, regardless of whether those offset amounts relate to this Project or other projects.

3.11     As a condition precedent to any partial payment for the Subcontract Work, the Subcontractor shall deliver to EDC with each Application for Payment the following: (a) G702 and G703, (b) any and all back-up required by the Owner, Architect or EDC as required by this Subcontract and the Contract Documents; (c) all daily reports for the prior month, (d) an itemization of all claims asserted by the Subcontractor in strict accordance with Section 9 of this Subcontract (collectively the "Subcontractor's Monthly Report"); and (e) a fully executed release of liens and claims sworn to under oath and duly notarized by the Subcontractor and any of its sub-subcontractors or suppliers, of any tier, for the Subcontract Work performed to date, including any and all material, services and labor provided or supplied by or through the Subcontractor (including all of its sub-subcontractors or suppliers) at time of applicable payment, using each of the forms attached hereto as Exhibits B-1, B-2 and B-3, as applicable. The Subcontractor shall not be permitted to revive any claims through the Subcontractor's Monthly Report that were not properly preserved in accordance with Section 9 of the Subcontract. Likewise, as a condition precedent to final payment for the Subcontract Work, and in addition to the information required to be submitted in accordance with subsections (a) and (b) of this Paragraph, the Subcontractor and all of its sub-subcontractors or suppliers, of any tier, shall sign and deliver to EDC a release of liens and claims sworn to under oath and duly notarized for the entirety of the Subcontract Work performed to date, including any and all material, services and labor provided or supplied by or through the Subcontractor (including all of its sub-subcontractors or suppliers) at time of applicable payment, using each of the forms attached hereto as Exhibits C-1, C-2 and C-3, as applicable. EDC may, in its sole discretion, make any payment due under this Subcontract directly to any material supplier or lowered tiered subcontractor, vendor or other person or entity working by or through Subcontractor or any Sub-subcontractor, or by joint check payable to the Subcontractor and such material supplier or lowered tiered subcontractor, less applicable retainage. In that event, the amount so paid to the material supplier or the lower tiered subcontractor shall be deducted from any payment due

---

**NO MODIFICATIONS, STRIKE-THROUGHS, OR ADDITIONS MAY BE MADE TO THIS AGREEMENT.**

Subcontractor. No direct or joint check payment by EDC hereunder, shall, however, create any obligation on the part of EDC to make any payment to any material supplier or lower tier subcontractor, and no payment by EDC to any material supplier or lowered tier subcontractor shall create any obligation to make any further payments to any material supplier or lowered tier subcontractor.

3.12    EDC may withhold payment in whole, in part, or based on subsequently discovered evidence, may reduce payments otherwise due, to such extent as may be appropriate to protect Owner and EDC from loss for which Subcontractor is responsible because of: (1) defective portions of the Subcontractor's Work not remedied or unauthorized deviations or substitutions; (2) any third-party claim filed or threatened against the Project, the Project site, the Subcontract Work, Owner or Contractor, unless security acceptable to Owner and EDC is provided by Subcontractor or such claim is released; (3) failure of Subcontractor to make payments to Sub-subcontractors or other persons or entities for labor, materials, supplies or equipment from sums advanced pursuant to an application for progress payment; (4) reasonable evidence that the Subcontract Work cannot be completed for the unpaid balance of the Subcontract Sum; (5) damage to Owner (including but not limited to liquidated and other permitted under the Prime Contract), EDC or another contractor or subcontractor of any of them, or to the work of any of them, for which Subcontractor is responsible under the terms of this Subcontract; (6) reasonable evidence that the Subcontract Work will not be completed within the time allowed by this Subcontract, or that the unpaid balance of the Subcontract Sum would not be adequate to cover actual or liquidated damages for the anticipated delay for which Subcontractor is responsible under the terms of this Subcontract or the Prime Contract; or (7) any breach by Subcontractor in the performance of its obligations under this Subcontract, including, but not limited to, failure to meet required construction schedules, failure to maintain required insurance, failure to make payments for applicable employment taxes, wages, fringe benefits, pension obligations, union benefits and similar items, or failure to cooperate in coordination of the Subcontract Work with work and construction by others at the Project Site. EDC also may offset against payments due to Subcontractor under this Subcontract any amounts owing by Subcontractor to Owner or Contractor, or to any affiliate of Owner or Contractor, whether arising in connection with the Project or others.

3.13    EDC may, in its sole discretion, make any payment due under this Subcontract by direct payment or joint check to any Sub-subcontractor, supplier, vendor or other person or entity working by or through Subcontractor or any Sub-subcontractor. Any such payment shall be deducted from any amount otherwise due Subcontractor against the Subcontract Sum. Subcontractor shall promptly endorse any joint check issued by EDC to ensure that the co-party to the check is promptly paid in both form and substance consistent with Subcontractor's obligations under this Subcontract.

3.14    The Subcontractor agrees that, if and when requested to do so by EDC, it shall furnish such information, evidence and substantiation as EDC may require with respect to the nature and extent of all obligations incurred by the Subcontractor for or in connection with the Subcontract Work, all payments made by the Subcontractor thereon, and the amounts remaining unpaid, to whom and the reasons therefor.

## 4.    Prosecution of Work

4.1    The Subcontractor shall commence the Subcontract Work when notified to do so by EDC and shall diligently and continuously prosecute and complete the Subcontract Work and coordinate the Subcontract Work with the other Work being performed on the Project, in accordance with the Project Schedule as may be modified or adjusted from time to time by EDC during the performance of the Work, and any other scheduling requirements listed in the Contract Documents. Subcontractor shall not delay, impede, obstruct, hinder or interfere with the commencement, progress or completion of the whole or any part of the Subcontract Work or other Work on the Project.

4.2    The Subcontractor shall participate and cooperate in the development of schedules and other efforts to achieve timely completion of the Subcontract Work and shall provide EDC with all information for the scheduling of the times and sequence of operations required for its Subcontract Work to meet EDC's overall schedule requirements. The Subcontractor shall continuously monitor the Project Schedule so as to be fully familiar with the timing, phasing and sequence of operations of the Subcontract Work and of other Subcontract Work on the Project and shall execute the Subcontract Work in accordance with the requirements of the Project Schedule including any revisions thereto. Any failure by Subcontractor to man the job with adequate forces for five (5) or more consecutive business days, or for more than five (5) business days out of any thirty (30)-day period, shall, unless authorized by EDC in writing, constitute a basis for termination of this Subcontract, effective upon notice from EDC. Without intending to limit the foregoing, Subcontractor will not be considered to provide adequate staffing if Subcontractor fails within two (2) business days to provide such additional manpower as EDC identifies, by notice to Subcontractor, to be necessary in EDC's judgment to maintain Subcontractor's schedule or Subcontractor thereafter fails to maintain forces at such levels. Subcontractor shall not be entitled to additional compensation for extra manpower ordered by EDC to maintain Subcontractor's schedule.

4.3    EDC shall prepare the Project Schedule and may revise such schedule, from time to time, as determined by EDC to be reasonably necessary to facilitate the completion of the entire Project. The Subcontractor shall comply with instructions given by EDC, including any to suspend, delay or accelerate the Subcontract Work. Exhibit A to this Subcontract includes durations for the Subcontract Work, which shall be in a form acceptable to EDC and shall be modified as directed by EDC so that they are consistent with the Project schedule, comply with all scheduling requirements of the Contract Documents and this Subcontract, and comply with EDC's other work schedules and directions regarding schedule, which EDC may issue from time to time.

4.4    If EDC determines that Subcontractor is behind schedule, Subcontractor shall, upon notice by EDC and at Subcontractor's sole expense, immediately employ appropriate action to (1) prevent further schedule loss, (2) capture lost schedule and otherwise overcome such schedule delays, including but not limited to, accelerating its Subcontract Work by working overtime and adding multiple work shifts, manpower and equipment. If Subcontractor fails to take appropriate action, EDC shall have the right, but not the obligation, to take whatever actions it deems appropriate to overcome such delays, including executing portions of the Subcontract Work with its own forces and equipment, or by hiring other subcontractors to execute all or part of the Subcontract Work, and Subcontractor shall bear all costs associated with such actions, as well as any costs, expenses or other damages incurred by EDC, Owner, or other subcontractors that are caused by or related to Subcontractor's delays. Upon demand, Subcontractor shall immediately tender to EDC all amounts that constitute costs, expenses and damages resulting from Subcontractor's delays. Alternatively, if Subcontractor either refuses EDC's demand pursuant to this Section, or is unable to promptly tender said funds, EDC may offset against amounts due Subcontractor using any such amount that remains unpaid under this or any other agreement

NO MODIFICATIONS, STRIKE-THROUGHS, OR ADDITIONS MAY BE MADE TO THIS AGREEMENT.

**EXHIBIT 5**

with the Subcontractor. EDC will have no obligation to take action as contemplated by this Section. Action by EDC pursuant to this Section, will not be deemed a cure of any default by Subcontractor or limit EDC's rights (including any right of termination or additional or cumulative rights to compensation for damages) in respect of any such default. Actions by EDC pursuant to this Section will not limit Subcontractor's responsibility (including warranty responsibilities) for any of the Subcontract Work not performed by Subcontractor. Subcontractor will be responsible for coordinating its Subcontract Work with portions of the Work performed by EDC or separate subcontractors in accordance with this Section.

4.5     Subcontractor acknowledges that its Work: (1) will be performed concurrently with the work of other subcontractors and Owner's other contractors; and (2) may not be performed in a continuous manner due to the activities of other subcontractors and Owner's other contractors. Subcontractor warrants here that it has made no assumptions (in developing its schedule, sequence of work, or the efficiency or cost of its Subcontract Work) that its Subcontract Work will be performed continuously, without interruption, without impediments and/or without inefficiencies. Subcontractor represents that the Subcontract Sum and its schedule fully account for the fact that Subcontractor will be working under the conditions described in the preceding sentence, and Subcontractor agrees that Subcontractor will be entitled to no additional compensation or other relief based upon such conditions. Subcontractor will coordinate its Subcontract Work, including but not limited to procurement, submittals, shop drawings, fabrications, equipment delivery, storage, testing, inspections and installation, with the work of EDC's own forces, other subcontractors and Owner's other contractors to prevent or mitigate delays or interferences in the completion of any part or all of the Project. EDC shall have the right to decide the time, order, and priority in which various portions of the work (including the Subcontract Work) shall be performed and all other matters relative to the timely and orderly conduct of the Subcontract Work.

4.6     If the Subcontract Work is delayed by any act, neglect or default of Owner or EDC, or any other contractor or subcontractor employed by Owner or EDC at the Project site, or by unusually severe weather, accidents, war, governmental action, fire, windstorm or other casualty or any other similar causes beyond the reasonable control of Subcontractor, or any of its Sub-subcontractors, and so long as any such delay is not a result of acts, omissions or failure to act by Subcontractor or any Sub-subcontractor or other person or entity for whom either of them is responsible, Subcontractor could not reasonably have been expected to anticipate the condition and Subcontractor has used all reasonable efforts to mitigate such delay, then the time for Subcontractor's performance shall be extended for a period equal to the time lost in the performance of critical activities by reason of the aforesaid causes, provided a claim for an extension is presented by written notice to EDC within seventy-two (72) hours after the commencement of such delay. Time extensions shall only be granted with respect to delays which Subcontractor establishes make performance of any critical activities in the Subcontract Work unachievable, taking into account Subcontractor's obligations under this Subcontract, including but not limited to Subcontractor's obligations under this Section. Subcontractor shall anticipate and take into consideration foreseeable weather conditions at the site in organizing and scheduling its operations. If unusually severe weather conditions form the basis for a claim for additional time, such claim shall be documented by data available from the National Data Climate Center, Asheville, North Carolina (http://www.ncdc.noaa.gov/) and the records of the Subcontractor at the Project, substantiating that weather conditions were abnormal for the applicable period of time and had an adverse effect on the scheduled construction. Unusually severe weather is defined as weather that is more severe than the adverse weather anticipated for the location of the Project and the applicable season or location involved. Foreseeable weather conditions shall be determined with reference to National Oceanic and Atmospheric Association historical records for a period of ten (10) years for the location of the Project. In no case will Subcontractor be entitled to extensions for delays arising out of any strike or other work stoppage or work slow-down (including employees striking or boycotting in sympathy to other strikes or boycotts, or employees refusing to enter any secondary entrance), and it shall be Subcontractor's responsibility to promptly resolve the underlying employee demands or find other means to overcome the work-related action so that work continues. Subcontractor shall not be entitled to separate extensions of time for causes of delay that have a concurrent or interrelated effect on the progress of the Subcontract Work. If one of several causes of delay operating concurrently result from any breach, default, fault, inaccuracy, error, act or omission of Subcontractor or others for whom it is responsible, Subcontractor shall receive no extension of time for such delay. In evaluating Subcontractor's entitlement to an extension of time, Owner and EDC shall receive the benefit of schedule float in any work duration or progress schedule. No claims for additional compensation or damages for delays, whether caused in whole or in part by any conduct on the part of Contractor, including, but not limited to, conduct amounting to a breach of this Subcontract, or delays by other subcontractors or Owner, shall be recoverable from Contractor, and the above-mentioned extension of time for completion shall be the sole remedy of Subcontractor; provided, however, that in the event EDC obtains additional compensation from Owner on account of such delays, Subcontractor shall be entitled to such portion of the additional compensation so received by EDC from Owner as is equitable under all of the circumstances. In the event that EDC prosecutes a claim against Owner for additional compensation for any delay, Subcontractor shall cooperate fully with EDC in the prosecution thereof and shall pay costs and expenses incurred in connection therewith, including actual attorneys' fees, to the extent that said claim is made by EDC at the request of the Subcontractor.

4.7     EDC will suffer financial loss if the Subcontractor does not complete the Subcontract Work within the durations set forth in Exhibit A, as they may be modified by EDC in accordance with this Subcontract. EDC and Subcontractor have agreed that EDC's actual damages in such event would be extremely difficult to determine. Therefore, the parties have agreed that if the Subcontractor does not complete the Subcontract Work within the durations set forth in Exhibit A, as modified by EDC in accordance with this Subcontract, EDC shall at its option, be entitled to deduct or retain from payments otherwise due to Subcontractor an amount equal to $1,000 dollars per day for each day of delay. Such liquidated damages hereby are agreed to be a reasonable and conservative estimate of the actual damages EDC may incur as a result of the delay and not a penalty. The liquidated damages provided for herein are for EDC's damages for delay only; any liquidated damages anticipated or assessed by the Owner under the Prime Contract are in addition to EDC's delay damages and may be deducted from payments otherwise due to Subcontractor under Section 3.12 of this Subcontract. Notwithstanding anything contained in the Subcontract to the contrary, the assessment of liquidated damages is not subject to any notice or claims procedure. EDC and the Subcontractor waive the right to contest or challenge the validity or enforceability of this Section 4.7 and the liquidated damages provisions contained in this Subcontract.

---

**NO MODIFICATIONS, STRIKE-THROUGHS, OR ADDITIONS MAY BE MADE TO THIS AGREEMENT.**

# EXHIBIT 5

4.8 Notwithstanding anything in the Contract Documents to the contrary, no interruption, interference, inefficiency, suspension or delay in the commencement or progress of the Subcontract Work from any cause whatsoever, including those for which EDC may be responsible, in whole or in part, shall relieve Subcontractor of its duty to perform or give rise to any right to damages or additional compensation from EDC. Subcontractor expressly acknowledges and agrees that it shall receive no damages for delay. Subcontractor expressly waives and releases all claims or rights to recover lost profit (except for profit on Subcontract Work actually performed), recovery of overhead (including home office overhead), and any other indirect damages, costs or expenses in any way arising out of or related to the Subcontract Agreement, including the breach thereof by EDC. Subcontractor's sole remedy, if any, against EDC will be the right to seek an extension of time; provided, however, the granting of any such time extension shall not be a condition precedent to the aforementioned "No Damage For Delay" provision. This Paragraph shall expressly apply to claims for early completion, as well as to claims based on late completion.

4.9 Before proceeding with the Subcontract Work, Subcontractor shall carefully examine the correctness of contiguous Work installed by others, using all means necessary to discovery any defects in such other Work to determine whether it is fit, ready and in suitable condition for the proper and accurate performance of the Subcontract Work hereunder. The Subcontractor's failure to detect and report discrepancies will be deemed an acceptance of such Work by Subcontractor and will preclude the Subcontractor from seeking any increased costs or damages from EDC for such items. If Subcontractor is working on or around finished flooring areas, Subcontractor agrees to provide appropriate protection to the finished flooring to protect against dirt, water, or any damage to the materials already installed. Once the Subcontractor has started work on the Project, the Subcontractor assumes responsibility for any damage resulting from Subcontractor's conduct, including the failure to protect their Subcontract Work or use reasonable precautions to protect the Work of others. Subcontractor is solely responsible for protecting its own Subcontract Work and, regardless of cause, neither Owner nor EDC shall be responsible for any loss or damage to the Subcontract Work. This Section does not limit Subcontractor's rights against insurance proceeds received by Owner or EDC as a result of loss of, or damage to, the Subcontract Work. The Subcontractor shall take all reasonable measures and precautions to safeguard its Subcontract Work and the Work of others with the intent of preventing any conditions whereby mold or other forms of water damage could occur to the Work. These measures and precautions include, without limitation, the proper sequencing and coordination of the Subcontract Work with the Work of others on the Project as well as proper storm water protection. Subcontractor shall in the performance and through the completion of its Subcontract Work promptly notify Contractor, in writing, of any water intrusion or onset of mold contamination, or any conditions which may cause or contribute to mold formation on the Work and/or within the building envelope, and shall further promptly undertake all necessary action to remedy the contamination or any conditions that might lead to contamination. All such action shall be at Subcontractor's sole cost.

4.10 Subcontractor shall promptly replace or correct any of the Subcontract Work that EDC or Owner reject as failing to conform to the requirements of this Subcontract and the other Contract Documents. If Subcontractor does not do so within the time required by Contractor, EDC shall have the right to do so, and Subcontractor shall be liable to EDC for the cost thereof, including a reasonable allowance for overhead and profit for work executed by EDC with its own forces or through others. EDC may offset against amounts due Subcontractor any such amount that remains unpaid, whether or not demand for reimbursement has been made on Subcontractor. If, in the opinion of Contractor, it is not expedient to correct or replace all or any part of the Subcontract Work that EDC or Owner reject, then EDC at its option, may deduct from the payments due, or to become due, to Subcontractor, such amounts as, in EDC's judgment, represent the greater of (1) the difference between the fair value of the Subcontract Work that EDC or Owner reject and the value thereof, if Subcontractor had complied with this Subcontract and the Contract Documents, or (2) the cost of correction. Subcontractor's remedy for wrongful rejection of the Subcontract Work by Owner shall be limited to EDC's remedy against Owner under the Contract Documents. EDC shall be liable for any increased costs caused by its wrongful rejection of the Subcontract Work if the Owner was not involved in said rejection. In such case, Contractor's rejection shall be treated as a request for a change in the Subcontract Work, with Subcontractor's recovery, if any, to be as provided in Section 6 of this Subcontract.

4.11 Subcontractor shall cooperate with EDC and other subcontractors whose Work must be coordinated with the Subcontract Work and shall participate in the preparation of coordinated drawings and Work schedules as required by EDC in areas of congestion, specifically noting and advising EDC of any interference by others.

4.12 Subcontractor will furnish periodic progress reports of the Subcontract Work as requested by EDC, including the dates of delivery for materials or equipment to be provided that may be in the course of preparation or manufacture.

4.13 Subcontractor shall keep the site clean of debris resulting from the performance of the Subcontract Work and shall remove and properly dispose of all debris generated by the execution of the Subcontract Work. Subcontractor shall not permit any of its employees, agents, sub-subcontractors or suppliers to eat in any structure on the Project site, unless approved in advance in writing by the EDC Project Superintendent. If the Subcontractor fails at any time to comply with this Paragraph, within forty-eight (48) hours after receipt of notification from EDC of such noncompliance (said notification may be oral or in writing), EDC may perform such necessary clean-up and deduct the cost from any amounts due Subcontractor.

4.14 Subcontractor shall give adequate notices pertaining to the Subcontract Work to the proper authorities and shall secure and pay for all necessary licenses and permits to carry on the Subcontract Work; a copy to be provided to EDC by Subcontractor prior to the start of the Subcontract Work.

4.15 Subcontractor shall at all times give personal superintendence to the Subcontract Work and have at the site at all times when any of the Subcontract Work is being performed a competent foreman or superintendent satisfactory to EDC and with authority to act for and bind Subcontractor on all matters arising out of or relating to the Subcontract. Subcontractor shall send a representative, with full authority to act on behalf of and bind Subcontractor, to all Project meetings and conferences as may be directed by EDC. EDC Construction Managers, Project Superintendents and Project Managers need to be able to communicate effectively and efficiently with the Subcontractor's workforce, in that if the work crew being provided is non-English speaking it shall be the Subcontractor's responsibility to provide a supervisor or lead worker who can fluently discuss and comprehend construction related terms and procedures in English. It will be the Subcontractor's burden to correct any problem created by the inability of a field worker to follow the guidance and directions of an EDC employee.

---

**NO MODIFICATIONS, STRIKE-THROUGHS, OR ADDITIONS MAY BE MADE TO THIS AGREEMENT.**

# EXHIBIT 5

4.16   Subcontractor, in performance of the Subcontract Work covered hereby, is an independent subcontractor and shall have the sole discretion in the performance of such Subcontract Work, save and except that the same must be performed in accordance with the Subcontract.

4.17   Subcontractor shall close and lock any and all windows, doors and any other means of entrance to the Project for which Subcontractor is working at the end of their Work.

4.18   Subcontractor shall not park on finished driveways, sidewalks, pavers, etc. Subcontractor is required to provide off-site parking at its own cost for all of its employees, agents, sub-subcontractors and suppliers.

4.19   In the event Subcontractor engages any sub-subcontractor or supplier, it shall make copies of all sub-subcontracts and Purchase Orders available to EDC upon its reasonable request. Prior to commencing any of the Subcontract Work, Subcontractor shall furnish to EDC in writing, all names, addresses and telephone numbers of any and all laborers, subcontractors, suppliers, material men or other persons or entities supplying goods, merchandise, labor or services in connection with or in furtherance of the Subcontract Work utilizing the form attached hereto as Exhibit G. In the event any of the persons or entities noted in the foregoing list shall be replaced, or in the event additional persons or entities shall be engaged, Subcontractor shall immediately notify EDC in writing thereof and provide an updated Exhibit G to EDC for its approval. EDC will not pay, and Subcontractor will be solely responsible for payment of, any laborers, subcontractors, suppliers, material men or other persons or entities supply goods, merchandise, labor or services on the Project and were not identified on Exhibit G submitted to EDC prior to their performance of any Subcontract Work. Insurance and Bonds

## 5.   __Insurance__

5.1   Prior to starting the Subcontract Work, Subcontractor at its own expense, shall procure and maintain in full force throughout the entire term of the Contract Documents, on all of its operations, and shall provide certificates of insurance reflecting the following insurance policies:

   5.1.1   Commercial General Liability with minimum limits of: $2,000,000 Aggregate Limit of Liability, $2,000,000 Products and Completed Operations, $1,000,000 Bodily Injury / Property Damage any One Occurrence, $1,000,000 Personal and Advertising Injury any One Person or Organization, $1,000,000 for each Occurrence including the following coverages: Premises Operations, Blanket Contractual Liability, Broad Form Property Damage, Independent Contractor's Liability, Mobile Equipment, Explosion, Collapse, Underground Property Damage, Residential Work, with no exclusionary language or limitations relating to soils subsidence or earth movement of any kind regardless of cause, Punitive Damages where allowable by law, and Elevators – if applicable, written on an Occurrence Form. Claims Made policies will not be accepted.

   5.1.2   Automobile liability insurance with minimum limits of $1,000,000 as a combined single limit for bodily injury and property damage, and including coverage for the use of all owned, non-owned, leased and hired vehicles.

   5.1.3   Workers' Compensation/ Employer's Liability.

      5.1.3.1   Subcontractor shall provide EDC with verification of worker's compensation coverage under the laws of the State in which the Subcontractor performs a service for EDC.

      5.1.3.2   Subcontractor shall provide Employer's Liability coverage as follows:
         Bodily Injury by accident - $1,000,000 each accident
         Bodily Injury by disease - $1,000,000 each employee
         Bodily Injury by disease - $1,000,000 policy limit

      5.1.3.3   If Subcontractor is borrowing or using loaned employees (i.e., Subcontractor leases a piece of equipment and it comes with an operator or Subcontractor obtains employees from temporary agencies, etc.) a copy of the Alternate Employer's Endorsement must be included.

      5.1.3.4   If Subcontractor is leasing its "employees" from a professional employer organization, a copy of the appropriate Leased Employee Worker's Compensation coverage endorsement must be included.

   5.1.4   An umbrella policy with minimum limits of $5,000,000 per occurrence/aggregate.

5.2   All insurance policies provided by the Subcontractor under the Contract Documents must be issued by insurance companies meeting A.M. Best Current policy holder rating of "A- VII" or better and all such insurance companies must be authorized to do business in the state or district in which the Project is located. With the exception of Worker's Compensation, Owner, EDC, and their institutional lenders, if any, shall be named as Additional Insureds on all policies and Subcontractor shall furnish EDC with said certificates of insurance, including copies of endorsements evidencing above stated coverages, prior to Subcontractor's commencement of the Subcontract Work hereunder. Certificates must also reference the Project identified in the Scope of Work and Contract Documents. Upon the request of EDC, Subcontractor will provide EDC with true and certified copies of all policies as well as any subsequent policies and endorsements related to the Contract Documents, which Subcontractor is required to procure and maintain. All insurance company ratings must be reflected on the certificates of insurance. All insurance policies provided by the Subcontractor under the Contract Documents shall grant EDC and Owner, and their respective successors and assigns, a Waiver of Subrogation. The Subcontractor shall provide the following endorsements (or their equivalent) to the Commercial General Liability policy required hereunder: ISO Form CG 20 10 07 04 or CG 20 10 04 13 (Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization), ISO Form CG 20 37 07 04 (Additional Insured – Owners, Lessees or Contractors – Completed Operations), ISO Form CG 24 04 05 09 (Waiver of Transfer of Rights of Recovery Against Others to Us), ISO Form CG 25 04 05 09 (Designated Locations General Aggregate Limit), and ISO Form CG 25 03 05 09 (Designated Construction Project(s) General Aggregate Limit). The Subcontractor shall provide the following endorsements (or their equivalent) to the Workers Compensation policy required hereunder: NCCI Form WC 00 03

---

__NO MODIFICATIONS, STRIKE-THROUGHS, OR ADDITIONS MAY BE MADE TO THIS AGREEMENT.__

13 (Waiver of Right to Recover From Others Endorsement). All insurance company ratings must be reflected on the certificates of insurance. All insurance provided by the Subcontractor shall conform to these requirements and the sample certificates of insurance attached as Exhibit D.

**5.3**     All insurance policies to be provided by the Subcontractor hereunder shall contain a provision that such insurance will not be cancelled, materially changed or not renewed without at least thirty (30) days advance written notice to EDC by certified mail, return receipt requested. In the event of a failure of the Subcontractor to maintain said insurance, EDC shall have the right (but not the obligation) to maintain the same coverages on behalf of the Subcontractor, who agrees to furnish all necessary information thereof and to pay the cost thereof to EDC upon presentation of an invoice.

**5.4**     Subcontractor shall furnish EDC with renewal certificates, applicable coverage and Additional Insured endorsements for Commercial General Liability prior to the expiration of such insurance, for a period of three (3) years after completion of all works of improvements on the Project. Such continuing insurance shall comply with the requirements set forth above.

**5.5**     The carrying of insurance shall not be deemed to release Subcontractor or in any way diminish its liability, by way of indemnity or otherwise, as assumed by it under the Subcontract. All insurance afforded by the policy for the benefit of the Additional Insureds shall be Primary and Non-Contributory to any insurance or Self Insurance maintained by the Additional Insureds.

**5.6**     EDC and Subcontractor waive all rights against each other, EDC's separate contractors, and all other subcontractors and suppliers for damages caused by fire, damage, injury or loss to its equipment, tools and other property or perils to the extent covered by Builders Risk, other property insurance applicable to the Subcontract Work, or Subcontractor's Workers Compensation Insurance, except such rights as they may have to the proceeds of such insurance.

**5.7**     The Subcontractor shall provide payment and performance bonds as follows:

| **Bond type** | **Bond amount ($ 0.00)** | **Bond delivery date** | **Bond form** |
|---|---|---|---|
| n/a | | | |

Said bonds shall include the right of EDC without further notice to the surety, to order changes within the scope of this Subcontract in the labor or materials furnished, or in the time of delivery necessary to conform to changes in EDC's Prime Contract with the Owner. If directed by EDC, the Subcontractor shall provide additional or supplemental bonds equal to any increase in the value or cost of labor and materials furnished. Any bonding company rated less than A, X by A.M. Best Company is unacceptable to EDC.

**5.8**     The failure of Subcontractor to fully and strictly comply at all times with the insurance and bond requirements set forth herein will be deemed a material breach of the Subcontract.

## 6.     <u>Changes</u>

**6.1**     EDC may, at any time and without notice to sureties, by written directive from EDC's President, Vice-President, Director[s] or Project Manager[s] only identifying the scope of work, direct changes, additions or deletions to the Subcontract Work to be performed by Subcontractor. Subcontractor shall perform the changed Work without delay or interruption. A directive by EDC's Superintendent or other field personnel for any changes or additional work, whether verbal or written, shall not constitute authorization for the Subcontractor to perform said work.

**6.2**     If Subcontractor believes any such directive from EDC or information provided by the Owner, Architect or others (i.e. an RFI response, submittal response, direction from City/County official or other written directive) requires additional cost or time, it shall not agree to, nor perform, any changes without first 1) submitting written notice to EDC's President, Vice-President, Director[s] or Project Manager[s], of the potential adjustment in additional cost or time and 2) receiving a written directive from EDC's President, Vice-President, Director[s] or Project Manager[s] directing Subcontractor to proceed under one of the following methods: a) prior to performing such changes to the Subcontract Work, submit a Subcontractor's Change Proposal pursuant to Section 6.3 below, b) perform such changes to the Subcontract Work and submit costs pursuant to Section 6.3 below, c) perform Subcontract Work on Time and Material, d) perform Subcontract Work with Unit Costs, e) perform Subcontract Work with no adjustment to contract time or cost . Failure by the Subcontractor to obtain EDC's written directive required herein shall constitute a waiver of all claims for additional compensation or time or objections it otherwise may have had to the terms of any directive issued by EDC for the subject work.

**6.3**     Within five (5) business days of the Subcontractor's receipt of such written directive, Subcontractor shall submit to EDC an estimate of its adjustment to the Subcontract Sum and/or schedule, if any, for performing the changed work along with all back-up documentation necessary to substantiate such claimed adjustments (the "Subcontractor's Change Proposal"). If EDC agrees with the Subcontractor's Change Proposal, the parties shall execute a Change Order identifying the agreed change in scope and the agreed modification to the Subcontract Sum, if any ("Change Order"). Agreement on any Change Order shall constitute a final settlement of all matters relating to the change in the Subcontract Work which is the subject of the Change Order, including but not limited to all direct and indirect costs associated with such change and any and all adjustments to the Subcontract Sum and time. If the Subcontractor fails to submit Subcontractor's Change Proposal in the time and manner prescribed by this Paragraph, EDC shall, in its sole discretion, determine the amount of the adjustment to the Subcontract Sum in accordance with Paragraph 6.6 hereinbelow, if any.  Failure by the Subcontractor to comply with the requirements of Sections 6.1-6.5 shall constitute a waiver of all claims for additional compensation or time or objections it otherwise may have had to the terms of any directive issued by EDC for the subject work.

**6.4**     If EDC disagrees with the Subcontractor's Change Proposal submitted in accordance with Paragraph 6.3, EDC shall notify the Subcontractor in writing of its disagreement and, in its sole discretion, determine the amount of the adjustment to the Subcontract Sum in accordance with Paragraph 6.6 hereinbelow, if any, which shall be reflected in a written directive issued by EDC to the Subcontractor.

**6.5**     If the Subcontractor does not agree with the terms of any directive issued by EDC, it shall file a Claim in accordance with Section 9 of the Subcontract.

**6.6**     Absent written agreement by the parties to the contrary, adjustments to the Subcontract Sum for changes in the Subcontract Work shall be determined on the basis of reasonable expenditures, credits and savings in performing the Subcontract Work and attributable to the change,

**NO MODIFICATIONS, STRIKE-THROUGHS, OR ADDITIONS MAY BE MADE TO THIS AGREEMENT.**

# EXHIBIT 5

including, if applicable, a reasonable allowance for overhead and profit (including all field overhead, home office overhead and any other indirect costs associated with any change) as reasonably determined by EDC. Subcontractor shall keep and present an itemized accounting of costs claimed, along with supporting data as requested by EDC to permit proper and full evaluation by EDC and/or the Owner as to the accuracy and reasonableness of the costs claimed by Subcontractor. If a change lessens Subcontractor's burden, an appropriate deductive change order will be issued for an equitable downward adjustment of Subcontractor's overhead and profit. Subcontractor shall supply EDC with all documentation necessary to substantiate the amount of the addition to or deduction from the price or time relating to the change in the Subcontract Work.

6.7     Subcontractor shall not permit Owner or any agent of Owner to enter upon the job site, interfere in any way with the construction, nor accept any order of work from the Owner, other than as reflected in the Contract Documents or Change Orders issued in accordance with the Contract Documents.

6.8     Should the parties hereto be unable to agree as to the value of the work to be changed, added or deleted, the Subcontractor shall proceed with the Subcontract Work promptly under the written directive of EDC and in accordance with the Contract Documents. If the Subcontractor properly preserves its claim in accordance with this Section 6 and Section 9 of this Subcontract as to the scope, price, time and other conditions set forth in the Change Order, the determination of the value of the Subcontract Work shall be resolved in accordance with Section 9 of this Subcontract.

6.9     In the case of deleted Subcontract Work, EDC shall have the right to withhold from payments due or to become due to the Subcontractor an amount which, in EDC's sole discretion, is equal to the value of such work until such time as the value thereof is resolved in accordance with Section 9 of this Subcontract.

6.10    All changes, additions or omissions in the Subcontract Work ordered in writing by EDC shall be deemed to be a part of the Subcontract Work hereunder and shall be performed and furnished in strict accordance with all of the terms and provisions of this Subcontract and the other Contract Documents. Subcontractor accepts the responsibility to keep its surety informed of all such modifications to its Subcontract. The obligations of Subcontractor and Subcontractor's Surety shall not be reduced, waived or adversely affected by the issuance of such change orders, additions or deductions even if Subcontractor fails to inform surety of same and EDC shall not be required to obtain consent of the surety to such modifications.

6.11    All add/alternates agreed upon are included in Exhibit A to this Subcontract Agreement.

6.12    All allowances agreed upon are included in Exhibit A to this Subcontract Agreement.

## 7.     **Inspection & Approvals**

7.1     Subcontractor shall be responsible for inspecting any Work of another subcontractor that may affect its own Subcontract Work and shall report the results of such inspections in writing to EDC. The Subcontractor's failure to observe and report such Defective Work to EDC shall be deemed an acceptance by Subcontractor of such Work as correct and fit to accommodate or be incorporated into the Subcontract Work. Subcontractor shall be liable for the total cost of correction of faulty workmanship.

7.2     EDC shall have the right to inspect the Subcontract Work at any time during the progress of the Subcontract Work.

7.3     Subcontractor shall provide at its own place of business, at the places of business of its subcontractors and suppliers, and at the Project site, sufficient, safe and proper facilities for the inspection of the Subcontract Work by EDC or any of EDC's authorized representatives. Subcontractor shall notify EDC when portions of the Subcontract Work are ready for inspection.

7.4     Subcontractor shall, within forty-eight (48) hours after receiving written notice from EDC, proceed to take down and remove from the Project site all portions of Subcontract Work which EDC shall reject as unsound, improper or in any way failing to meet the requirements of the Subcontract ("Defective Work"). Subcontractor, at its own expense, shall repair or replace (as directed by EDC) all Defective Work, as well as any other Work damaged by such removal or replacement.

7.5     In addition to any shop drawings, samples and other required submittals, Subcontractor shall prepare at its own expense and furnish promptly, whenever requested by EDC, prints of shop drawings (not to exceed 7 unapproved prints and 3 approved prints), manufacturer's data, templates, schedules, reports or any other data that may be necessary, in the opinion of EDC, for review and approval by EDC and for distribution among other subcontractors and to EDC for the proper prosecution of the entire Project. Subcontractor shall lay out the Subcontract Work and be responsible for the accuracy of same. Subcontractor shall exercise the utmost diligence in obtaining all drawings, details and information necessary to perform the Subcontract Work and if at any time drawings or information necessary to perform the Subcontract Work have not been furnished, Subcontractor shall promptly inform EDC in writing as to what drawings or information may be required. Subcontractor shall, before proceeding with any affected part of the Subcontract Work, call to EDC's attention in writing any errors or inconsistencies Subcontractor may discover in the Contract Documents. The Subcontractor's submission of a shop drawing to EDC shall constitute the Subcontractor's representation, upon which EDC may rely, that the Subcontractor has reviewed the submission for accuracy and compliance with all Contract Documents and that wherever engineering is required to be performed, has been performed by a qualified and licensed engineer. Furthermore, the review of the Shop Drawing by EDC shall not constitute an undertaking by EDC to identify deficiencies in the submission, which undertaking is within the sole responsibility of the Subcontractor.

7.6     Neither the review, acceptance nor approval by EDC of any submittals by Subcontractor shall relieve Subcontractor of liability for any deviations from any requirements of the Contract Documents unless specifically called to EDC's attention, in writing, and thereafter expressly acknowledged and accepted by EDC in writing.

7.7     Any damage prior to final acceptance and payment for the Subcontract Work shall immediately be corrected and rectified by Subcontractor at its sole expense, unless Subcontractor can prove to EDC that damage was caused by others; however, this shall not be deemed a waiver by Subcontractor of any right it may have to the proceeds of any applicable Builder's Risk or other property insurance. Inspection or supervision by EDC shall not relieve Subcontractor of its obligations herein. Subcontractor shall perform, within forty-eight (48) hours upon notification, any and all punch list work submitted to it by EDC.

---

**NO MODIFICATIONS, STRIKE-THROUGHS, OR ADDITIONS MAY BE MADE TO THIS AGREEMENT.**

# EXHIBIT 5

**8.**     <u>Termination and Termination for Convenience</u>

**8.1**     Should Subcontractor fail, in the reasonable opinion of EDC, at any time to supply a sufficient number of properly skilled personnel or sufficient materials and equipment of the proper quality, or fail in any respect to prosecute the Subcontract Work with promptness and diligence, or fail to correct Defective Work promptly or fail in the performance of any of the requirements contained in the Contract Documents, EDC may, at its option, provide such labor, materials and equipment and deduct the cost thereof, together with all loss or damage occasioned thereby, from any money then due or thereafter to become due Subcontractor either under the Subcontract or any other agreement between EDC and Subcontractor. EDC shall provide forty-eight (48) hour prior written notice of any such failure to Subcontractor, except in an emergency.

**8.2**     Should the Subcontractor at any time, whether before or after final payment, refuse or neglect to supply sufficiently skilled personnel or materials or equipment of the proper quality and quantity, or fail in any respect to prosecute the Subcontract Work with promptness and diligence in accordance with the Project Schedule (as it may be changed by EDC from time to time), or cause by any act or omission the stoppage, hindrance, delay or interference with or damage to the Work of EDC, the Owner or other subcontractors, or fail in the performance of any of the terms and provisions of the Subcontract, or is unable to meet its debts as they mature, or should there be filed by or against the Subcontractor a petition in bankruptcy or for an arrangement or reorganization, or should the Subcontract become insolvent or be adjudicated a bankrupt or go into liquidation or dissolution, either voluntarily or involuntarily, or under a court order, or make a general assignment for the benefit of creditors, or otherwise acknowledge such insolvency, then in any of such events, each of which shall constitute a default hereunder on the Subcontractor's part, EDC shall have the right, in addition to any other rights and remedies provided by the Subcontract or by law, after two (2) days written notice to the Subcontractor mailed or delivered to the last known address of the latter, to terminate Subcontractor's right to continue to perform all or a portion of the Subcontract Work. Thereafter, EDC may take possession of the site and Subcontract Work, including all materials, tools, appliances and equipment of Subcontractor at the Project site, and through itself or others provide labor, equipment and materials to execute the Subcontract Work on such terms and conditions as EDC deems reasonably necessary, and EDC shall deduct the cost thereof, including all charges, expenses, losses, costs, damages, overhead, general conditions costs, disbursements incurred in connection with re-procurement, attorney's fees, expert fees and consultant's fees incurred as a result of Subcontractor's failure to perform, plus a mark-up of eight percent (8%), from any money then due or thereafter to become due Subcontractor either under the Subcontract or any other agreement between EDC and Subcontractor. Subcontractor shall only be entitled to one cure period on the Project. If EDC provides a notice of default of this Subcontract, and Subcontractor cures within the prescribed time period, but subsequently defaults again by committing one of the events of default described above, EDC shall have the right to declare Subcontractor in default and Subcontractor shall not be entitled to a second notice and opportunity to cure pursuant to this Paragraph. It is the intent of the parties that Subcontractor shall only be entitled to one notice and opportunity to cure a default on the Project.

**8.3**     If EDC so terminates the employment of Subcontractor, Subcontractor shall not be entitled to any further payments under the Subcontract until the Subcontract Work has been completed and accepted by EDC. In the event the remaining unpaid balance of the Subcontract Sum is less than EDC's cost of completion (including all damages, attorneys' fees, expert fees and consultant's fees incurred by EDC), Subcontractor agrees to pay the difference to EDC within seven (7) days after EDC demands payment for same from Subcontractor.

**8.4**     Additionally, EDC shall have the right to terminate the Subcontract, by written notice, without Subcontractor being at fault, for any cause or for EDC's convenience, and require Subcontractor to immediately stop performance of the Subcontract Work. In such event, EDC shall pay Subcontractor for that portion of the Subcontract Work actually performed in an amount proportionate to the Subcontract Sum. EDC shall not be liable to Subcontractor for any other costs or damages, nor for prospective profits on portions of the Subcontract Work not performed. Any default termination of Subcontractor subsequently determined to have been erroneous or otherwise not available to EDC, shall be deemed to be a termination for convenience and Subcontractor shall be limited to the damages provided by this Paragraph. Subcontractor shall include a termination for convenience clause similar to this one in all of its subcontracts and purchase orders.

**9.**     <u>Claims</u>

**9.1**     Any claim Subcontractor may have against EDC arising out of or relating to this Subcontract or the Contract Documents must be submitted by Subcontractor to EDC in writing within five (5) business days of the first occurrence of the event giving rise to such claim. Any failure by Subcontractor to submit said written claim within that five (5) business day period shall be deemed an absolute waiver of such claim by Subcontractor. Subcontractor's written claim must set forth, in reasonable detail, the facts concerning the claim, the contractual basis for the claim and an estimate of the additional time and/or compensation Subcontractor is seeking under the claim. Subcontractor acknowledges that provision of such notice is an essential condition precedent to Subcontractor's rights in connection with any such claimed costs, delays, obstructive hindrances or interferences because said notice permits EDC to fully identify and expeditiously address and avoid such cause or causes.

**9.2**     Within a reasonable period of time after EDC receives a proper written claim from Subcontractor, EDC shall advise Subcontractor in writing as to EDC's initial determination concerning the claim. If Subcontractor disagrees with or otherwise wishes to further contest such initial determination, Subcontractor shall notify EDC in writing, setting forth in detail the basis for its objections, within five (5) business days of its receipt of EDC's written initial determination. If Subcontractor fails to provide its written objections within said five (5) business days, Subcontractor will be deemed to have accepted EDC's initial determination and waived any objections it otherwise may have had to such initial determination. In the event EDC submits the Subcontractor's claim to the Owner, EDC will advise the Subcontractor in writing as to the Owner's determination concerning the claim within ten (10) days of EDC's receipt of the Owner's determination concerning the claim.

**9.3**     To the extent Subcontractor has preserved its claim rights after EDC's initial written determination, the parties will attempt to negotiate in good faith to resolve the dispute. Said negotiations should be conducted within fourteen (14) days after EDC receives Subcontractor's written objections to its initial determination. If the parties fail to resolve the dispute within the above noted fourteen (14) day period, Subcontractor may seek to appeal EDC's initial determination by whatever means are available to it at law.

**9.4**     In the event the Subcontractor is damaged by any act, omission or delay of the Owner, Architect or Engineer, or any changes, additions or deletions by Owner and provided that Subcontractor has preserved its claim rights under this Subcontract, Subcontractor agrees to be bound by

---

<u>NO MODIFICATIONS, STRIKE-THROUGHS, OR ADDITIONS MAY BE MADE TO THIS AGREEMENT.</u>

# EXHIBIT 5

the dispute remedies contained in the Contract Documents. In the event the Subcontractor desires to pursue a claim denied by the Owner or Architect, the Subcontract agrees to prosecute such claims in accordance with the terms of this Subcontract and applicable requirements of the Contract Documents, and to bear all costs and expenses, including legal costs and expenses incurred by EDC, in the preparation and prosecution of such claim. Subcontractor agrees to be exclusively bound by the remedies of this Section and shall maintain no action against EDC for these claims. Subcontractor shall not be entitled to receive from EDC a greater amount or time extension than EDC recovers from the Owner attributable to Subcontractor's claim, and Subcontractor agrees that it will accept such amounts as are received by EDC as full discharge and satisfaction of all such claims.

**9.5**      In the event EDC prevails, in whole or in part, in any dispute between EDC and the Subcontractor relating to the Subcontract or the Project, EDC shall be entitled to receive from the Subcontractor reimbursement for its reasonable attorneys', paralegals' and experts' fees, costs and expenses.

**9.6**      Notwithstanding the provisions of Paragraph 9.3 above, if any claim or lien is made or filed with or against EDC, the Owner, the Project or the Project funds by the Subcontractor or any person claiming that the Subcontractor or any subcontractor or other person under subcontract to Subcontractor, or any person or entity employer or engaged by or through the Subcontractor at any tier, has failed to make payment for any labor, services, materials, equipment, taxes or other items or obligations furnished or incurred for or in connection with the Subcontractor Work, or if any such claim or lien is filed or presented, or if EDC in good faith believes that such a claim or lien may be filed or brought, or if at any time there shall be evidence of such nonpayment or of any claim or lien for which, if established, EDC or the Owner might become liable and which is chargeable to the Subcontractor, or if the Subcontractor or any subcontractor or any other person under subcontract to Subcontractor, or any person or entity employed or engaged by or through Subcontractor at any tier, causes damage to Work or to the Subcontractor Work, or if the Subcontractor fails to perform or is otherwise in default under any of the terms or provisions of this Subcontract, EDC shall have the right (A) to retain from any payment then due or thereafter to become due an amount which it deems sufficient to (1) satisfy, discharge and/or defend against any such claim or lien or any action which may be brought or judgment which may be recovered thereon, (2) make good any such nonpayment, damage, failure or default, and (3) compensate EDC and the Owner for and indemnify and hold them harmless against any and all losses, liability, damages, costs and expenses, including legal fees, expert fees and disbursements, which may be sustained or incurred by either or both of them in connection therewith; and (B) to demand that Subcontractor provide, within five (five) days from the date of the filing thereof, proof to the satisfaction of EDC and Owner that such non-payment, claim or lien has been fully satisfied, dismissed and discharged. Upon the failure of Subcontractor to fulfill the requirements of a demand issued by EDC pursuant to subsection (B) above, EDC may, in such manner as EDC may in its sole discretion determine, secure the satisfaction, dismissal and discharge of such claim, by payment or otherwise, and Subcontractor shall within five (5) days of demand therefor, be liable for and pay to EDC all amounts (including legal fees, costs and disbursements) incurred or suffered by EDC or Owner arising out of or related thereto. EDC shall, in addition, have the right to apply and charge against the Subcontractor so much of the amount retained as may be required for the foregoing purposes. Subcontractor further agrees to indemnify, defend and hold harmless EDC and Owner, upon demand, for any and all such claims, liens, and the costs, expenses (including legal fees, expert fees and disbursements), damages and liabilities arising out of or related thereto. Subcontractor acknowledges (1) that discharge of such liens or claims by bond imposes liability upon a surety and EDC, and (2) that EDC is not required to discharge such lien or claims by bond when exercising its rights hereunder.

**9.7**      The Subcontractor agrees that EDC shall have the exclusive right to join the Subcontractor as a party in any dispute resolution procedure (including without limitation ADR procedures, binding arbitration or other judicial or non-judicial proceeding) between the Owner and EDC, together with such other subcontractors or parties as may be appropriate, where in the judgment of EDC the issues in dispute are related to the Subcontract Work or performance of the Subcontractor. Furthermore, the Subcontractor expressly agrees to waive its right to trial by jury in case EDC elects to resolve the dispute in litigation.

**9.8**      Pending final resolution of a Claim, the Subcontractor shall proceed diligently with performance of the Subcontract Work.

## 10.      **Indemnity**

**10.1**      To the fullest extent permitted by law, Subcontractor ("Indemnitor") shall indemnify, defend, protect and hold harmless EDC and the Owner, and the officers, directors, agents or employees of any of them (collectively "Indemnitee or Indemnitees") from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, experts' fees and consultants' fees, arising out of or resulting from performance of the Subcontract Work, whether such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property including loss of use or economic loss resulting therefrom, regardless of whether or not such claim, damage, loss or expense is caused in whole or in part by a party indemnified hereunder. However, the Indemnitor shall have no obligation to indemnify, defend, protect and hold harmless the Indemnitees for any losses or damages arising out of bodily injury to a person or damage to property caused by or resulting from the sole negligence of the Indemnitee[s].

**10.2**      The indemnity obligations under this Section shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Section. EDC and Subcontractor agree that the indemnification given herein shall be limited to the amount of the loss suffered by the Indemnitees or Five Million Dollars ($5,000,000.00) per occurrence, whichever is less, which amount is stipulated by the parties to bear a reasonable commercial relationship to the Subcontract. This Indemnification shall be deemed part of the Subcontract and to fully comply with any applicable provision of the *D.C. Code*, in all respects.

**10.3**      The duty to defend under this Section is independent and separate from the duty to indemnify, and the duty to defend exists regardless of any ultimate liability of Subcontractor or any Indemnified Party. The duty to defend arises immediately upon presentation of a Claim by any party and written notice of such Claim being provided to Subcontractor. Subcontractor's obligation to indemnify and defend under this Section will survive the expiration or earlier termination of the Subcontract until it is determined by final judgment that an action against the Indemnified Party or Indemnified Parties for the matter indemnified hereunder is fully and finally barred by the applicable statute of limitations.

**NO MODIFICATIONS, STRIKE-THROUGHS, OR ADDITIONS MAY BE MADE TO THIS AGREEMENT.**

10.4   If any word, clause or provision of this Section is determined not to be in compliance with *D.C. Code*, including any amendments thereto, it shall be stricken and that the remaining words, clauses and provisions shall remain in full force and effect. It is the intent of the parties that this Indemnification complies fully with *D.C. Code*, including any amendments thereto, in all respects.

10.5   Furthermore, this Indemnification is in addition to and not in lieu of common law indemnification to which the Indemnitee is entitled.

## 11.   Damage to Work

11.1   All loss or damage to the Subcontract Work resulting from any cause whatsoever shall be borne and sustained by Subcontractor and shall be solely at its risk until final acceptance by EDC, unless Subcontractor can prove to EDC that damage was caused by others. Subcontractor shall at all times and at its expense protect all of its labor, materials, supplies, tools and equipment against any damage, injury, destruction, theft or loss, and likewise for those of its mechanics, laborers, subcontractors and suppliers, for all of which Subcontractor shall be solely responsible, and in no event shall EDC be liable or responsible therefor. Subcontractor shall at its own expense promptly repair or replace damage to the Subcontract Work or the Work of others, or to any part of the Project, resulting from its activities. Nothing in this Paragraph shall be deemed to preclude or waive any rights any parties may have to any applicable Builder's Risk or other property insurance.

## 12.   Compliance with Law and Safety

12.1   All work, labor, services and materials to be furnished by Subcontractor pursuant to the Contract Documents must strictly comply with all applicable federal, state and local laws, rules, regulations, statutes, building codes, ordinances and directives ("Legal Requirements") now in force or hereafter in effect. All work, labor, services or materials necessary to comply with said Legal Requirements will be furnished by Subcontractor as part of the Subcontract without any additional compensation, unless such additional compensation is permitted by the terms of the Subcontract. Subcontractor agrees to indemnify, defend and save EDC harmless from and against any and all claims, losses or expenses caused directly or indirectly by its failure to fully comply with all Legal Requirements.

12.2   Subcontractor agrees that the prevention of accidents to personnel engaged in the Subcontract Work under Subcontractor is solely its responsibility. Subcontractor shall comply with all applicable safety laws and with any safety standards established during the progress of the Subcontract Work by EDC, and if given, attend an EDC Safety Orientation given by EDC on the Project, including but not limited to the EDC Safety Policy. If requested by EDC, Subcontractor shall submit a safety plan for review by EDC. The review of any safety plan by EDC shall not be deemed to release Subcontractor or in any way diminish its liability, by way of indemnity or otherwise, as assumed by it under the Subcontract. Subcontractor must furnish EDC, prior to commencement of Subcontract Work, all applicable Material Safety Data Sheets for products and materials used in completing the Subcontract Work.

12.3   When so ordered, Subcontractor shall stop any part of the Subcontract Work which EDC deems unsafe until corrective measures satisfactory to EDC have been taken. Should Subcontractor neglect to adopt such corrective measures, EDC may do so and deduct the cost from any payments due Subcontractor under the Subcontract or any other agreement between EDC and Subcontractor. Subcontractor shall notify the EDC Project Superintendent immediately in the event of an OSHA inspection.

12.4   Subcontractor agrees to comply with the requirements of the Williams-Steiger Occupational Safety and Health Act of 1970 and amendments thereof or similar laws or regulations and hereby releases and agrees to hold harmless, defend and indemnify EDC of, from and against any liability, losses, damages, costs and expenses of whatsoever nature due to the negligence of Subcontractor's employees, independent contractors or other agents of Subcontractor. Subcontractor also agrees to notify the EDC Project Superintendent immediately in the event of an OSHA inspection. Subcontractor shall exercise full responsibility for compliance hereunder by itself, its agents, employees, material men and subcontractors with respect the Subcontract Work. Subcontractor shall furnish to EDC in writing, the name of its OSHA Competent Person utilizing the form attached hereto as Exhibit H.

12.5   Subcontractor shall be responsible for and reimburse EDC for any fines, penalties or fees imposed by any government agency on EDC for any violation whatsoever, on the part of Subcontractor, Subcontractor's agents or Subcontractor's sub-subcontractors.

12.6   Subcontractor shall immediately report to EDC any accident or occurrence on the Project site resulting in bodily injury, death, illness or damage to property, material or equipment and provide EDC copies of all related accident reports. As soon as possible after the occurrence of the accident, Subcontractor shall deliver to EDC a written report conforming to applicable laws detailing the circumstances, events and witnesses of any accident and a copy of written notice sent to Subcontractor's insurance company. Subcontractor shall immediately comply with the request of EDC or its insurance company or agents for assistance and information concerning the accident and shall fully cooperate in any investigation of the accident.

12.7   Subcontractor warrants and represents to EDC that it holds all competency licenses required for the Subcontract Work by applicable local, state and federal law. Subcontractor shall comply with all laws, codes, ordinances, rules, statutes, building codes, regulations, orders, and directives of any federal, state, or local governmental body, board, authority, department, agency, or court, expressly including, without limitation, the Occupational Safety and Health Administration, and the Equal Employment Opportunity Commission (the "Authorities"), pertaining to (i) the Subcontract Work, including providing any notices required by any Legal Requirements, and securing and paying for all permits, licenses and inspections necessary for the performance of the Subcontract Work, and (ii) the employees and other personnel employed or engaged by Subcontractor. Without limiting the scope of this Paragraph, Subcontractor shall comply with all applicable Legal Requirements pertaining to the employment of labor, hours of labor, occupational safety and health requirements, working conditions, worker's compensation, payment of wages, and payment of taxes, including unemployment, social security and other payroll taxes, including applicable contributions from such persons. If Subcontractor violates any Legal Requirements, Subcontractor shall assume full responsibility therefor, shall bear all costs and damages attributable thereto, and shall indemnify and hold harmless EDC for all costs, including attorney fees, damages, fines and penalties associated therewith.

12.8   No smoking is permitted inside the existing building[s] or the building[s] to be constructed on the Project during any stage of construction.

12.9   Illegal drugs and alcohol are not permitted on the Project or on any EDC work site, ever.

---

**NO MODIFICATIONS, STRIKE-THROUGHS, OR ADDITIONS MAY BE MADE TO THIS AGREEMENT.**

# EXHIBIT 5

## 13.   Patents

**13.1**   Subcontractor agrees to pay all royalties and license fees and to indemnify, defend and hold harmless EDC from any and all loss, damage or expense to which they may be subjected to from claims or litigation for the use or misuse of any patented or unpatented invention or process, used or furnished by Subcontractor.

## 14.   Assignments

**14.1**   Neither the Subcontract nor any interest therein may be transferred, voluntarily or involuntarily, without the prior written consent of EDC. EDC may, without Subcontractor's consent, assign this Subcontract, in whole or in part, with prior or subsequent notice to Subcontractor and its Surety, and Subcontractor agrees to execute all consents reasonably required to facilitate such assignment(s). In the event of an assignment to the Owner or its Lender[s], the Subcontractor agrees to perform its Work for the assignee and further agrees that the assignee will be responsible for only those obligations accruing after the assignee's acceptance of the assignment.

## 15.   Guarantee

**15.1**   Subcontractor shall perform all Subcontract Work in a good and workmanlike manner, and warrants that all labor and services performed, and all materials furnished by Subcontractor will meet the greater of the Federal Housing Administration ("FHA") minimum property standards, Veterans Administration ("VA") requirements, applicable federal, state and local building code requirements, Scope of Work or Standard Specifications or other requirements set forth in the Contract Documents.

**15.2**   Subcontractor warrants to EDC and Owner that all materials and equipment furnished shall be new unless otherwise specified, and that all Subcontract Work shall be of good quality, free from faults and defects and in conformance with all requirements of the Subcontract and other Contract Documents. All warranties provided by the Subcontractor, including express and implied warranties in the Contract Documents and the Subcontract and all warranties provided by law, shall run to and be for the benefit of the Owner, and the Owner shall have   a direct right of action against the Subcontractor for any breach of said warranties, in addition to any other remedies which might be available under this Contract. All guarantees or warranties of materials furnished by Subcontractor, including any manufacturer or supplier, shall be deemed to run for the benefit of the Owner. Upon Substantial Completion of the Work, the Subcontractor shall and does hereby assign to the Owner the benefits of all warranties and guarantees provided hereunder (including assignment of the subcontracts itself if necessary to perfect such assignment), but such assignment shall not relieve the Subcontractor of its warranty obligations to EDC and the Owner under the Subcontract, the Contract Documents or at law. Notwithstanding the foregoing assignment, prior to final acceptance of the Project by the Owner, the Subcontractor shall deliver to EDC three (3) bound volumes of all guarantees and warranties on material furnished by all manufacturers and suppliers to the Subcontractor, with duly executed instruments properly assigning the guarantees and warranties to the Owner. The Subcontractor shall obtain from its manufacturers and suppliers guarantees and warranties according to the Subcontract terms and upon the optimum terms and longest periods reasonably obtainable. The documentation must also clearly describe proper operational and maintenance activities required to sustain said warranties. The guarantees and warranties herein shall not be construed to modify or limit in any way any rights or actions which EDC or the Owner may have against the Subcontractor by law or statute or in equity.

**15.3**   Subcontractor agrees to make all repairs and correct such defects under the warranties required by the Subcontract, including punch list work, within eight (8) hours of notice of such defect, including punch list work, in an emergency and within forty-eight (48) hours of notice of such defect, including punch list work, on a non-emergency basis. EDC shall determine whether an emergency exists, in its sole and absolute discretion. In the event Subcontractor fails to timely perform in accordance with this Paragraph, EDC may employ an independent source to complete Subcontractor's performance and deduct such cost from any payments due the Subcontractor under the Subcontract or any other agreement between EDC and Subcontractor. Subcontractor agrees to indemnify EDC and also agrees that such employment by EDC shall not affect the Subcontractor's warranty.

**15.4**   Subcontractor hereby assumes toward EDC all obligations and responsibilities that EDC assumes toward the Owner relative to the Subcontractor's Work, and Subcontractor agrees to be bound to EDC by all the provisions in EDC's contracts and agreements with the Owner that afford remedies and redress to the Owner.

**15.5**   Subcontractor shall schedule all Subcontract Work to the requirements of EDC. Subcontractor shall staff the job with sufficient personnel to complete the Subcontract Work on or before schedule.

**15.6**   All labor and materials furnished by the Subcontractor shall be in accordance with the Drawings and Specifications referenced in the Exhibits to Subcontract. The Subcontractor shall keep a copy of such Drawings and Specifications (an index of which is attached as Exhibit E) on the Project site while the Subcontract Work is in progress. Subcontractor acknowledges that Subcontractor is thoroughly familiar with the Drawings and Specifications as such Drawings and Specifications materially affect the Subcontract Work contracted for herein. The Subcontractor further acknowledges that the Drawings and Specifications are sufficient to enable the Subcontractor to complete its Subcontract Work on or before schedule, for the Subcontract Sum set forth in Section 3 of this Subcontract above, and that such Drawings and Specifications include all Subcontract Work, whether or not shown or described, which reasonably may be inferred to be required for the completion of the Subcontract Work in full compliance with all applicable codes, laws, ordinances and regulations. Notwithstanding the dimensions on the Plans, Specifications and other Contract Documents, it shall be the obligation and responsibility of the Subcontractor to take such measurements as will insure the proper matching and fitting of the Subcontract Work covered by this Subcontract with contiguous Work.

**15.7**   The Subcontractor shall be provided with a copy of the Plans solely and exclusively for execution of the Subcontract Work and shall not use the Plans on other projects or for additions to this Project outside the scope of the Work without the specific written consent of the Owner and Architect. The Subcontractors and its Sub-subcontractors and suppliers are granted a limited license to use and reproduce applicable portions of the Drawings, Specifications and other documents prepared by the Architect appropriate to and for use solely in the execution of the Subcontract Work under the Contract Documents. All copies made under this license shall bear the statutory copyright notice, if any, shown on the Drawings, Specifications and other documents prepared by the Architect.

---

**NO MODIFICATIONS, STRIKE-THROUGHS, OR ADDITIONS MAY BE MADE TO THIS AGREEMENT.**

**15.8**  The Subcontractor further acknowledges and represents to EDC that it has visited and examined the Project site upon which the Subcontract Work shall be performed, that it has examined all conditions of every kind and nature that may affect the Subcontract Work, and that it is fully familiar with all such conditions. In connection therewith, the Subcontractor represents and warrants to EDC that it has, by careful examination, satisfied itself as to: (a) the nature, location and character of the Project site, including, without limitation, surface and subsurface conditions that are visually observable, all structures and obstructions pertaining thereto, both natural and man-made, and all visually observable surface and subsurface conditions of the areas surrounding the site; (b) the nature and character of the area in which the Project site is located, including, without limitation, site access, available labor supply and cost, available equipment supply and cost; and (c) the quality and quantity of all materials, supplies, tools, equipment, labor and services of any kind necessary to complete the Subcontract Work on or before schedule and for the Subcontract Sum set forth in Section 3 above. The Subcontractor acknowledges that the property on which the Project and Work are located may be occupied and in use during the execution of the Work. Subcontractor shall perform and coordinate the Subcontract Work in such a manner that the portions of the property occupied and in use (including through previously granted easements) will not be encumbered or the use interfered with or interrupted.

**15.9**  Subcontractor agrees to promptly cure, without cost to EDC, any and all Defective Work which may appear within the guarantee, Condo Warranty Periods or Warranty Periods established in the Contract Documents, and if no such period is stipulated in the Contract Documents, then such guarantee shall be for a period of two (2) years from the date of Substantial Completion of the Project, as certified by the Owner and/or Architect. Subcontractor further agrees to execute any special guarantees as provided by the Contract Documents or required by law. Subcontractor shall require similar guarantees from all its subcontractors and suppliers.

**15.10**  Subcontractor shall pay for the repair and replacement of all Defective Work, as well as all costs for repairing or replacing other property damaged or disturbed by making such replacements or repairs of the Defective Work. This guarantee is in addition to all other guarantees, warranties and rights contained in the Contract Documents or at law.

**15.11**  Subcontractor's Work shall be warranted and guaranteed for the time period set forth in the Contract Documents, which shall be a minimum of one (1) year (the "Warranty Periods"). The Warranty Periods begin to run on the date the Project is Substantially Complete, as certified by the Owner and the Architect, unless otherwise stated in the Contract Documents. Subcontractor agrees to make all repairs and correct all defects under the warranty within eight (8) hours of notice of such defect in an emergency and within forty-eight (48) hours of notice of such defect on a non-emergency basis. EDC shall, within its sole discretion, determine whether an emergency exists. In the event Subcontractor fails to timely perform in accordance with this Paragraph, EDC may employ an independent contractor to complete Subcontractor's performance and deduct such cost from any payments due the Subcontractor under the Subcontract or any other agreement between EDC and Subcontractor. Subcontractor agrees to indemnify EDC for such costs and also agrees that such employment of another contractor by EDC shall not affect the Subcontractor's warranty.

**15.12**  Subcontractor shall furnish to EDC all warranties, guarantees and operations and maintenance documents from the manufacturers of the appliances and equipment included in the Subcontract Work, and shall further furnish all certificates required by EDC or by any lending institution or governmental agency having jurisdiction over the Subcontract Work.

**15.13**  EDC shall have the right, at its sole option, to withhold from all payments to the Subcontractor five percent (5%) of the Subcontract Sum to ensure the faithful and timely performance of the warranty Work identified in this Section 15 (the "Warranty Retainage"). EDC shall have the right to withhold this Warranty Retainage only if the Subcontract Work is in the following trades: HVAC, sprinkler, roofing, windows, masonry and framing. If the Subcontractor posts a bond a letter of credit in the amount of five percent (5%) of the Subcontract Work, the terms of which shall meet EDC's reasonable satisfaction, EDC shall not withhold or shall release previously withheld Warranty Retainage. Upon the expiration of the Condo Warranty Periods and/or the Warranty Periods set forth in this Section 15, EDC shall release the Warranty Retainage or, if posted, the letter of credit.

**15.14**  Should Subcontractor fail or refuse to make the repairs or correct the defects within the time periods prescribed by this Paragraph, EDC shall have the right to perform or cause to be performed by another contractor, the repairs or correct the defects, and in such event, Subcontractor shall be responsible for the costs of such repairs or correction of the defects.

## 16.  <u>Taxes, Charges</u>

**16.1**  Subcontractor shall be responsible for all payments of taxes, contributions and/or premiums payable on its employees or on its operations under workers' compensation laws, unemployment compensation laws, the Federal Social Security Act, health and welfare benefit plans, gross business taxes, sales and use taxes and any other taxes, contributions and/or premiums which are payable by the employees, and Subcontractor shall indemnify, defend and save EDC harmless from all liability, loss and expense resulting from Subcontractor's failure to comply with these requirements. Subcontractor shall comply with all rules and regulations at any time applicable hereto and shall, on demand, substantiate to EDC's reasonable satisfaction that all taxes and other charges are being properly paid.

## 17.  <u>Equal Opportunity</u>

**17.1**  Subcontractor shall not discriminate against any employee or applicant for employment because of race, religion, color, sex, age or national origin. Subcontractor shall comply with all equal opportunity or affirmative action requirements or plans.

## 18.  <u>Miscellaneous</u>

**18.1**  Any failure of EDC to enforce any of the terms and provisions of the Subcontract shall not constitute a waiver of such required performance by Subcontractor or of any other performances in the future required by Subcontractor hereunder.

**18.2**  The Subcontract comprises the entire agreement between the parties relating to the Subcontract Work covered hereby and no other agreement, representation or understanding concerning the same has been made and no oral statement, understandings or agreement shall affect the terms hereof.

**18.3**  To the best knowledge and belief of the parties, the Subcontract contains no provision that is contrary to federal or state law, ruling or regulation. However, if any provision of the Subcontract shall conflict with any such law, ruling or regulation, then such provision shall continue

---

**NO MODIFICATIONS, STRIKE-THROUGHS, OR ADDITIONS MAY BE MADE TO THIS AGREEMENT.**

# EXHIBIT 5

in effect only to the extent permissible. In the event any provision is thus inoperative, the remaining provisions shall, nevertheless, remain in full force and effect.

18.4     The Subcontract shall be governed by the laws of the jurisdiction in which the Project is located. Any action to enforce or interpret the Subcontract, in whole or in part, shall be brought only in the Superior Court for the District of Columbia or the United States District Court for the District of Columbia, if the jurisdictional limits are met.

18.5     THE SUBCONTRACTOR AND EDC SPECIFICALLY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY COURT WITH RESPECT TO ANY CONTRACTUAL, TORTIOUS OR STATUTORY CLAIM, COUNTERCLAIM OR CROSS-CLAIM AGAINST THE OTHER ARISING OUT OF OR CONNECTED IN ANY WAY TO THE PROJECT OR THIS SUBCONTRACT BECAUSE THE PARTIES HERETO, BOTH OF WHOM ARE REPRESENTED BY COUNSEL, BELIEVE THAT THE COMPLEX COMMERCIAL AND PROFESSIONAL ASPECTS OF THEIR DEALINGS WITH ONE ANOTHER MAKE A JURY DETERMINATION NEITHER DESIRABLE NOR APPROPRIATE.

18.6     The Subcontract shall be binding on and inure to the benefit of the heirs, successors and permitted assigns of the parties hereto.

18.7     All notices to be sent to Subcontractor or EDC shall be in writing. All notices to EDC shall be sent to the Project Manager assigned to the Project and Kevin Ash, President of EDC.

18.8     All sections and headings are used for convenience only and do not affect the construction or interpretation of the Subcontract.

18.9     Unless the context of the Subcontract otherwise clearly requires, references to the plural include the singular, the term "including" is not limiting and the terms "hereof," "herein," "hereunder" and similar terms in the Subcontract refer to the Subcontract as a whole and not to any particular provision of the Subcontract unless stated otherwise. Additionally, the parties hereto acknowledge that they have carefully reviewed the Subcontract and have had the opportunity to consult with legal counsel of their choosing with respect thereto, and that they understand its contents and agree that the Subcontract shall not be construed more strongly against any party hereto, regardless of who is responsible for its preparation.

18.10   The parties agree that the Subcontract can be executed in counterparts and facsimile signature pages shall have the same force and effect as original signature pages.

18.11   This Subcontract is solely for the benefit of the signatories hereto and represents the entire and integrated agreement between the parties hereto and supersedes all prior negotiations, representations or agreements, whether written or oral. No other agreements, representations, warranties or other matters, whether oral or written, shall bind the parties.

18.12   EDC has the right at any and all times, without any additional compensation under the Subcontract, to modify the Project's schedule, to suspend, delay, or accelerate, in whole or in part, the commencement of execution of Subcontractor's work or any portion thereof or to vary the sequence thereof, to reasonably decide the time, order and priority of the various portions of Subcontractor's Work, and all other matters relating to the scheduling and coordination of Subcontractor's Work with other Work on the Project.

18.13   Subcontractor agrees to indemnify the Indemnified Parties as defined in the Prime Contract to the same extent the EDC is required to indemnify the Indemnified Parties under the provisions of Paragraph 3.18 of the General Conditions to the Prime Contract.

18.14   Subcontractor shall furnish such financial information, project history, insurance and other information as shall be required by the Owner's Lenders.

18.15   In the event of any default by EDC under the Subcontract which would permit the Subcontractor to terminate such Subcontract, or in the event of the termination of the Contract Documents, the Owner shall have the right, but not the obligation, prior to termination of the Subcontract and after notice by the Subcontractor to the Owner of such default (or, in the case of termination of the Contract Documents, after notice by Owner to Subcontractor of the termination), to assume EDC's rights and obligations under the Subcontract arising after such notice. Owner shall have the right to review each subcontract to ensure compliance with this subsection.

18.16   The Subcontractor represents and warrants to EDC (in addition to any other representations and warranties contained in the Contract Documents), as a material inducement to EDC to enter into this Subcontract, which representation and warranty shall survive the execution and delivery of the Contract Documents, any termination of the Contract Documents, and the Final Completion of the Work that Subcontractor is financially solvent, able to pay all debts as they mature, and possessed of sufficient working capital to complete the Subcontract Work and perform all obligations hereunder.

18.17   In addition to the Contract Documents itemized in Section 1 of this Subcontract (but not attached hereto), the Subcontract includes the following exhibits:

| | |
|---|---|
| Exhibit A: | Subcontractor Scope of Work |
| Exhibits B-1, B-2 and B-3: | Subcontractor Partial Lien Waiver and Release Forms (Conditional and Unconditional) and Sub-tier Subcontractor/Supplier Partial Lien Waiver and Release Form |
| Exhibits C-1, C-2 and C-3: | Subcontractor Final Lien Waiver and Release Forms (Conditional and Unconditional) and Sub-tier Subcontractor/Supplier Final Lien Waiver and Release Form |
| Exhibit D: | Sample Certificates of Insurance |
| Exhibit E: | Index of Drawings and Specifications |
| Exhibit F: | Project Schedule |
| Exhibit G: | Verified List of Subcontractors and Suppliers |
| Exhibit H: | Subcontractor OSHA Competent Person(s) |
| Exhibit I: | Project Specific Addendum |
| Exhibit J: | EDC Safety Policy |

**NO MODIFICATIONS, STRIKE-THROUGHS, OR ADDITIONS MAY BE MADE TO THIS AGREEMENT.**

# EXHIBIT 5

Signed and dated the day and year first above written.

SUBCONTRACTOR:  SMITH & SONS LLC

By:_____

Print Name:  Michael A. Smith

Its:_____  President/CEO

ELLISDALE CONSTRUCTION, LLC

By:_____

Print Name:  Kowmi D. Ad

Its: President



NO MODIFICATIONS, STRIKE-THROUGHS, OR ADDITIONS MAY BE MADE TO THIS AGREEMENT.

**EXHIBIT 5**



# HELP Walter Reed Apartments – 14 South

Building 14, 6900 Georgia Avenue NW, Washington, D.C. 20307

## Exhibit A: Scope of Work

### Article I: General

1. This Subcontract Agreement between **"TBD"** (hereafter referred to as "Subcontractor") and Ellisdale Construction, LLC ("Contractor" or "EDC") is for all **"Site Demo, Excavation and Wet Utilities"** work associated with the renovation of Building 14 South at 6900 Georgia Avenue NW, Washington, D.C. 20307, also referred to as HELP Walter Reed Apartments.  This is a 45,419 SF existing apartment renovation of 77 apartment units.

2. The intent of this subcontract agreement/scope is that **"TBD"** furnishes and installs all **Site Demo, Excavation and Wet Utilities** work per the Contract Documents. The omission, whether intentional or inadvertent, of specific work by name or description on either the draw schedule or this Exhibit A shall not relieve Subcontractor from his obligation to complete the Work generally described herein and as required to satisfy the Contractor and/or appropriate governing agencies, and as indicated in the Contract Documents.

3. The **Contract Documents** include:
   a. The Renovation of Abrams Hall for USA Addendum D drawings dated November 1, 2017
   b. The Renovations of Abrams Hall for HELP USA project manual dated October 6, 2017
   c. HPE Limited Building Inspection for Water Damage – Walter Reed Army Medical Center (WRAMC), Bldg. 14 (S Section), Washington, DC dated April 15, 2017
   d. HPE Asbestos Survey Report Walter Reed Army Medical Center (WRAMC) Abrams Hall – Building 14 (M Section) 6900 Georgia Avenue, NW Washington, DC dated April 26, 2017
   e. One Source Lead-based Paint Inspection and Risk Assessment dated July 16, 2015
   f. Geotechnical Engineering Report – Building 14, Walter Reed Army Medical Facility 6900 Georgia Avenue, NW Washington, DC dated September 23, 2016.
   g. Building 14 South Project Schedule dated XXXX XX, 2018

4. All labor for this project is priced as Davis Bacon Wage Scale Construction Type Residential per General Decision Number: DC170003 dated 8/18/17 with Superseded General Decision DC20160003 and will be in compliance with the First Source Employment Agreement between the D.C. Department of Employment Services (DOES) and TPWR Developer, LLC.

5. Subcontractor shall comply with all CBE requirements and maintain certification for the full amount and duration of the subcontract.

6. Subcontractor will furnish all permits required for the complete installation and inspection of the abatement scope of work as required per the contract documents.

---

Verified by PDFfiller
07/30/2018

SUB INITIALS _____  /  EDC Initials _____

1

7/12/2018

**EXHIBIT 5**



# HELP Walter Reed Apartments – 14 South

Building 14, 6900 Georgia Avenue NW, Washington, D.C. 20307

## Article II. The Work

**General:**

1. All sediment and erosion control methods are to be installed before the start of any excavation and/or demolition as per District of Columbia Erosion and Sediment Control Manual dated September 2017.
2. Subcontractor is responsible for the maintenance and upkeep of all sediment and erosion control measures as required and immediately after any weather event. Subcontractor is responsible for all documentation required per DOEE.
3. Note proximity of adjacent structures and utility lines and maintain continued service during construction. Coordinate with respective utility companies and EDC should relocation of service be required.
4. Unless otherwise shown on the Drawings, existing pavement on Aspen St NW and Main Drive NW to remain. Provide pre-construction video of existing pavement. Existing pavement that is disturbed or damaged during construction shall be replaced per District of Columbia Department of Transportation Standards and Specifications at no additional cost to EDC.
5. Subcontractor to provide a pre and post TV video sewer on existing sewer around the site per DC Water Standards and Specifications.
6. Subcontractor is responsible for all required permits associated with this scope of work.
7. Subcontractor is required to coordinate all work with DC Water and DC Sewer as required.
8. Subcontractor is required to contact Miss Utility 48 hours before any digging.
9. Section 31 00 00 - Subcontractor is responsible for all utility locating. The Subcontractor is to use a vacuum, hydro-excavating or other soft dig methods to positively identify existing utility locations. Subcontractor will be responsible for any struck utilities during the Work.
10. Section 31 00 00 - Subcontractor is responsible for any geotechnical testing/engineering required for proper backfill and compaction of Satisfactory Soils.
11. Section 31 00 00 - If excavated materials intended for fill and backfill include unsatisfactory soil materials and rock, replace with Satisfactory Soil Materials. Subcontractor is responsible for the removal from site of any unsuitable soils.
12. Section 31 00 00 - All materials shall conform with DCDHT Standard Specifications for Highways and Structures and the Requirements of the Geotechnical Engineering Report.
13. Section 31 00 00 - Satisfactory Soils: As noted in the Standard Specifications, Section 800 or ASTM D 2487 soil classification groups GW, GP, GM, SW, SP, and SM or a combination of these group symbols; free of rock or gravel larger than 3 inches in any dimension, debris, waste, frozen materials, vegetation, and other deleterious matter as approved by the Geotechnical Engineer.
14. Section 31 00 00 - Protect structures, utilities, sidewalks, pavements, and other facilities from damage caused by settlement, lateral movement, undermining, washout, and other hazards created by earthwork operations.

Verified by PDFfiller
07/30/2018

SUB Initials _____ / EDC Initials _____

7/12/2018

**EXHIBIT 5**



# HELP Walter Reed Apartments – 14 South

Building 14, 6900 Georgia Avenue NW, Washington, D.C. 20307

15. Section 31 00 00 - Protect subgrades and foundation soils against freezing temperatures or frost. Provide protective insulating materials as necessary.

16. Section 31 00 00 - Prevent surface water and ground water from entering excavations, from ponding on prepared subgrades, and from flooding Project site and surrounding area.

17. Section 31 00 00 - Protect subgrades from softening, undermining, washout, and damage by rain or water accumulation. Reroute surface water runoff away from excavated areas. DO not allow water to accumulate in excavations. Do not use excavated trenches as temporary drainage ditches.

18. Section 31 00 00 - Install a dewatering system to keep subgrades dry and convey ground water away from excavations. Maintain until dewatering is no longer required.

19. Section 31 00 00 - Excavate trenches for utilities to indicated gradients, lines, depths, and elevations. Excavate trenches to uniform widths to provide a working clearance on each side of pipe or conduit. Excavate trench walls vertically from trench bottom to 12 inches higher than top of pipe or conduit, unless otherwise indicated. Where indicated excavate trenches deeper than bottom of pipe elevation to allow for bedding course. Hand excavate for bell of pipe.

20. Section 31 00 00 - Subcontractor to notify EDC when excavation have reached required subgrade so that the Architect can approve.

21. Section 31 00 00 - Stockpile borrow materials and satisfactory excavated soil materials. Stockpile soil materials without intermixing. Place, grade, and shape stockpiles to drain surface water. Cover to prevent windblown dust. Stockpile soil materials away from edge of excavations. Do not store within drip line of remaining trees.

22. Section 31 00 00 - Place and compact backfill in excavations promptly, but not before completing the following: construction below finish grade including, where applicable, dampproofing, waterproofing, and perimeter insulation, surveying locations of underground utilities for record documents, inspecting and testing underground utilities, removing concrete formwork, removing trash and debris, removing temporary shoring and bracing and sheeting, and installing permanent or temporary horizontal bracing on horizontally supported walls.

23. Section 31 00 00 - For all utility trench backfilling: place and compact bedding course on trench bottoms where indicated, shape backfill/bedding course to provide continuous support for bells, joints, and barrels of pipes and for joints, fittings, and bodies of conduits.

24. Section 31 00 00 - Backfill trenches excavated under footings and within 18 inches of bottom of footings and fill with concrete to elevation of bottom of footings.

25. Section 31 00 00 - Provide 4-inch thick concrete-base slab support for piping or conduit less than 30 inches below surface of roadways. After installing and testing, completely encase piping or conduit in a minimum of 4 inches of concrete before backfilling or placing roadway base.

26. Section 31 00 00 - Place and compact initial structural backfill to a height of 12 inches over the utility pipe or conduit. Carefully compact materials under pipe haunches and bring backfill evenly up on both sides and along the full length of utility piping or conduit to avoid damage or displacement of utility system.

27. Section 31 00 00 - Subcontractor shall install warning tape directly above utilities, 12 inches below finished grade, and 6 inches below subgrade under pavements and slabs.

Verified by PDFfiller
07/30/2018

SUB INITIALS _____  /  EDC Initials _____

3

7/12/2018



ELLISDALE
CONSTRUCTION
& DEVELOPMENT

# HELP Walter Reed Apartments – 14 South

Building 14, 6900 Georgia Avenue NW, Washington, D.C. 20307

28. Section 31 00 00 - Remove vegetation, topsoil, debris, unsatisfactory soil materials, obstructions, and deleterious materials from ground surface before placing fills. Plow, scarify, bench or break up sloped surfaces steeper than 1 vertical to 4 horizontal so fill material will bond with existing material. Place and compact fill material in layers to required elevations as follows: under grass and planted area and under walks and pavements use satisfactory soil material, under steps, ramps, footings and foundations use structural backfill, and under building slabs use drainage fill.

29. Section 31 00 00 - Uniformly moisten or aerate subgrade and each subsequent fill or backfill layer before compaction to within 2 percent of optimum moisture content. Do not place backfill or fill material on surfaces that are muddy, frozen, or contain frost or ice. Remove and replace, or scarify and air dry, otherwise satisfactory soil material that exceeds optimum moisture content by 2 percent and is too wet to compact to specified density.

30. Section 31 00 00 - Place backfill and fill materials in layers not more than 8 inches in loose depth for material compacted by heavy compaction equipment, and not more than 4 inches in loose depth for material compacted by hand operated tampers. Place backfill and fill materials evenly on all sides of structures to required elevations, and uniformly along the full length of each structure. Compact soil to not less than the following percentages of maximum dry density according to ASTM D 1557. Under structures, building slabs, steps, and pavements, scarify and compact top 12 inches of existing subgrade and each layer of backfill or fill material at 95 percent. Under walkways, scarify and compact top 6 inches below subgrade and compact each later of backfill or fill material at 95 percent. Under lawn or unpaved areas, scarify and compact top 6 inches below subgrade and compact each layer of backfill or fill material at 85 percent.

31. Section 31 00 00 - Uniformly grade areas to a smooth surface, free from irregular surface changes. Comply with compaction requirements and grade to cross section, lines, and elevations indicated. Provide a smooth transition between adjacent existing grades and new grades. Cut out soft spots, fill low spots, and trim high spots to comply with required surface tolerances.

32. Section 31 00 00 - Slope grades to direct water away from buildings and to prevent ponding. Finish subgrades to required elevations within the following tolerances. Lawn or unpaved area and walks plus or minus 1 inch. Pavements plus or minus ½ inch. Grading inside Building Lines must be with a ½ inch tolerance when tested with a 10-foot straight edge.

33. Section 31 00 00 - EDC will engage a qualified independent geotechnical engineering testing agency to perform field quality-control testing. Subcontractor will allow testing agency to inspect and test subgrades and each fill or backfill layer. Proceed with subsequent earthwork only after test results for previously completed work comply with requirements. At footing subgrades, at least one test of each soil stratum will be performed to verify design bearing capacities. Subsequent verification and approval of other footing subgrades may be based on a visual comparison of subgrade with tested subgrade when approved by EDC. When testing agency reports that subgrades, fills, or backfills have not achieved degree of compaction specified, Subcontractor shall scarify and moisten or aerate, or remove and replace soil to depth required and recompact and retest until specified compaction is obtained.

Verified by PDFfiller
07/30/2018

SUB INITIALS _____  /  EDC Initials _____

7/12/2018



# HELP Walter Reed Apartments – 14 South

Building 14, 6900 Georgia Avenue NW, Washington, D.C. 20307

34. Section 31 00 00 - Protect newly graded areas from traffic, freezing, and erosion. Keep free of trash and debris.
35. Section 31 00 00 - Repair and reestablish grades to specified tolerances where completed or partially completed surfaces become eroded, rutted, settled, or where they lose compaction due to subsequent construction operations or weather conditions. Scarify or remove and replace soil material to depth as directed by the Geotechnical Engineer.
36. Section 31 00 00 - Where settling occurs, remove finished surfacing, backfill with additional soil material, compact, and reconstruct surfacing. Restore appearance, quality, and condition of finished surfacing to match adjacent work, and eliminate evidence of restoration to the greatest extent possible.
37. Section 32 12 16 - Subcontractor to provide hot-mix asphalt paving according to materials workmanship and other applicable requirements of the District of Columbia Department of Transportation Standard Specifications for Highways and Structures 2013 edition hereinafter referred to as the "Standard Specifications".
38. Section 32 13 13 - Subcontractor to provide cement concrete paving according to materials. Workmanship, and other applicable requirements of DC Department of Transportation Standard Specifications for Highways and Structures 2013 edition herein after referred to as the "Standard Specifications".
39. Subcontractor is responsible for submitting As-Built Drawings to EDC for review and approval.

## Site Work:

40. CIV0130 – Subcontractor to keep all existing driveways being used as construction entrances swept and clean of dust, dirt and debris. Any machinery or vehicles leaving the site through the driveway should be cleaned and washed.
41. CIV0130 – Installation of inlet protection at all drains/storm drains as shown.
42. CIV0130 – Subcontractor to minimize disturbance of grass as much as possible.
43. CIV0140 – Installation of rip rap channels as shown.
44. CIV0140 – New gravel where shown on drawings.
45. CIV0140 – Installation and maintenance of bioretention ponds for storm water management.
46. Subcontractor shall be responsible for protecting existing sidewalk, curb and gutter, and paving during construction. Subcontractor to replace any sidewalk, curb and gutter, or paving damaged during construction.
47. CIV0150 – Installation of new 5' hot water service lateral.
48. CIV0150 – Installation of new 6" chilled water service lateral.
49. CIV0150 – Installation of new connection to existing steam tunnel.
50. CIV0150 – Installation of new 8" schedule 40 PVC storm line.
51. CIV0150 – Installation of new 6" PVC storm line.
52. CIV0150 – Installation of new 4" PVC storm line.
53. CIV0150 – Installation of new cleanout at shown on plans.
54. CIV0150 – Installation of new bioretention areas.

Verified by PDFfiller
07/30/2018

SUB INITIALS _____ / EDC Initials _____

7/12/2018



**ELLISDALE**
CONSTRUCTION
& DEVELOPMENT

# HELP Walter Reed Apartments – 14 South

Building 14, 6900 Georgia Avenue NW, Washington, D.C. 20307

55. CIV0150 – Installation of new storm drain pipe connection to building plumbing outfall.

56. CIV0150 – Subcontractor to CIPP (cured in place pipe) line existing sanitary sewer lateral for re-use. Coordinate exact location and depth leaving the building with plumbing plans.

57. CIV0150 – Subcontractor to CIPP (cured in place pipe) line existing sanitary sewer main for re-use. Field verify location, depth and size prior to work.

58. CIV0160 – Subcontractor to perform grading for new entry plaza as shown on plans.

59. CIV0160 – Subcontractor to perform grading for bioretention ponds as shown on plans.

60. CIV0160 – Subcontractor to perform grading near P2 entrance as shown on plans.

61. CIV0310 – Subcontractor to modify manhole for new top elevation.

62. CIV0310 – Subcontractor to perform test pits to verify depth and size of existing utilities at proposed connection points.

63. CIV0510 – Subcontractor to follow all specifications and standards for land grading, topsoil, vegetative stabilization, street sweeping, stabilized construction entrances, wash racks, and dust control.

64. CIV0520 – Subcontractor to furnish, install, and follow all notes and details for all portable sediment tanks, brickboat ground covers, rip rap outlets, stone outlets, pipe outlets, sediment traps, inlet protections, inlet guards, earth dikes, perimeter dikes, swales, temporary root protections, street tree protections, sediment basins, trap baffles, curb inlet protections, silt fence, super silt fence and construction entrances.

65. CIV0530 – Subcontractor to furnish, install and follow all notes and details for all pipe sewer trenching, building sewer cleanouts, precast concrete manholes, drain basins, rock outlets, and sidewalks.

66. CIV0710 – Subcontractor to furnish and install all new roof drains as shown on plans.

67. CIV0710 – Subcontractor to furnish and install all bioretention ponds as shown on plans.

68. CIV0730 – Subcontractor to follow bioretention construction sequence as described in plans.

69. CIV0730 – Subcontractor to install all new piping, manholes, cleanouts, and drain basins as shown on plans.

70. CIV0730 – Subcontractor to furnish and install all 57 stone, choker stone, filter media, and mulch as shown on plans.

71. CIV0740 – Subcontractor to comply will all applicable inspections and specifications per DC DOEE.

## Article III: Schedule, Production, Coordination and General Requirements

1. Allowable change order mark-up is 10% overhead and 5% profit cumulative for this Subcontractor and any third-tier subcontractors.

2. Provide complete submittal package as required per the project specifications within (10) business days from receipt of LOI serving as a formal notice to proceed on the project.

3. Provide DDOT certified flagmen as required for your work, suppliers, delivery trucks, etc.

4. Subcontractor is responsible for the storage, delivery, receiving, hoisting, unloading, inventory, and handling, for all of its materials. Coordinate the location of materials with EDC superintendent. Subcontractor is specifically aware of the constraints surrounding the site and has included all costs for delivery and storage of materials as necessary to perform all work.

5. Coordinate all access to The Parks at Walter Reed (TPWR) campus including personnel and material deliveries with Ellisdale. A minimum of (7) days prior to mobilizing provide a list of all employees to

Verified by PDFfiller
07/30/2018

SUB INITIALS _____ / EDC Initials _____

7/12/2018



# HELP Walter Reed Apartments – 14 South

Building 14, 6900 Georgia Avenue NW, Washington, D.C. 20307

work on site including the first name, last name, vehicle make, vehicle model, and license plate tag number.   Provide minimum (48) hour notice for all deliveries.  Notify EDC of any access requirements to TPWR campus during work hours a minimum of 1 hour before arrival.

6. Work hours are to be strictly adhered to as dictated by Washington D.C. regulations.  Hours of operation are controlled by local governing agencies, Ellisdale Construction, and/or the Owner.  Monday-Friday 7am-7pm and Saturday 7am-7pm as required.  Saturdays are considered a make-up day if behind schedule or if a portion of the work week was missed due to inclement weather.  Work hours in public space may be different and will be defined by the approved public space permit.

7. Provide daily cleanup of all trash and debris generated by this Subcontractor to a dumpster provided by EDC.

8. Participate in weekly project composite clean-up.  Subcontractor to provide (1) dedicated laborer to the weekly project composite clean-up for (8) hours per week for every (8) or fewer employees on site for the duration that the Subcontractor is substantially mobilized on site.

9. Subcontractor includes use of Procore as the primary project management software for submittals, RFI's, punchlist management, observations, etc.

10. Inspect finishes to remain in work areas prior to performing work and notify EDC of any existing visible damage.  All finishes to remain to be protected as required to mitigate damage by the installation of this trades scope of work.

11. Provide as-built drawings as required by the project specifications.

12. For every day that Subcontractor is on site and provide to Contractor a daily report including: manpower, equipment, and work narrative at a minimum.

13. Coordinate layout for core drills as required for installation of this Subcontractor's scope of work.

14. Coordinate with other Subcontractors for sequencing, dimensions, and locations.  Advise of any specific requirements in accordance with the project schedule.

15. Consume food and take any breaks in an area designated by the Ellisdale superintendent and place refuse in dumpsters.

16. Provide temporary lighting as required for the installation of this Subcontractor's work.  General lighting will be provided- for common areas- but this is provided for safety purposes and is not intended to provide adequate lighting for working nights/dark areas.

17. Provide multiple mobilizations as required by the project schedule to install complete scope of work.


## Article IV: Safety

1. Subcontractor to comply with all applicable OSHA standards and regulations as related to the installation of their scope of work on the project.

2. Subcontractor responsible for attendance of all subcontractor employees working on site to EDC safety orientation on the first day that that employee is working on the project.  All employees on site to wear identifying hard hat sticker provided by EDC.

3. Subcontractor is responsible for the safety of his operations and will be required to participate in all job safety activities. Subcontractor is required to submit a current Safety Program that includes all relevant MSDS information to be reviewed by Ellisdale prior to mobilizing on site

4. Subcontractors are required to wear fully compliant personal protective equipment at all times while working on site including but not limited to hard hats, reflective safety vests, eye protection, hard-soled shoes, e

Verified by PDFfiller
07/30/2018

SUB INITIALS _____  /  EDC Initials _____

7

7/12/2018

# EXHIBIT 5



# HELP Walter Reed Apartments – 14 South

Building 14, 6900 Georgia Avenue NW, Washington, D.C. 20307

5. Subcontractors temporary site facilities must have emergency phone numbers, fire extinguishers, first aid supplies, chemical information list/MSDS, and OSHA poster posted.

6. All subcontractors shall report all unsafe conditions or practices to the jobsite supervisor immediately upon observation of these conditions.

7. All safety violations, notices, or observations issued to this Subcontractor by Ellisdale are to be corrected within (24) hours.  Any life safety violation is to be corrected immediately.

8. Competent Person Identification will be required prior to the start of all projects. OSHA 10 minimum requirement.

## ARTICLE V: UNIT COSTS, ALLOWANCES & ALTERNATES

| Unit Costs: | | | | | |
|---|---|---|---|---|---|
| | | | Provide unit labor rates to be applied to all T&M work tickets. | | |
| | | | Standard Hourly Rate | Nights & Saturdays | Sundays & Holidays |
| | | Superintendent | $98.00 | $122.00 | $147.00 |
| | | Foreman | $72.00 | $108.00 | $144.00 |
| Allowances: | | Euipment Operator | $53.00 | $79.50 | $106.00 |
| | | Truck Driver | $38.00 | $57.00 | $76.00 |
| Add Alternates: | | Skilled Labor | $34.00 | $51.00 | $68.00 |
| | | | Daily Rates (8 hour day) | | |
| | | Foreman' Truck | $120.00 | | |
| Deduct Alternates: | | Excavator | $420.00 | | |
| | | 6-Wheel Dump Truck | $240 | | |
| ARTICLE VI: Exclusions: | | Steel Plates | $40.00 | | |
| | | Shoring Box | $120.00 | | |

1.

Verified by PDFfiller
07/30/2018

SUB INITIALS _____  /  EDC Initials _____

8

7/12/2018

# EXHIBIT 5

## Exhibit H - Subcontractor OSHA Competent Person

### OSHA MATERIALS - COMPETENT PERSON

The definition for a competent person as is described in the Code of Federal Regulations, 1926.32(f) is listed below:

> "Competent person means one who is capable of identifying existing and predictable hazards in the surroundings
> or working conditions which are unsanitary, hazardous, or dangerous to employees, and who has authorization to
> take prompt corrective measures to eliminate them."

Each Subcontractor is required to have a competent person.  Subcontractor must have a competent person on the job site at all times.
Please supply the name of your competent person of record. Make sure that your competent person is on the job site when you set up
for daily operations. Make note of this designation in your safety program records to ensure that you are covered if and when OSHA
makes an inspection. Thank you for your cooperation regarding the OSHA requirements of our profession.

Name of Competent Person(s): ___**Gregory Upshaw**___          Date: __**7/31/2018**__

Name of Competent Person(s): ___**Samuel Gonzales**___          Date: __**7/31/2018**__

Signature of Competent Person(s): ___**David Mayers**___          Date: __**7/31/2018**__

Signature of Competent Person(s): _____          Date: _____

**EXHIBIT 5**

# Exhibit G - Verified List of Subcontractors and Suppliers

**VERIFIED LIST OF SUBCONTRACTORS AND SUPPLIERS**

The verified list below is a complete and accurate list of names, addresses and phone numbers, contract/PO amount of each sub-subcontractor, vendor, material supplier or other party, of any tier, who will provide labor and/or materials to the Project by, through or on behalf of Subcontractor ("Sub-Tier Vendor"). Upon EDC's request, Subcontractor shall furnish to EDC copies of appropriate business and trade licenses for all Sub-Tier Vendors.

This certified list must be notarized and delivered to EDC's office prior to Subcontractor's commencement of any Subcontract Work on the Project. Subcontractor hereby certifies that it has (1) verified that all Sub-Tier Vendors possess the appropriate business and trade licenses as required by the Subcontract and (2) received insurance certificates from all Sub-Tier Vendors which comply with the requirements of the Subcontract, copies of which shall be provided to EDC at any time upon its reasonable request. In the event any of the persons or entities noted in this list shall be replaced, or in the event additional persons or entities shall be engaged, Subcontractor shall immediately notify EDC in writing thereof and provide an updated Exhibit H to EDC for its approval. Please note that EDC WILL NOT release any payments to Subcontractor until all information requested under this Exhibit and/or the Subcontract has been provided to EDC's reasonable satisfaction.   *HELP  USA        BLDG  14 S*

| SUB-TIER VENDOR INFORMATION | | | | |
|---|---|---|---|---|
| **Sub-Tier Vendor Name** | **Sub-Tier Vendor Address** | **Sub-Tier Vendor Phone Number** | **Sub-Tier Vendor to provide both Materials and Labor (Both), Materials only (M) or Labor only (L)** | **Sub-Tier Vendor Contract or PO Amount** |
| AggTrans (The Stone Store) | 7535 Railroad Ave Hanover, Md | 410-766-2002 | M | |
| J&B Fabricators,LLC | 28685 Earth Lite Rd Wye Mills, Md | 410-266-8585 | M | |
| WinWaterWorks | 3137 Pensy Dr Unit C Hyattsville, Md | 240-764-5006 | M | |
| US Pipeling LLC | 1100 Wood Ln Langhorne, PA 19047 | 215-702-9100 | Both | $33, 500.00 |
| | | | | |
| | | | | |
| | | | | |

☐ Check here if all Work will be performed directly by Subcontract and Subcontractor will not have any Sub-Tier Vendors for this Project.

*Homer M Sellers*
Signature, Subcontractor's Authorized Representative

STATE/COMMONWEALTH OF __MD__ :

COUNTY OF __Montgomery__ : to-wit:

The foregoing instrument was acknowledged before me this __1__ day of __O 8__, 20__18__ by __Homer N Sellers Sr__ (Name), the __Owner__ (Title), of __SMITH & SONS, LLC__ (Name of Company/Corporation) on behalf of the company/corporation.

MY COMMISSION EXPIRES ON 06/16/2020

**EXHIBIT 5**

| Form **W-9**<br>(Rev. December 2014)<br>Department of the Treasury<br>Internal Revenue Service | **Request for Taxpayer**<br>**Identification Number and Certification** | **Give Form to the**<br>**requester. Do not**<br>**send to the IRS.** |
|---|---|---|

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

**2** Business name/disregarded entity name, if different from above
**Smith & Sons, LLC**

**3** Check appropriate box for federal tax classification; check only one of the following seven boxes:

[X] Individual/sole proprietor or single-member LLC   [ ] C Corporation   [ ] S Corporation   [ ] Partnership   [ ] Trust/estate

[ ] Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶

Note. For a single-member LLC that is disregarded, do not check LLC; check the appropriate box in the line above for the tax classification of the single-member owner.

[ ] Other (see instructions) ▶

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any)

Exemption from FATCA reporting code (if any)

(Applies to accounts maintained outside the U.S.)

**5** Address (number, street, and apt. or suite no.)
**1801 Clydesdale Place, NW Suite 710**

**6** City, state, and ZIP code
**Washington, DC 20009**

Requester's name and address (optional)

**7** List account number(s) here (optional)

---

**Part I**  **Taxpayer Identification Number (TIN)**

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

Note. If the account is in more than one name, see the instructions for line 1 and the chart on page 4 for guidelines on whose number to enter.

Social security number

| | | | – | | | – | | | | |

or

Employer identification number

| 2 | 7 | – | 3 | 0 | 8 | 7 | 9 | 1 | 6 |

---

**Part II**  **Certification**

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and

3. I am a U.S. citizen or other U.S. person (defined below); and

4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 3.

| Sign Here | Signature of U.S. person ▶ *homer sellers* | Date ▶ 4/25/2017 |
|---|---|---|

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

Future developments. Information about developments affecting Form W-9 (such as legislation enacted after we release it) is at *www.irs.gov/fw9*.

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following:

- Form 1099-INT (interest earned or paid)
- Form 1099-DIV (dividends, including those from stocks or mutual funds)
- Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)
- Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)
- Form 1099-S (proceeds from real estate transactions)
- Form 1099-K (merchant card and third party network transactions)

- Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)
- Form 1099-C (canceled debt)
- Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See What is backup withholding? on page 2.*

By signing the filled-out form, you:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income, and

4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct. See *What is FATCA reporting?* on page 2 for further information.

Cat. No. 10231X                                        Form **W-9** (Rev. 12-2014)

SMITH44

OP ID: DM

**ACORD®**

**EXHIBIT 5**

**CERTIFICATE OF LIABILITY INSURANCE**

DATE (MM/DD/YYYY)
08/01/2018

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER Saratoga Heyl Ins. Servs. Inc. 1301 York Road, Suite 702 Lutherville, MD 21093 David Kane | 410-339-7400 | CONTACT NAME: Sandy Hebb ext 120 | |
|---|---|---|---|
| | | PHONE (A/C, No, Ext): 410-339-7400 | FAX (A/C, No): 410-339-7958 |
| | | E-MAIL ADDRESS: sandyh@saratogaheyl.com | |
| | | INSURER(S) AFFORDING COVERAGE | NAIC # |
| | | INSURER A: Ohio Security Ins Co | 24082 |
| INSURED Smith & Sons, LLC 1801 Clydesdale Place NW Washington, DC 20009 | | INSURER B: | |
| | | INSURER C: | |
| | | INSURER D: | |
| | | INSURER E: | |
| | | INSURER F: | |

**COVERAGES** CERTIFICATE NUMBER: REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|---|
| A | X | COMMERCIAL GENERAL LIABILITY | | | BKS58604955 | 06/06/2018 | 06/06/2019 | EACH OCCURRENCE | $ 1,000,000 |
| | | CLAIMS-MADE X OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 1,000,000 |
| | | | | | | | | MED EXP (Any one person) | $ 15,000 |
| | | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | POLICY X PRO-JECT LOC | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | | OTHER: | | | | | | | $ |
| A | | AUTOMOBILE LIABILITY | | | BA58604955 | 06/06/2018 | 06/06/2019 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | X | ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | | OWNED AUTOS ONLY SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | X | HIRED AUTOS ONLY X NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | | $ |
| A | X | UMBRELLA LIAB X OCCUR | | | US58604955 | 06/06/2018 | 06/06/2019 | EACH OCCURRENCE | $ 6,000,000 |
| | | EXCESS LIAB CLAIMS-MADE | | | | | | AGGREGATE | $ 6,000,000 |
| | | DED X RETENTION $ 10,000 | | | | | | | $ |
| A | | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y / N | | | WCS58604955 | 06/06/2018 | 06/06/2019 | X PER STATUTE OTH-ER | |
| | | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) Y | N/A | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

EllisDale Construction LLC, as general contractor, the project owner(s) and other parties required of EllisDale Construction LLC are Additional Insureds on a primary/non-contributory basis for on-going and completed operations under the captioned General Liability, Business Auto, and Umbrella Policies. A Waiver of Subrogation applies in favor of the Additional Insured(s) with

| CERTIFICATE HOLDER | ELLISDA | CANCELLATION |
|---|---|---|
| EllisDale Construction LLC 106 Harrison Street, Suite 300 Leesburg, VA 20175 | | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | | AUTHORIZED REPRESENTATIVE |
| | | *David McConnell (signature)* |

**ACORD 25 (2016/03)**

© 1988-2015 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD

**EXHIBIT 5**

| NOTEPAD: | HOLDER CODE | ELLISDA | | SMITH-1 | | PAGE 2 |
|---|---|---|---|---|---|---|
| | INSURED'S NAME | Smith & Sons, LLC | | OP ID: DM | Date | 08/01/2018 |

respects to General Liab. Business Auto, and Workers Compensation.

There are no specific residential, multi family, condominium, or attached communities exclusions on the above referenced General Liability Policy.

In the event of cancellation by the insurance companies, the policies have been endorsed to provide (30) days Notice of Cancellation (10 days for non-payment of premium) to the certificate holder.

**EXHIBIT 6**

**ATTORNEYS AT LAW**
1025 Thomas Jefferson Street, NW | Suite 400 West
Washington, DC  20007-5208
202.965.8100 | fax 202.965.8104
www.carltonfields.com

Atlanta
Florham Park
Hartford
Los Angeles
Miami
New York
Orlando
Tallahassee
Tampa
**Washington, DC**
West Palm Beach

June 16, 2021

*Via Hand Delivery and Email*

Smith & Sons, LLC
c/o Michael A. Smith, President/CEO
1801 Clydesdale Place
Suite 710
Washington, DC 20009
msmith@smithandsonsllc.com

*Via Hand Delivery and Email*

Smith & Sons, LLC
c/o Michael A. Smith, Registered Agent
1801 Clydesdale Place
Suite 710
Washington, DC 20009
msmith@smithandsonsllc.com

*Via First-Class Mail*

The Ohio Casualty Insurance Company
62 Maple Avenue
Keene, NH 03431

*Via Hand Delivery*

The Ohio Casualty Insurance Company
c/o Corporation Service Company
1090 Vermont Avenue NW
Suite 430
Washington, DC 20005

Re:  HELP Water Reed Apartments 14S Project and Abrams Hall Seniors 14M Project
    *Corado's Services, LLC v. Hartford Fire Insurance Company, et al.* (United States
    District Court for the District of Columbia, Case No. 1:20-cv-03673-RDM)
    Ohio Casualty Insurance Company Bond No. 017235007

Dear Sir or Madam:

I write on behalf of Ellisdale Construction, LLC ("Ellisdale") and its surety, Hartford
Fire Insurance Company ("Hartford"). Carlton Fields represents both Ellisdale and
Hartford with respect to the matters discussed in this letter.

On the construction projects commonly known as HELP Water Reed Apartments 14S
Project (the "14S Project") and the Abrams Hall Seniors 14M Projects (the "14M
Project"), Ellisdale, as general contractor, and Smith & Sons, LLC's ("Smith & Sons"),
as subcontractor, entered into subcontracts. Corado's Services LLC ("Corado") alleges
that with respect to the 14M Project and 14S Project, Smith & Sons entered into sub-
subcontracts with Corado and further alleges that Smith & Sons has not paid Corado all
sums due on those two projects.

Carlton Fields, P.A.

Carlton Fields, P.A. practices law in California through Carlton Fields, LLP.

**EXHIBIT 6**

The Ohio Casualty Insurance Company ("Ohio Casualty"), as surety, and Smith & Sons, as principal, issued a payment bond (Bond No. 017235007) for the 14M Project. Corado alleges that Ohio Casualty, as surety, and Smith & Sons, as principal also issued a payment bond for the 14S Project.

Corado served Hartford, Ellisdale's payment-bond surety on the 14M Project and 14S Project, with the enclosed complaint, alleging, among other things, that Corado is due money on the 14M Project and 14S Project. Hartford must file its responsive pleading by June 28, 2021.

## Ellisdale's Demand under the Ellisdale-Smith & Sons Subcontracts

In addition to any prior notices and demands by Ellisdale, this letter serves as Ellisdale's demand upon Smith & Sons, under the parties' subcontracts, for Smith & Sons to indemnify, defend, protect, and hold harmless Ellisdale and Hartford from and against Corado's claims and the costs, expenses (including legal fees and disbursements), damages, and liabilities arising out of or related to Corado's claims.

Further, in accordance with § 9.6 of the parties' subcontracts, Ellisdale demands that Smith & Sons, within five days of receipt of this letter, provide Ellisdale proof that Corado's claims relating to the 14S Project and the 14M Project have been fully satisfied, dismissed, and discharged.

## Ellisdale's Demand under the Payment Bond

In addition to any prior notices and demands—including Ellisdale's December 17, 2019 written demand (by Jane Imperatore, on Ellisdale's behalf)—this letter further serves as Ellisdale's notice to Smith & Sons and Ohio Casualty, under the payment bond issued by Ohio Casualty (Bond No. 017235007), of Corado's claims, demands, and suit against Ellisdale's surety, Hartford, in which Corado is seeking payment for labor, materials, or equipment furnished for use in the performance of its contract with Smith & Sons. Ellisdale hereby tenders its defense of such claims, demands, and suit to Smith and Sons and Ohio Casualty and demands that Smith & Sons and Ohio Casualty defend, indemnify, and hold harmless Ellisdale and Hartford against such claims, demands, and suit.

## Hartford's Demand to Ohio Casualty

Caselaw confirms that (1) when a sub-subcontractor (such as Corado) makes a claim on the bond of a general contractor (such as Ellisdale) and (2) the subcontractor (Smith & Sons) is responsible for the alleged non-payment to sub-subcontractor (Corado), the general contractor's surety is entitled to indemnification and defense from the subcontractor's surety.

Here, Ellisdale has fully paid all sums due Smith & Sons on both the 14S Project and the 14M Project, and if Corado is due payment, Smith & Sons is responsible.

**EXHIBIT 6**

Accordingly, Hartford hereby tenders its defense of Corado's claims, demands, and suit to Ohio Casualty and demands that Ohio Casualty defend, indemnify, and hold harmless Hartford against such claims, demands, and suit.

Your prompt written response to these matters is required.

Please contact me if you have any questions. Thank you.

Sincerely,

Carlton Fields

By: _____
    Daniel K. Felsen

Enclosure

cc:  Ellisdale Construction, LLC
     Hartford Fire Insurance Company

**EXHIBIT 6**

## IN THE UNITED STATES COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CORADO'S SERVICES, LLC** | * |
| 5433 55th Place | |
| Apt. 201 | * |
| Riverdale, Maryland 20737 | |
| | * |
| Plaintiff, | |
| | * |
| v. | |
| | * |
| | |
| **HARTFORD FIRE INSURANCE COMPANY** | * |
| One Hartford Plaza | |
| Hartford, Connecticut 06155-0001 | * |
| | |
| Serve: Corporation Service Company | * |
| 1090 Vermont Avenue, NW | |
| Suite 430 | * |
| Washington, D.C. 20005 | |
| | * |
| and | |
| | * |
| **THE OHIO CASUALTY INSURANCE COMPANY** | |
| 62 Maple Avenue | * |
| Keene, New Hampshire 03431 | |
| | * |
| Serve: Corporation Service Company | |
| 1090 Vermont Avenue, NW | * |
| Suite 430 | |
| Washington, D.C. 20005 | * |
| | |
| Defendants. | * |

Case No.: _____

---

## <u>COMPLAINT</u>

Plaintiff, Corado's Services, LLC, ("Corado's"), by and through its undersigned counsel,

hereby sue Defendants, Hartford Fire Insurance Company ("Hartford"), and The Ohio Casualty

Insurance Company ("Ohio Casualty"), and allege as follows:

# EXHIBIT 6

## PARTIES

1.     Corado's is a limited liability company organized and existing under the laws of the State of Maryland, with its principal place of business in Maryland.  The sole member of Corado's is Samuel Gonzales, who is a resident of the State of Maryland.

2.     Hartford is a corporation organized and existing under the laws of the State of Connecticut, with its principal place of business in Connecticut.  Hartford is a commercial surety company that issues, among other things, payment and performance bonds on construction projects.  Upon information and belief, Hartford is authorized to act as a surety in the District of Columbia.

3.     Ohio Casualty is a corporation organized and existing under the laws of the State of New Hampshire, with its principal place of business in New Hampshire.  Ohio Casualty is a commercial surety company that issues, among other things, payment and performance bonds on construction projects.  Upon information and belief, Ohio Casualty is authorized to act as a surety in the District of Columbia.

## JURISDICTION

4.     Subject matter jurisdiction of this Court arises under 28 U.S.C. § 1332, as Plaintiff and all Defendants are diverse in citizenship and the matters in controversy, in the aggregate, exceeds $75,000.00.

5.     Venue is appropriate in this District pursuant to 28 U.S.C. § 1391, as Defendants are subject to the personal jurisdiction of this Court in that they maintain sufficient contacts with the District of Columbia.  Moreover, all of the underlying construction projects from which this action arises are located within the District of Columbia, and some of the payment bonds at issue herein maintain exclusive venue provisions within the jurisdiction where the underlying

**EXHIBIT 6**

construction project is located, which is the District of Columbia.

## BACKGROUND FACTS

I. *The 14S Project*

6. Counts I and III arise out of unpaid construction work performed on the project commonly known as the HELP Walter Reed Apartments, Building 14S, located at 1324 Main Drive NW, Washington, D.C. 20012 (the "14S Project"). Ellisdale Construction, LLC (hereinafter "Ellisdale") is the general contractor on the 14S Project. The HELP Washington D.C. LP c/o H.E.L.P. Development Corp. is the 14S Project's owner.

7. On or about April 24, 2018, Ellisdale, as principal, executed a payment bond with Hartford, as surety, to secure payment to all persons having furnished labor or material to the 14S Project in furtherance of the work of the aforesaid 14S Ellisdale contract (the "14S Payment Bond") (Bond No. 30BCSHV0877). Pursuant to the 14S Payment Bond terms, Hartford obligated itself to pay all such amounts due for labor and materials furnished to the 14S Project in the event Ellisdale refused, failed or was otherwise unable to pay.

8. Upon information and belief, Smith & Sons, LLC entered into a subcontract agreement with Ellisdale (the "14S Subcontract"), to perform certain work at the 14S Project.

9. Upon information and belief, Smith & Sons, as principal, executed a payment bond with Ohio Casualty, as surety, to secure Smith & Sons' payment obligations to its subcontractors on the 14S Project (the "14S/Smith & Sons Payment Bond"). Pursuant to the 14S/Smith & Sons Payment Bond terms, Ohio Casualty obligated itself to pay the amounts that Smith & Sons owes to its subcontractors on the 14S Project if Smith & Sons failed, refused or was otherwise unable to pay.

**EXHIBIT 6**

10.     Corado's entered into a subcontract agreement with Smith & Sons (the "14S Sub-Subcontract"), to perform certain work at the 14S Project.

11.     Corado's furnished, *inter alia*, water line installation services, bioretention ponds construction and installation services, manhole installation services, and related services and equipment at the 14S Project, at the direction of Smith & Sons.

12.     Corado's rendered labor, materials and/or equipment to the 14S Project in good faith and in a good and workmanlike manner.

13.     As of the filing of this Complaint, Corado's is owed the unpaid sum of $35,934.80 for labor and materials furnished to the 14S Project.

## II.     *The 14M Project*

14.     Counts II and IV arise out of unpaid construction work performed on a project commonly known as the Abrams Hall Senior Apartments, Building 14M, located at 1322 Main Drive NW, Washington, D.C. 20024 (the "14M Project"). Ellisdale is the general contractor on the 14M Project. The Abrams Hall Senior LP c/o Urban Atlantic is the 14M Project's owner.

15.     On or about June 14, 2018, Ellisdale, as principal, executed a payment bond with Hartford, as surety, to secure payment to all persons having furnished labor or material to the 14M Project in furtherance of the work of the aforesaid Ellisdale 14M contract (the "14M Payment Bond") (Bond No. 30BCSHV0879). Pursuant to the 14M Payment Bond terms, Hartford obligated itself to pay all such amounts due for labor and materials furnished to the 14M Project in the event Ellisdale refused, failed or was otherwise unable to pay.

16.     On or about July 12, 2018, Smith and Sons entered into a subcontract agreement with Ellisdale (the "14M Subcontract"), to perform certain work at the 14M Project.

# EXHIBIT 6

17.     On or about January 21, 2019, Smith & Sons, as principal, executed a payment bond with Ohio Casualty, as surety, to secure Smith & Sons' payment obligations to its subcontractors on the 14M Project (the "14M/Smith & Sons Payment Bond") (Bond No. 017235007).  Pursuant to the 14M/Smith & Sons Payment Bond terms, Ohio Casualty obligated itself to pay the amounts that Smith & Sons owes to its subcontractors on the 14M Project if Smith & Sons failed, refused or was otherwise unable to pay.

18.     Corado's entered into a subcontract agreement with Smith & Sons (the "14M Sub-Subcontract"), to perform certain work at the 14M Project.

19.     Corado's furnished, *inter alia*, water line installation services, bioretention ponds construction and installation services, manhole installation services, and related services and equipment at the 14M Project, at the direction of Smith & Sons.

20.     Corado's rendered labor, materials and/or equipment to the 14M Project in good faith and in a good and workmanlike manner.

21.     As of the filing of this Complaint, Corado's is owed the unpaid sum of $64,472.32 for labor and materials furnished to the 14M Project.

## III.     *The Fort Stevens Project*

22.     Count V  arises out of unpaid construction work performed on a project commonly known as the Fort Stevens Place Apartments, located at 1339 Fort Stevens Drive NW, Washington D.C. 20011 (the "Ft. Stevens Project").  Harkins Builders, Inc. (hereinafter "Harkins") is the general contractor on the Ft. Stevens Project.  The Ft. Stevens Place, LLC c/o CPDC is the Ft. Stevens Project's owner.

23.     On or about September 29, 2017, Harkins, as principal, executed a payment bond with Federal, as surety, to secure Harkins' payment obligations to its subcontractors on the Ft.

**EXHIBIT 6**

Stevens Project (the "Ft. Stevens Payment Bond") (Bond No. 8245-29-54).  Pursuant to the Ft. Stevens Payment Bond terms, Federal obligated itself to pay the amounts that Harkins owes to its subcontractors on the Ft. Stevens Project if Harkins refuses or is unable to pay.

24.     On or about October 23, 2017, Smith & Sons entered into a subcontract agreement with Harkins (the "Ft. Stevens Subcontract"), to perform certain work at the Ft. Stevens Project.

25.     On or about January 22, 2018, Smith & Sons, as principal, executed a payment bond with Ohio Casualty, as surety, to secure Smith & Sons' payment obligations to its subcontractors on the Ft. Stevens Project (the "Ft. Stevens/Smith & Sons Payment Bond") (Bond No. 017176577).  Pursuant to the Ft. Stevens/Smith & Sons Payment Bond terms, Ohio Casualty obligated itself to pay the amounts that Smith & Sons owes to its subcontractors on the Ft. Stevens Project if Smith & Sons failed, refused or was unable to pay.

26.     Corado's entered into a subcontract agreement with Smith & Sons (the "Ft. Stevens Sub-Subcontract"), to perform certain work at the Ft. Stevens Project.

27.     Corado's rendered labor, materials and/or equipment to the Ft. Stevens Project in good faith and in a good and workmanlike manner.

28.     As of the filing of this Complaint, Corado's is owed the unpaid sum of $16,466.40 for labor and materials furnished to the Ft. Stevens Project.

**IV.     *The Milestone Project***

29.     Count VI arises out of unpaid construction work performed on a project commonly known as the Milestone Senior Housing Apartments, located at 2501 N St. SE Washington, D.C. 20019 (the "Milestone Project").  Marriottsville Construction, LLC is the general contractor on the Milestone Project.  Upon information and belief, Milestone Senior Owner, LLC is the Milestone Project's owner.

**EXHIBIT 6**

30.     Upon information and belief, Smith & Sons entered into a subcontract agreement with Marriottsville Construction, LLC (the "Milestone Subcontract") to perform certain work at the Milestone Project.

31.     Upon information and belief, Smith & Sons, as principal, executed a payment bond with Ohio Casualty, as surety, to secure Smith & Sons' payment obligations to its subcontractors on the Milestone Project (the "Milestone/Smith & Sons Payment Bond") (Bond No. 017170801). Pursuant to the Milestone/Smith & Sons Payment Bond terms, Ohio Casualty obligated itself to pay the amounts that Smith & Sons owes to its subcontractors on the Milestone Project if Smith & Sons failed, refused or was unable to pay.

32.     Corado's entered into a subcontract agreement with Smith & Sons (the "Milestone Sub-Subcontract"), to perform certain work at the Milestone Project.

33.     Corado's rendered labor, materials and/or equipment to the Milestone Project in good faith and in a good and workmanlike manner.

34.     As of the filing of this Complaint, Corado's is owed the unpaid sum of $28,000.00 for labor and materials furnished to the Milestone Project.

## COUNT I
### (*Action on 14S Payment Bond Against Hartford*)

35.     Corado's incorporates the allegations of the foregoing Paragraphs as though set forth fully herein.

36.     Hartford, as surety, executed the 14S Payment Bond for the protection of unpaid subcontractors providing labor, materials and/or equipment on the 14S Project, including Corado's.

37.     Corado's is a proper claimant under the 14S Payment Bond and is entitled to its benefits.

**EXHIBIT 6**

38.     Under the terms of the 14S Payment Bond, Hartford is liable to Corado's for unpaid monies due and owing to Corado's in connection with the 14S Project.

39.     To date, Ellisdale has failed and refused to pay Corado's the sum of $35,934.80 due and owing to Corado's on the 14S Project, thereby triggering Hartford's liability under the terms of the 14S Payment Bond.

40.     All conditions precedent to bringing a claim on the 14S Payment Bond have been satisfied.

**WHEREFORE**, Plaintiff, Corado's Services, LLC, demands judgment against Defendant, Hartford Fire Insurance Company, in the amount of $35,934.80[1], plus fees, costs, interest, and such other relief as the Court deems proper.

## COUNT II
*(Action on 14M Payment Bond Against Hartford)*

41.     Corado's incorporates the allegations of the foregoing Paragraphs as though set forth fully herein.

42.     Ellisdale, as principal, and Hartford, as surety, executed the 14M Payment Bond for the protection of unpaid subcontractors providing labor, materials and/or equipment on the 14M Project, including Corado's.

43.     Corado's is a proper claimant under the 14M Payment Bond and is entitled to its benefits.

44.     Under the terms of the 14M Payment Bond, Hartford is liable to Corado's for unpaid monies due and owing to Corado's in connection with the 14M Project.

---

[1] Counts I-II, in the aggregate, amount to $100,407.12, above the minimum threshold for diversity jurisdiction against Hartford.

# EXHIBIT 6

45.     To date, Ellisdale has failed and refused to pay Corado's the sum of $64,472.32 due and owing to Corado's on the 14M Project, thereby triggering Hartford's liability under the terms of the 14M Payment Bond.

46.     All conditions precedent to bringing a claim on the 14M Payment Bond have been satisfied.

**WHEREFORE**, Plaintiff, Corado's Services, LLC, demands judgment against Defendant, Hartford Fire Insurance Company, in the amount of $64,472.32, plus fees, costs, interest, and such other relief as the Court deems proper.

## COUNT III
*(Action on 14S/Smith & Sons Payment Bond Against Ohio Casualty)*

47.     Corado's incorporates the allegations of the foregoing Paragraphs as though set forth fully herein.

48.     Upon information and belief, Smith & Sons, as principal, and Ohio Casualty, as surety, executed the 14S/Smith & Sons Payment Bond for the protection of unpaid subcontractors providing labor, materials and/or equipment on the 14S Project, including Corado's.

49.     Corado's is a proper claimant under the 14S/Smith & Sons Payment Bond and is entitled to its benefits.

50.     Under the terms of the 14S/Smith & Sons Payment Bond, Smith & Sons and Ohio Casualty are liable to Corado's for unpaid monies due and owing to Corado's in connection with the 14S Project.

51.     To date, Smith & Sons has failed and refused to pay Corado's the sum of $$35,934.80 due and owing to Corado's on the 14S Project, thereby triggering Ohio Casualty's liability under the terms of the 14S/Smith & Sons Payment Bond.

**EXHIBIT 6**

52.     All conditions precedent to bringing a claim on the 14S/Smith & Sons Payment Bond have been satisfied.

**WHEREFORE**, Plaintiff, Corado's Services, LLC, demands judgment against Defendant, The Ohio Casualty Insurance Company, in the amount of \$35,934.80[2], plus fees, costs, interest, and such other relief as the Court deems proper.

## COUNT IV
*(Action on 14M/Smith & Sons Payment Bond Against Ohio Casualty)*

53.     Corado's incorporates the allegations of the foregoing Paragraphs as though set forth fully herein.

54.     Smith & Sons, as principal, and Ohio Casualty, as surety, executed the 14M/Smith & Sons Payment Bond for the protection of unpaid subcontractors providing labor, materials and/or equipment on the 14M Project, including Corado's.

55.     Corado's is a proper claimant under the 14M/Smith & Sons Payment Bond and is entitled to its benefits.

56.     Under the terms of the 14M/Smith & Sons Payment Bond, Smith & Sons and Ohio Casualty are liable to Corado's for unpaid monies due and owing to Corado's in connection with the 14M Project.

57.     To date, Smith & Sons has failed and refused to pay Corado's the sum of \$64,472.32 due and owing to Corado's on the 14M Project, thereby triggering Ohio Casualty's liability under the terms of the 14M/Smith & Sons Payment Bond.

---

[2] Counts III-VI, in the aggregate, amount to \$144,873.52, above the minimum threshold for diversity jurisdiction against Ohio Casualty.

**EXHIBIT 6**

58.     All conditions precedent to bringing a claim on the 14M/Smith & Sons Payment Bond have been satisfied.

**WHEREFORE**, Plaintiff, Corado's Services, LLC, demands judgment against Defendant, The Ohio Casualty Insurance Company, in the amount of $64,472.32, plus fees, costs, interest, and such other relief as the Court deems proper.

<u>**COUNT V**</u>
(*Action on Ft. Stevens/Smith & Sons Payment Bond Against Ohio Casualty*)

59.     Corado's incorporates the allegations of the foregoing Paragraphs as though set forth fully herein.

60.     Smith & Sons, as principal, and Ohio Casualty, as surety, executed the Ft. Stevens/Smith & Sons Payment Bond for the protection of unpaid subcontractors providing labor, materials and/or equipment on the Ft. Stevens Project, including Corado's.

61.     Corado's is a proper claimant under the Ft. Stevens/Smith & Sons Payment Bond and is entitled to its benefits.

62.     Under the terms of the Ft. Stevens/Smith & Sons Payment Bond, Smith & Sons and Ohio Casualty are liable to Corado's for unpaid monies due and owing to Corado's in connection with the Ft. Stevens Project.

63.     To date, Smith & Sons has failed and refused to pay Corado's the sum of $16,466.40 due and owing to Corado's on the Ft. Stevens Project, thereby triggering Ohio Casualty's liability under the terms of the Ft. Stevens/Smith & Sons Payment Bond.

64.     All conditions precedent to bringing a claim on the Ft. Stevens/Smith & Sons Payment Bond have been satisfied.

# EXHIBIT 6

**WHEREFORE**, Plaintiff, Corado's Services, LLC, demands judgment against Defendant, The Ohio Casualty Insurance Company, in the amount of $16,466.40, plus fees, costs, interest, and such other relief as the Court deems proper.

## <u>COUNT VI</u>
(*Action on Milestone/Smith & Sons Payment Bond Against Smith & Sons and Ohio Casualty*)

65.     Corado's incorporates the allegations of the foregoing Paragraphs as though set forth fully herein.

66.     Smith & Sons, as principal, and Ohio Casualty, as surety, executed the Milestone/Smith & Sons Payment Bond for the protection of unpaid subcontractors providing labor, materials and/or equipment on the Milestone Project, including Corado's.

67.     Corado's is a proper claimant under the Milestone/Smith & Sons Payment Bond and is entitled to its benefits.

68.     Under the terms of the Milestone/Smith & Sons Payment Bond, Smith & Sons and Ohio Casualty are liable to Corado's for unpaid monies due and owing to Corado's in connection with the Milestone Project.

69.     To date, Smith & Sons has failed and refused to pay Corado's the sum of $28,000.00 due and owing to Corado's on the Milestone Project, thereby triggering Ohio Casualty's collective liability under the terms of the Milestone/Smith & Sons Payment Bond.

70.     All conditions precedent to bringing a claim on the Milestone/Smith & Sons Payment Bond have been satisfied.

**WHEREFORE**, Plaintiff, Corado's Services, LLC, demands judgment against Defendant, The Ohio Casualty Insurance Company, in the amount of $28,000.00, plus fees, costs, interest, and such other relief as the Court deems proper.

**EXHIBIT 6**

Respectfully submitted,

**KATZ LAW**

BY:      /s/ Joseph L. Katz
         Joseph L. Katz  MD# 28029
         6701 Democracy Boulevard, Suite 300
         Bethesda, Maryland  20817
         (410) 499-2615
         joe@joekatzlaw.com

         **Attorneys for Plaintiff**
         **Corado's Services, LLC**

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all counts.

Respectfully submitted,

**KATZ LAW**

BY:      /s/ Joseph L. Katz
         Joseph L. Katz  MD# 28029

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Corado's Services, LLC

**DEFENDANTS**
Hartford Fire Insurance Company
The Ohio Casualty Insurance Company

**(b)** County of Residence of First Listed Plaintiff   Prince George's
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Joseph L. Katz, KATZ LAW, 6701 Democracy Blvd., #300, Bethesda, MD 20817 (410) 499-2615

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [ ] 3  Federal Question *(U.S. Government Not a Party)*
- [x] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [x] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | Product Liability | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [x] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC 1332
Brief description of cause:
breach of payment bond

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE   12/15/20

SIGNATURE OF ATTORNEY OF RECORD
/s/ Joseph L. Katz

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

# EXHIBIT 6
## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agency, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.)**

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

V. **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket. **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.